## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. LENTO, ESQ., an individual,<br><br>LENTO LAW FIRM, LLC, a limited liability company,<br><br>        Plaintiffs,<br><br>   v.<br><br>KEITH ALTMAN, ESQ., an individual,<br><br>THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company,<br><br>ANTOINETTE MONK, an individual,<br><br>ARI KRESCH, an individual,<br><br>RICHARD GILL, an individual,<br><br>JOHN DOES 1-10, fictitious individuals, and<br><br>ABC BUSINESS ENTITIES 1-10, fictitious entities,<br><br>        Defendants. | Civil Action No.:<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

## VERIFIED COMPLAINT FOR TEMPORARY RETRAINTS & INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65 AND L.CV. R. 65.1

SAMUEL D. JACKSON, ESQUIRE
LENTO LAW GROUP, P.C.
ATTORNEY ID: 130452017
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
(T) (856) 652-2000 | (F) (856) 375-1010
sdjackson@lentolawgroup.com
*Attorney for Plaintiffs Joseph D. Lento, Esq. & Lento Law Firm, LLC*

Plaintiffs JOSEPH D. LENTO, ESQ. and LENTO LAW FIRM, LLC by and through their undersigned counsel, and by way of Verified Complaint, bring this action for temporary restraints and injunctive relief against Defendants KEITH ALTMAN, ESQ., THE LAW OFFICE OF KEITH ALTMAN, PLLC, also known as "K ALTMAN LAW", ANTOINETTE MONK, ARI KRESH, RICHARD GILL, JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10, alleging as follows:

## I.        LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Joseph D. Lento, Esq.
309 Grayling Avenue
Narberth, Pennsylvania 19072

Lento Law Firm, LLC
242 Terrace Bvld., Suite D1
Voorhees, New Jersey 08043

Keith Altman, Esq.
30474 Fox Club Drive
Farmington Hills, Michigan 48331

The Law Office of Keith Altman, PLLC
a/k/a "K Altman Law"
37555 West 12 Mile Road
Farmington Hills, Michigan 48331

Antoinette Monk
33228 W 12th Mile Rd, Ste 375,
Farmington Hills, Michigan 48331

Ari Kresch
31460 E. Stonewood Court
Farmington Hills, Michigan 48334

Richard Gill
37555 West 12 Mile Road
Farmington Hills, Michigan 48331

## II. INTRODUCTION

1.     This is an action alleging breach of contract, bad faith, tortious interference with contract, fraud, civil conspiracy to commit fraud, negligence, negligence per se, racketeering and extortion, all arising from a scheme between Defendants that was designed and implemented to defraud Plaintiffs JOSEPH D. LENTO, ESQ. ("Lento") and LENTO LAW FIRM, LLC ("LLF").

2.     In short, the Defendants, namely Defendant KEITH ALTMAN, ESQ. ("Altman") and THE LAW OFFICE OF KEITH ALTMAN, PLLC, also known as "K ALTMAN LAW" ("the Altman Firm"), together with his employees, agents, and/or workmen, Defendants ANTOINETTE MONK, ARI KRESH, RICH GILL, JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10, acted in a concerted effort as a single enterprise to engage in a pattern of racketeering activity through certain predicate criminal acts, namely, the extortion of Plaintiffs (hereinafter, "the criminal enterprise").

3.     Specifically, Plaintiff Lento and Defendant Altman entered into a verbal agreement to collaboratively provide legal services to student defense clients and share resources and fees in connection therewith.

4.     Due to a fee dispute between Plaintiff Lento and Defendant Altman in which Defendant Altman alleges to have been shorted by Plaintiff Lento of fees he alleged to be owed to him, Defendant Altman and the Altman Firm, together with all other named Defendants, have acted at Altman's direction in a concerted effort to isolate and exclude Plaintiff Lento from the joint venture, and have further refused to turn over to Plaintiff Lento the case files for the student defense cases in which Plaintiff Lento is the attorney of record, unless Plaintiff Lento concedes to Defendant Altman's extortionate demands, thus putting both the clients' interests in those matters

as well as Plaintiff Lento's professional interests at risk of serious and imminent irreparable harm for which Plaintiffs now seek this Honor Court's equitable and injunctive intervention.

### III.    PARTIES

5.      At all times relevant herein, Plaintiff JOSEPH D. LENTO, ESQ. ("Lento"), is an adult resident citizen of the Commonwealth of Pennsylvania with a residential address for service of process being 309 Grayling Avenue, Narberth, Pennsylvania 19072. Plaintiff Lento is an attorney licensed to practice in Pennsylvania, New Jersey, and New York.

6.      At all times relevant herein, Plaintiff LENTO LAW FIRM, LLC is a foreign limited liability company organized by Plaintiff Lento under the laws of the Commonwealth of Pennsylvania (PA Entity No.: 7007525) on or about January 31, 2020, with a registered office at 1500 Walnut Street Suite 500 Philadelphia PA 19102 Philadelphia, and a principal place of business at 242 Terrace Blvd., Suite D1, Voorhees, New Jersey 08043.

7.      At all times relevant herein, Defendant KEITH ALTMAN, ESQ. ("Altman"), is an adult resident citizen of the State of Michigan with a residential address for service of process believed to be 30474 Fox Club Drive, Farmington Hills, Michigan 48331. Defendant Altman is an attorney licensed to practice in the State of Michigan and the State of California.

8.      At all times relevant herein, Defendant THE LAW OFFICE OF KEITH ALTMAN, PLLC, also known as "K ALTMAN LAW", is a foreign limited liability company organized by Defendant Altman under the laws of the State of Michigan, with a registered office located at 30474 Fox Club Drive, Farmington Hills, Michigan 48331, and with a principal place of business located at 37555 West 12 Mile Road, Farmington Hills, Michigan 48331.

9.      At all times relevant herein, and upon information and belief, Defendant ANTOINETTE MONK, is an adult resident citizen of the State of Michigan, with an address for service of process believed to be 33228 W 12th Mile Rd, Ste 375, Farmington Hills, Michigan 48331.

10.      At all times relevant herein, and upon information and belief, Defendant ARI KRESCH, is an adult resident citizen of the State of Michigan, with an address for service of process believed to be 31460 E. Stonewood Court, Farmington Hills, Michigan 48334. Defendant Kresch is a licensed attorney in the State of Michigan.

11.      At all times relevant herein, and upon information and belief, Defendant RICHARD GILL, is an adult resident citizen of the State of Michigan, with an address for service of process believed to be 37555 West 12 Mile Road, Farmington Hills, Michigan 48331

## IV.    JURISDICTION & VENUE

12.      This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("Federal RICO").

13.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiffs and Defendants.

14.      This Court also has original subject matter jurisdiction given that a number of the student defense cases contemplated by the oral agreement between Plaintiff Lento and Defendant Altman are New Jersey matters, and thus, matters which this Court has an interest in safeguarding.

15.      This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction arising under 28 U.S.C § 1367, as such claims are so

related to Plaintiffs' federal claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

16.     This Court has personal jurisdiction over all Defendants as all Defendants, individually and collectively, have purposefully directed their conduct at this forum with respect to the criminal enterprise.

17.     This Court further has personal jurisdiction over all Defendants under 28 U.S.C. § 1965(b) as in any action brought pursuant to the Federal RICO statute in a United States District Court, that Court may cause parties residing in another district to be summoned to the Plaintiff's chosen venue district if the "ends of justice require" it. Given the facts of this matter, and that the Defendants have purposefully directed their conduct at this forum with respect to the criminal enterprise, the ends of justice require this Court's exercise of personal jurisdiction over the Defendants.

18.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district.

19.     Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each Defendant, at least in part, transacts his or her affairs in this judicial district given each Defendants' participation in the criminal enterprise as alleged above and as will be alleged in more detail elsewhere herein.

## V.     APPLICABLE LAW AND POLICY

20.     18 U.S.C. § 1961, provides in relevant part:

> (1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

21.     "Extortion" for purposes of the Federal RICO Act is defined under the Hobbs Act, 18 U.S.C. § 1951, *et seq.*, specifically at 18 U.S.C. § 1951(a)(2), as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

## VI.     FACTUAL ALLEGATIONS

22.     On or about January 31, 2020, Plaintiff Lento founded Lento Law Firm, LLC ("LLF"), a Pennsylvania-based law firm.

23.     Plaintiff Lento had been aware of Defendant Altman's reputation as an attorney and was considering him for a future associate position within LLF as far back as December 2019, if not earlier.

24.     Lento and Altman finally connected in or around March 2020 at LLF's New Jersey office and came to an arrangement with respect to the shared handling of student defense matters involving such things as academic misconduct, student code of conduct violations, and Title IX violations, for example.

25.     From approximately March 2020 to August 2020, Lento began associating his student defense cases to Altman for Altman to take the lead on, under a verbal agreement that all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Lento as the attorney of record and the progenitor of the matters, and with 40% going to Altman for his time and labor.

26.     Importantly, it was discussed and agreed as between Lento and Altman that this 60/40 split would occur only after LLF's incurred marketing expenses has been deducted from the total fee.

27.     It was agreed that deducting LLF's marketing expenses off the top prior to the fee split was the only method of fairly and proportionately compensating both Lento and Altman, for if LLF's

expenses were deducted from Lento's 60% share post-split, Altman, comparatively, would be receiving a windfall for each matter considering he was associated into each matter by Lento, the originating attorney.

28.     By approximately August 2020, Lento began a limited Pay Per Click (PPC) ad campaign for LLF's student defense practice, which resulted in a marked increase in the firm's volume of student defense cases.

29.     By approximately January 2021, Lento increased the PPC ad budget and the number of student defense leads LLF received increased significantly.

30.     Throughout 2021, however, Plaintiff Lento began noticing that problems were arising with respect to Defendant Altman's handling of the student defense matters.

31.     Specifically, Altman had failed on more than one occasion to follow-up with clients' phone calls and emails, which lead to several matters not being handled in a timely manner, such that the clients became frustrated and demanded the issuance of a refund of their retainer, which Lento and LLF had no choice but to issue.

32.     By the Spring of 2021, the business relationship between Lento and Altman began to sour when Altman began demanding that Lento pay him a larger share of the fees collected in the student defense matters.

33.     Further, although it was Altman's responsibility to send out fee agreements to sign new clients, Lento eventually discovered that Altman had been neglecting to do so, and so many of the early student defense cases which Altman handled for LLG were performed pursuant to no client fee agreement.

34.     This failure to send client fee agreements was also partially the fault of Defendant ANTOINETTE MONK ("Monk"), Altman's Administrative Assistant, who was also responsible

for many of the Altman Firm's administrative duties, but who would regularly send out client fee agreements to new clients weeks or even months after the clients had paid their retainer for legal services.

35.     Additionally, around this time Altman's poor handling of a particular matter involving a dental school student resulted in the client leaving LLF a negative review online.

36.     Lento confronted Altman about the negative review, expressing to him the seriousness with which Lento takes bad reviews of his practice, saying, "This is my business's reputation on the line here!" (paraphrasing).

37.     To Lento's discomfort, Altman responded, "This is *my* business too," which, of course, it neither was then, nor is presently, as Altman has never had an ownership interest in LLF.

38.     Altman's co-opting of Lento's business became most apparent in roughly mid-2021 when Lento discovered that initial letters of representation in student defense matters which had theretofore been transmitted on LLF letterhead were now being sent out by Altman on letterhead for Defendant The Law Office of Keith Altman, PLLC, also known as  "K Altman Law" ("the Altman Firm").

39.     In or about October or November of 2021, Altman again demanded more money from Lento, expressing that it was money Lento "owed" him, despite the fact that Altman had consistently been paid his agreed-upon share of total collected fees.

40.     After Altman threatened suing Lento for the money he believed he was owed, Lento begrudgingly paid and suggested the pair keep a more regular and more detailed accounting of the fee's collected such that there could be no question moving forward as to who was owed what.

41.     By January 2022, Defendant Altman suggested to Plaintiff Lento a restructuring of their verbal agreement, and proposed two options for Lento to chose from: (1) to continue in the manner

they had been, however, with a new fee-sharing scheme where Altman got a larger share of the split fee – 55/45 or 50/50 perhaps, the newly proposed split was never settled upon – or (2) to keep the current 60/40 split, but with the modification that in addition to Lento & LLF's marketing expenses coming off the top of the total fee, Altman and the Altman Firm's operating expenses (which Altman indicated were in the area of $50,000.00 per month) would come off the top as well prior to the split being assessed.

42.     By February 2022, Lento and Altman came to an agreement with respect to the modification of the fee split.

43.     The new agreed-upon split was that Lento was to receive 55% of the fee and Altman 45% of the fee, again, after Lento and LLF's marketing expenses were taken off the top, however, this time with Lento getting 75 % of all consultation fees from January 1, 2022 onward, in exchange for a lowered 25% to Lento of all monies recovered in suit.

44.     This new understanding with respect to the fee sharing arrangement between Lento and Altman was never memorialized in a writing, however, it was understood and agreed-upon as between the two of them.

45.     An additional component of the original verbal understanding between Lento and Altman, and which was never subsequently modified or eliminated, was a verbal non-compete clause on the part of Altman and the Altman Firm.

46.     In essence, the agreement between Lento and Altman was that all student defense cases which Altman handled would be those and only those which were worked collaboratively with Lento and LLF pursuant to their arrangement. In other words, Altman agreed to handle these student defenses cases exclusively in association with Lento and LLF.

47.     In consideration of Lento's larger share of the fee split, Lento agreed to advertise for student defense matters as alleged earlier, through such means as online ad campaigns and Pay Per Click ("PPC"), and that as Altman would only be handling such matters with Lento and LLF, he was prohibited from advertising independently for case of that nature.

48.     Lento and LLF's marketing was therefore mutually beneficial to both Lento and Altman as Altman would stand to profit from all student defense cases Lento and LLF took on.

49.     Despite this exclusivity provision in which Altman agreed not to compete with Lento with respect to student defense cases, by approximately December of 2021, Lento became aware of the fact that Altman had changed his website and his email signature to reflect his practice involving student defense matters.

50.     By mid-2022, Altman unveiled an entirely revamped website for the Altman Firm, with a Home Page blatantly advertising for student defense and Title IX matters, and numerous other pages across the site related to such areas of practice. *See* a screen capture from Defendant Altman's website located at https://www.kaltmanlaw.com/ below as **IMAGE 1**.

**IMAGE 1.**



51.     Further, Defendant Altman's website largely copied Plaintiffs' website simply by paraphrasing each section. *Compare*, Defendant Altman's student defense website at https://www.kaltmanlaw.com/student-defense with Plaintiff's student defense website at https://www.studentdisciplinedefense.com/.

52.     Additionally, with reference to Defendant Altman's website, some of the testimonials listed in the "Student Stories" tab located at https://www.kaltmanlaw.com/student-stories are testimonials from clients of Lento and LLF to whom Altman was merely assigned to handle their matter pursuant to the subject oral agreement, not clients of Altman or the Altman Firm.

53.     Defendant Altman's underhanded and self-serving conduct despite the terms of his oral agreement with Plaintiff Lento came to a head on or about July 24, 2022, when Altman, on a telephone call with Lento, made demand that Lento pay him $500,000.00 by the following day, July 25, 2022, or else he would (1) file a lawsuit against Lento, (2) file a State Bar complaint against Lento, and (3) that he and the Altman Firm would send out a mass email to all of the

approximately one-hundred (100) open student defense clients informing them he would be ceasing work on their matters as Lento has not paid him.

54.    Apart from the fact that Plaintiff Lento could not possibly produce the demanded $500,000.00 by the following day, he also contested that Defendant Altman was even entitled to such a ridiculous sum, and further, Lento advised Altman that if Altman intended to stop working on the clients' matters, he had an ethical obligation to return the case files to Lento and LLF such that Lento and LLF could continue to work on them so as to not prejudice the clients.

55.    Plaintiff Lento, despite not conceding that he nor LLF owed Defendant Altman anything, offered to settle the dispute by paying Altman $365,000.00 simply so Altman would not slander Lento to the clients, nor unjustly hold hostage the clients' matters by ceasing work thereon.

56.    Pursuant to this offer to settle the fee dispute, a settlement agreement was drafted wherein Altman and the Altman Firm would continue to work on the student defense matters until the end of that week, in other words, until Saturday, July 30, 2022, in exchange for Lento paying the begrudgingly agreed upon $365,00.00.

57.    Upon further consideration, however, and upon the realization that he was being extorted by Altman, Lento refused to pay the $365,000.00 Altman demanded, as there was no justification for the demand given that Altman had been consistently paid pursuant to their oral agreement and could not or refused to produce an account demonstrating his alleged entitlement to the $365,000.00, let alone his entitlement to the $500,000.00 originally demanded.

58.    Additionally, Lento refused to pay extortionate demand because logistically, if he had complied, paid the demand, and Altman, in exchange, had returned the nearly one-hundred (100) open matters to Lento and LLF, (1) Lento and LLF would not have been equipped in terms of staffing and resources to accommodate the sudden influx of all of those matters, and (2) the

disruption this transition would cause to the clients could have created problems in the handling of those matters, ultimately resulting in potential bar complaints or client refunds – in other words, additional exposure to Lento on top of the extorted $365,000.00 to Altman.

59.     In light of the foregoing, Plaintiff Lento realizes that has been the victim of a criminal enterprise in in the form of the Altman Firm, headed by Defendant Keith Altman, and perpetrated by Altman in concert with the help of his staff, Defendants ANTOINETTE MONK, ARI KRESH, RICH GILL, JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10; having nearly been successfully extorted for hundreds of thousands of dollars upon the threat of significant professional and reputational injury.

**COUNT I**
**FEDERAL RICO**
**(18 U.S.C. § 1964(c) – Violation of 18 U.S.C. § 1962(b))**
**AS TO DEFENDANT KEITH ALTMAN, ESQ.**

60.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

61.     Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in 18 U.S.C. § 1961, and thus, Plaintiffs bring this cause of action pursuant to the Federal RICO civil remedies section, specifically, 18 U.S.C. § 1964(c), which allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee..."

62.     18 U.S.C. § 1962(b) provides in relevant part that:

> It shall be unlawful for any *person* through a *pattern of racketing activity* or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any *enterprise* which is engaged in, or the activities of which affect, *interstate or foreign commerce*. (Emphasis added).

63. Picking the above statutory provision apart and defining the emphasized terms in turn,18 U.S.C. § 1961(3) defines "person" as, "any individual or entity capable of holding a legal or beneficial interest in property."

64. Defendant Altman is a "person" within the meaning of 18 U.S.C. § 1961(3).

65. 18 U.S.C. § 1961(1) defines "racketeering" to include the threat of extortion.

66. 18 U.S.C. § 1961(1) also defines "racketeering" to include, "any act which is indictable under... section 1951 (relating to interference with commerce, robbery, or extortion)," i.e., the Hobbs Act, 18 U.S.C. § 1951, *et seq.*

67. With respect to the threat of extortion, for purposes of the Federal RICO Act, "extortion" as defined under the Hobbs Act, specifically at 18 U.S.C. § 1951(a)(2), is, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

68. Defendant Altman engaged in racketeering in that he threatened Plaintiff Lento with extortion as detailed more completely in Plaintiff's factual allegations above, but which, in short, amounted to Defendant Altman demanding money (i.e., "property") from Plaintiff Lento upon threat of (1) litigation, (2) a State Bar complaint, (3) reputational injury in the form of a mass email to all student defense clients indicating unjustly that Plaintiff Lento was not paying Defendant Altman, and (4) professional injury in the form of Defendant Altman ceasing work on all student defense clients' matters, the consequences of which would have had devastating professional ramifications for Plaintiff Lento.

69.     The wrongful use of by Defendant Altman of the aforementioned threats instilled fear in Plaintiff Lento such that he was induced into, and consented to, forfeiting to Defendant Altman property in the form of an extortionate demand of $365,000.00, which Plaintiff Lento ultimately did not pay upon his realization that he was being extorted.

70.     Per 18 U.S.C. § 1961(5), a "pattern of racketeering" "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

71.     In addition to the aforementioned instance of extortion of Plaintiff Lento by Defendant Altman, which occurred on or about July 24, 2022, Defendant Altman had previously (and successfully) extorted Plaintiff Lento in October or November of 2021, similarly demanding money from Plaintiff Lento which he was not entitled to, upon fear of the threat of Altman initiating litigation against Lento.

72.     Together, these two instances, along with other similar attempts by Defendant Altman to extort Plaintiff Lento upon threat of the initiation of litigation against him, occurred within the timeframe parameters set forth under 18 U.S.C. § 1961(5), establishing a pattern of racketeering within the meaning of the Federal RICO Act.

73.     18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

74.     Both Plaintiff Lento and Plaintiff LLF are within the definition of "enterprise" as it pertains to the Federal RICO Act.

75.     Finally, "interstate commerce" as it pertains to the Federal RICO Act, is defined under common law.

76.     A RICO enterprise is involved in "interstate commerce" when it is itself "directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce." _U.S. v. Robertson_, 514 U.S. 669, 672 (1995).

77.     Here, given that Plaintiff Lento and Plaintiff LLF were involved in "interstate commerce" in that they directly engaged in the production and distribution of legal services to student defense clients in a number of states across the country, and thus, in interstate commerce.

78.     Thus, Defendant Altman is in direct violation of 18 U.S.C. § 1962(b) of the Federal RICO Act, as cited above, as he (a "person") through a "pattern of racketing activity" (repeated instances of extortion or threatened extortion upon Plaintiff Lento)... acquired and maintained for a time, directly or indirectly, an interest in or control over Plaintiff Lento's personal finances and those of Plaintiff LLF, themselves both "enterprises" engaged in, or the activities of which affect, "interstate... commerce".

79.     As a direct and proximate consequence of the conduct of Defendant Altman as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

80.     Because of Defendant Altman's violations of 18 U.S.C. § 1962(b), Defendant Altman is liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**COUNT II**
**FEDERAL RICO**
**(18 U.S.C. § 1964(c) – Violation of 18 U.S.C. § 1962(c))**
**AS TO DEFENDANTS ANTOINETTE MONK, ARI KRESH, RICH GILL,**

**JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10**

81.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

82.     Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in 18 U.S.C. § 1961, and thus, Plaintiffs bring this cause of action pursuant to the Federal RICO civil remedies section, specifically, 18 U.S.C. § 1964(c), which allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee..."

83.     18 U.S.C. § 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

84.     Each Defendant named in the herein Count is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

85.     Each Defendant named in the herein Count has engaged in conduct which include at least two acts of racketeering activity within the timeframe parameters established by 18 U.S.C § 1961(5), and thus, each Defendants' conduct constitutes a "pattern of racketeering activity" pursuant to 18 U.S.C § 1961(5).

86.     Given that the Defendants named in this Count are or were at the relevant times, employees, agents, and/or workmen of Defendant Altman and Defendant the Altman Firm, all Defendants named in this Count formed an association-in-fact enterprise, itself being a part of Defendant the

Altman Firm, a legal entity within the meaning of 18 U.S.C. § 1961(4), along with Defendant Altman himself.

87.     The enterprise is involved in "interstate commerce" in that it "directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce," via the production and distribution of legal services to student defense clients in a number of states across the country, and thus, in interstate commerce.

88.     Thus, given the enterprise, the extortionate predicate acts of Defendant Altman and Defendant the Altman Firm as described more completely in the Factual Allegations contained herein as well as in Count I, were in furtherance of the enterprise, for the benefit of all Defendants composing said enterprise, and for the common purpose of intentionally and willfully creating a scheme by which to extort Plaintiffs to the pecuniary gain of the Defendants; a scheme in which all Defendants did conduct and participate in.

89.     As a direct and proximate consequence of the conduct of all Defendants named in this Count as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

90.     Because of the Defendants' violations of 18 U.S.C. § 1962(c), these Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**COUNT III**
**FEDERAL RICO**
**(18 U.S.C. § 1964(c) – Violation of 18 U.S.C. § 1962(d))**
**AS TO ALL DEFENDANTS**

91.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

92.     Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in 18 U.S.C. § 1961, and thus, Plaintiffs bring this cause of action pursuant to the Federal RICO civil remedies section, specifically, 18 U.S.C. § 1964(c), which allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee..."

93.     18 U.S.C. § 1962(d) makes it, "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

94.     As alleged in the preceding Counts, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

95.     At all times relevant and continuing through at least July 24, 2022, and beyond, all Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (b) and (c), as alleged above in Counts I & II, respectively, and as incorporated herein, in violation of 18 U.S.C. § 1962(d).

96.     The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

97.     Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (extortion, actual or threatened).

98.     Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (extortion, actual or threatened) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

99.     Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

100.    Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(b) and (c), in violation of 18 U.S.C. § 1962(d).

101.    As a direct and proximate consequence of the conduct of all Defendants as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

102.    Because of the Defendants' violations of 18 U.S.C. § 1962(d), all Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### COUNT IV
### NEW JERSEY STATE RICO
### (N.J.S.A. § 2C:41-4 – Violation of N.J.S.A. § 2C:41-2(b))
### AS TO DEFENDANT KEITH ALTMAN, ESQ.

103.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

104.    Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in N.J.S.A. § 2C:41-1, *et seq.* (the "NJ RICO Act"), and thus, Plaintiffs bring this cause of action pursuant to the NJ RICO Act's civil remedies section, specifically, N.J.S.A. § 2C:41-4, which allows "any

person damaged in his business or property by reason of a violation of N.J.S.A. § 2C:41-2" to "sue

therefor in any appropriate court and shall recover threefold any damages he sustains and the cost

of the suit, including a reasonable attorney's fee, costs of investigation and litigation."

105.    The language of N.J.S.A. § 2C:41-2(b) is nearly identical to the language of 18 U.S.C. §

1962(b), and thus, to the extent applicable, Plaintiffs here reallege and incorporate by reference

the entirety of Count I which arises under 18 U.S.C. § 1962(b).

106.    With respect to the threat of extortion, for purposes of the NJl RICO Act, "extortion"

is defined in relevant part under N.J.S.A. § 2C:20-5, as follows:

> A person is guilty of theft by extortion if he purposely and
> unlawfully obtains property of another by extortion. A person
> extorts if he purposely threatens to:
>
> . . .
>
> f.   Testify or provide information or *withhold* testimony or
> *information with respect to another's legal claim or
> defense*... (Emphasis added).

107.    Given the foregoing, Defendant Altman engaged in racketeering via extortion as defined

under New Jersey law in that he threatened Plaintiff Lento with extortion as detailed more

completely in Plaintiff's factual allegations above, but which, in short, amounted to Defendant

Altman demanding money (i.e., "property") from Plaintiff Lento upon threat of ceasing all work

on, and withholding the client files of, the approximately one-hundred (100) student defense clients

which had been assigned by Plaintiff Lento to Defendant Altman to handle, the consequences of

which would have had devastating professional ramifications for Plaintiff Lento.

108.    Defendant Altman also engaged in racketeering via extortion as defined under New Jersey

law when he threatened to send a mass email to all of the approximately one-hundred (100) open

student defense clients informing them he would be ceasing work on their matters as Plaintiff Lento had not paid him.

109.    This threat constitutes extortion under N.J.S.A. § 2C:20-5(c), in that Defendant Altman threated to "[e]xpose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute."

110.    Given that the threat, if Defendant Altman had followed through with it by sending said mass email, would have impaired Plaintiff Lento and Plaintiff LLF's business repute, this is another example of Defendant Altman committing a racketeering activity.

111.    Together, these two activities, along with other similar attempts by Defendant Altman to extort Plaintiff Lento, constitute a "pattern of racketeering activity" as defined by  N.J.S.A. § 2C:41-1(d), in that they "have either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."

112.    As a direct and proximate consequence of the conduct of Defendant Altman as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

113.    Because of Defendant Altman's violations of N.J.S.A. § 2C:41-2(b), Defendant Altman is liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including a reasonable attorney's fee, costs of investigation and litigation, pursuant to N.J.S.A. § 2C:41-4.

**COUNT V**
**NEW JERSEY STATE RICO**
**(N.J.S.A. § 2C:41-4 – Violation of N.J.S.A. § 2C:41-2(c))**
**AS TO DEFENDANTS ANTOINETTE MONK, ARI KRESH, RICH GILL,**

**JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10**

114.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

115.    Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in N.J.S.A. § 2C:41-1, *et seq.* (the "NJ RICO Act"), and thus, Plaintiffs bring this cause of action pursuant to the NJ RICO Act's civil remedies section, specifically, N.J.S.A. § 2C:41-4, which allows "any person damaged in his business or property by reason of a violation of N.J.S.A. § 2C:41-2" to "sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation."

116.    The language of N.J.S.A. § 2C:41-2(c) is nearly identical to the language of 18 U.S.C. § 1962(c), and thus, to the extent applicable, Plaintiffs here reallege and incorporate by reference the entirety of Count II which arises under 18 U.S.C. § 1962(c).

117.    "Trade or commerce" as defined under N.J.S.A. § 2C:41-1(h) of the NJ RICO Act, "shall include all economic activity involving or relating to any commodity or service," and as relevant herein, is the provision of legal services by all Defendants named in this Count in furtherance of the enterprise.

118.    As a direct and proximate consequence of the conduct of all Defendants named in this Count as alleged herein and as alleged in Count II, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

119.    Because of these Defendants' violations of N.J.S.A. § 2C:41-2(c), these Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit,

including a reasonable attorney's fee, costs of investigation and litigation, pursuant to N.J.S.A. § 2C:41-4.

**COUNT VI**
**NEW JERSEY STATE RICO**
**(N.J.S.A. § 2C:41-4 – Violation of N.J.S.A. § 2C:41-2(d))**
**AS TO ALL DEFENDANTS**

120.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

121.     Plaintiffs allege that Defendant Altman's conduct, and the conduct of each and every Defendant named in Plaintiffs' Complaint, constitutes racketeering as set forth in N.J.S.A. § 2C:41-1, *et seq.* (the "NJ RICO Act"), and thus, Plaintiffs bring this cause of action pursuant to the NJ RICO Act's civil remedies section, specifically, N.J.S.A. § 2C:41-4, which allows "any person damaged in his business or property by reason of a violation of N.J.S.A. § 2C:41-2" to "sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation."

122.     The language of N.J.S.A. § 2C:41-2(d) is similar to the language of 18 U.S.C. § 1962(d), and thus, to the extent applicable, Plaintiffs here reallege and incorporate by reference the entirety of Count III which arises under 18 U.S.C. § 1962(d).

123.     Specifically, N.J.S.A. § 2C:41-2(d) provides that, "It shall be unlawful for any person to conspire as defined by N.J.S.A. § 2C:5-2, to violate any of the provisions of this section."

124.     N.J.S.A. § 2C:5-2 provides in relevant part that:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
>
> (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

125.    As alleged in the preceding Counts, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

126.    At all times relevant and continuing through at least July 24, 2022, and beyond, all Defendants and each Defendant agreed to and did conspire to violate N.J.S.A. §§ 2C:41-2 (b) and (c), as alleged above in Counts IV & V, respectively, and as incorporated herein, in violation of N.J.S.A. § 2C:41-2(d).

127.    The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

128.    Defendants have knowingly, willfully, intentionally, and with the purpose of promoting or facilitating the predicate acts of extortion as alleged earlier, conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (extortion, actual or threatened).

129.    Defendants have knowingly, willfully, intentionally, and with the purpose of promoting or facilitating the predicate acts of extortion as alleged earlier, conspired and agreed to receive income derived from a pattern of racketeering activity (extortion, actual or threatened) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

130.     Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to with the purpose of promoting, facilitating, or further the conspiratorial scheme described above.

131.     Defendants' conduct constitutes a conspiracy to violate N.J.S.A. §§ 2C:41-2 (b) and (c) in violation of N.J.S.A. § 2C:41-2(d).

132.     As a direct and proximate consequence of the conduct of all Defendants as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount in excess of $75,000.00, said damages to be proven at the time of trial.

133.     Because of all Defendants' violations of N.J.S.A. § 2C:41-2(d), all Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including a reasonable attorney's fee, costs of investigation and litigation, pursuant to N.J.S.A. § 2C:41-4.

### COUNT VII
### BREACH OF CONTRACT
### AS TO DEFENDANTS KEITH ALTMAN, ESQ.
### & THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"

134.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

135.     Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

136.     As detailed more fully earlier herein in Plaintiff's Factual Allegations, the oral agreement provided for a number of things, specifically:

(1)     Plaintiff Lento would begin associating his student defense cases to Defendant Altman for Altman and the Altman Firm to take the lead on;

(2)    all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Lento as the attorney of record and the progenitor of the matters, and with 40% going to Altman for his time and labor.

(3)    this 60/40 split would occur only after LLF's incurred marketing expenses has been deducted from the total fee;

(4)    a non-compete clause on the part of Altman and the Altman Firm, wherein all student defense cases which Altman and the Altman Firm handled would be those and only those which were worked collaboratively with Lento and LLF pursuant to their oral agreement – in other words, Altman agreed to handle these student defenses cases exclusively in association with Lento and LLF; and finally,

(5)    in consideration of Lento's having started the Student Defense business in 2013 or earlier and Lento's larger share of the fee split, Lento agreed to advertise for student defense matters as alleged earlier, through such means as online ad campaigns and Pay Per Click ("PPC"), and that as Altman would only be handling such matters with Lento and LLF, he was prohibited from advertising independently for case of that nature.

137.    Despite Plaintiffs having fully performed pursuant to the terms of this oral agreement, and the subsequent oral modification to the fee split in February 2022, with Plaintiff having consistently paid Defendant Altman all monies to which he was owed, Defendants Altman and the Altman Firm have nonetheless breach numerous provisions of the oral agreement.

138.    Specifically, Defendants Altman and the Altman Firm have failed to perform pursuant to the oral agreement, in that:

a. they have repeatedly failed to competently handle various student defense cases assigned to them;

b. they have repeatedly failed to honor the terms of the fee split and subsequent revision thereto by demanding – and even extorting – of Plaintiffs more money than which they were entitled to;

c. they have advertised for student defense matters independent of Plaintiffs Lento and LLF, in violation of the non-compete provision of the oral agreement;

d. they have taken on new student defense matters independent of Plaintiffs Lento and LLF, in violation of the non-compete provision of the oral agreement; and

e. they have ceased work on all open student defense matters assigned to them by Plaintiffs Lento and LLF in violation of their obligation to perform under the oral agreement.

139.    As a direct and proximate result of Defendant Altman and Defendant the Altman Firm's breach of contract as alleged, Plaintiffs have been caused to sustain damages.

**COUNT VIII**
**BAD FAITH**
**AS TO DEFENDANTS KEITH ALTMAN, ESQ.**
**& THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"**

140.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

141.    As previously alleged, Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

142.    As alleged more fully in the previous Count (Count VII), Defendants have breached said contract.

143.    Section 205 of the Restatement (Second) of Contracts suggests that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

144.    It is well-settled law that, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey..." _Wilson v. Amerada Hess Corp._, 168 N.J. 236, 244 (2001), and as such, "[e]very party to a contract... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." _Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs._, 182 N.J. 210, 223-24 (2005).

145.    Here, with respect to the oral contract entered into between the parties, Defendants Altman and the Altman Firm did not exercise good faith and fair dealing in their performance of the contract, in that, they willfully and intentionally violated many provisions of the agreement and have ceased performance further unless Plaintiffs consent to be extorted.

146.    As a direct and proximate result of the bad faith dealing of the Defendants, Plaintiffs have been caused to suffer damages.

### COUNT IX
### TORTIOUS INTERFERENCE WITH CONTRACT
### AS TO DEFENDANTS KEITH ALTMAN, ESQ.
### & THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"

147.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

148.    Plaintiff Lento, individually and on behalf of Plaintiff LLF, has entered into numerous attorney fee agreements with student defense clients whose matters had subsequently been assigned to Defendants Altman and the Altman Firm to be handled by them pursuant to the terms of Lento and Altman's oral agreement.

149.    Plaintiffs have a clear and discernable interest, both monetarily and professionally, in the preservation of the attorney-client relationship arising under those fee agreements.

150.    It is well settled that, in addition to reasonable expectations of economic advantage, New Jersey law protects a party's interest in contracts already made.

151.    There are approximately one-hundred (100) open student defense which Plaintiffs had assigned Defendants Altman and the Altman Firm to be handled by them pursuant to the terms of Lento and Altman's oral agreement, each with such an attorney fee agreement.

152.    As alleged earlier herein, due to a fee dispute between Defendant Altman and Plaintiff Lento – a dispute which is, or rather, should be, of no concern to the individual student defense clients – Defendants Altman and the Altman Firm threatened on or about July 24, 2022, to cease all work on all student defense matters assigned them by Plaintiffs, unless Plaintiff Lento concede to Defendant Altman's extortionate demand of $500,000.00 by the following day, July 25, 2022.

153.    So as to preserve both Plaintiffs' clear and discernable interest in the matters, as well as the clients' interests in their own matters, Plaintiff Lento agreed to tender $365,000.00 to Defendant Altman to settle the fee dispute, despite not having conceded that Defendant Altman was actually entitled to said monies.

154.    Ultimately, upon realizing that he was being extorted and for fear of further financial and professional exposure should he concede to Defendant Altman's extortionate demand, Plaintiff Lento refused to tender the $365,000.00 to Defendant Altman.

155.    Defendant Altman has since ceased all work on the student defense matters, and not only that, but he is refusing to turn over the case files for the matters to Plaintiffs Lento and LLF, such that Plaintiffs can protect both the client's interests in their matters and Plaintiff's own financial and professional interests.

156.    Plaintiffs' interests in maintaining the attorney-client relationships arising under each of the student defense clients' fee agreements is clearly a protectable interest under New Jersey law.

157.    Despite Plaintiffs' interests, Defendants Altman and the Altman Firm have intentionally and without justification interfered in the preservation and ultimate consummation of the student defense clients' fee agreements with Plaintiffs, as aforesaid.

158.    There is more than a reasonable likelihood that the interference of Defendants Altman and the Altman Firm, if permitted to continue, would ultimately cause the loss of the prospective economic and professional advantage to the Plaintiffs – in other words, the loss of a successful resolution to the clients' matters – not to mention the loss of said clients' own interests in their matters.

159.    Thus, as a direct and proximate result of Defendant Altman and Defendant the Altman Firm's tortious interference into the student defense clients' fee agreements with Plaintiffs, Plaintiffs have been, and are presently being, prevented from preserving the attorney-client relationships arising under said agreements, and further, are being prevented from protecting the clients' interests with respect to their matters, causing Plaintiffs to sustain damages thereby.

**COUNT X**
**PROFESSIONAL NEGLIGENCE**
**AS TO DEFENDANTS KEITH ALTMAN, ESQ.**
**& THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"**

160.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

161.    Defendants Altman and the Altman Firm hold themselves out to the public as professional purveyors of legal services, respectively, a licensed attorney and his law firm.

162.    As such, these Defendants owe a duty of care to the public and to other attorneys with whom they associate on matters, in the conduct of their business operations.

163.    Defendants Altman and the Altman Firm have breached this duty of care as owed to the Plaintiffs in that they failed to take care in the execution of their profession and the provision of their legal services, such that they have failed to competently prosecute the student defense cases which Plaintiffs assigned to them – this includes their failure to work on these matters, whether in part or at all.

164.    Specifically, Defendants Altman and the Altman firm have failed to take reasonable steps as would be expected of a reasonably prudent attorney and law firm to protect the interests of the approximately one-hundred (100) student defense clients with open matters which had been assigned to the Defendants by Plaintiffs.

165.    But-for the failures of Defendants Altman and the Altman firm to take reasonable steps as would be expected of a reasonably prudent attorney and law firm to protect the interests of the approximately one-hundred (100) student defense clients with open matters which had been assigned to the Defendants by Plaintiffs, these Defendants have jeopardized the interests of these student defense clients with respect to their matters, and thus have caused injury, both pecuniary and reputational, to Plaintiffs.

166.    It is reasonably foreseeable that an attorney and law firm such as Plaintiffs who associate cases to another attorney and firm could be harmed or prejudiced by said associated attorney and firm's failure to competently prosecute those matters.

167.    Therefore, the respective failures of Defendants Altman and the Altman Firm, through their errors, omissions, and/or professional negligence as alleged herein, were both the actual and proximate cause of Plaintiffs' damages.

**COUNT XI**
**NEGLIGENCE *PER SE***
**(Violation of NJ RPC 1.16 / MI RPC 1.16 / MRPC 1.16)**
**AS TO DEFENDANT KEITH ALTMAN, ESQ.**

168.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

169.    Pursuant to the New Jersey Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of New Jersey, specifically, NJ RPC 1.16, entitled, "Declining or Terminating Representation", "Except as otherwise permitted by paragraph (c) [which is inapplicable here], a lawyer may withdraw from representing a client if:" as relevant here, "(1) withdrawal can be accomplished without material adverse effect on the interests of the client."

170.    Similarly, pursuant to the Michigan Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of Michigan, specifically MI RPC 1.16, also entitled, "Declining or Terminating Representation", "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client..."

171.    Similarly, pursuant to the Model Rules of Professional Conduct, upon which both New Jersey and Michigan's Rules are based, specifically MRPC 1.16, also entitled, "Declining or Terminating Representation", "a lawyer may withdraw from representing a client if:" as relevant here, "(1) withdrawal can be accomplished without material adverse effect on the interests of the client..."

172.    It is clear then, that regardless of which jurisdiction's Rules of Professional Conduct this Court chooses to apply to in this matter, Defendant Altman, was bound by the Rules of Professional Conduct governing attorneys to refrain from withdrawing from representing a client where such a withdrawal would have a material adverse effect on the interests of the client.

173.    Here, Defendant Altman has expressly stated to Plaintiff Lento that he would cease working on all student defense clients' matters, and further, refuse to turn the case files over to Plaintiffs such that they could resume the representation, by Monday, July 25, 2022, if Plaintiff Lento did not consent to Defendant Altman's extortionate monetary demand. This date was later extended to Saturday, July 30, 2022.

174.    Defendant Altman has ceased work on the approximately one-hundred (100) open student defense matters which Plaintiffs had assigned to him, abandoning these matters completely through his withdrawal, and has further, spitefully and obstinately refused to enable Plaintiffs to protect the clients' interests given that Defendant Altman refuses to turn over the clients' case files to Plaintiff.

175.    Thus, in each and every one of these student defense matters, Defendant Altman is violating his ethical obligation under NJ RCP / MI RCP / MRPC 1.16, in that he withdrew from the representations despite that fact that his withdrawal has a material adverse effect on each and every such client.

176.    These clients are within the class of individuals these Rules of Professional Conduct were intended to protect in that they are clients of an attorney bound by said Rules.

177.    Further, the conduct Defendant Altman has engaged in is precisely the type of conduct these Rules were intended to prevent as evident by the language of the relevant Rule.

178.    As such, Defendant Altman's conduct is in direct violation of NJ RCP / MI RCP / MRPC 1.16, and is therefore negligent *per se*.

179.    As a direct and proximate result of Defendant Altman's negligence per se, Plaintiff has suffered damages, both pecuniary and reputational in nature.

## COUNT XII
## NEGLIGENCE *PER SE*

**(Violation of NJ RPC 1.16 / MI RPC 1.16 / MRPC 1.16)**
**AS TO DEFENDANT KEITH ALTMAN, ESQ.**

180.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

181.    Pursuant to the New Jersey Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of New Jersey, specifically, NJ RPC 8.4, entitled, "Misconduct", "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

182.    Similarly, pursuant to the Michigan Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of Michigan, specifically MI RPC 8.4, also entitled, "Misconduct," "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

183.    Similarly, pursuant to the Model Rules of Professional Conduct, upon which both New Jersey and Michigan's Rules are based, specifically MRPC 8.4, also entitled, "Misconduct," "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

184.    It is clear then, that regardless of which jurisdiction's Rules of Professional Conduct this Court chooses to apply to in this matter, Defendant Altman, was bound by the Rules of Professional Conduct governing attorneys to refrain from knowingly violating the Rules of Professional Conduct.

185.    As articulated more fully in the previous Count (Count XI), Defendant Altman knowingly and intentionally violated NJ RCP / MI RCP / MRPC 1.16, in that he knowingly and intentionally withdrew from the representation of each of the approximately one-hundred (100) open student

defense clients' matters which had been assigned to him by Plaintiffs, despite knowing that his withdrawal would have a material adverse effect on each and every such client.

186.    These clients are within the class of individuals these Rules of Professional Conduct were intended to protect in that they are clients of an attorney bound by said Rules.

187.    Further, the conduct Defendant Altman has engaged in is precisely the type of conduct these Rules were intended to prevent as evident by the language of the relevant Rule.

188.    As such, Defendant Altman's conduct is in direct violation of NJ RCP / MI RCP / MRPC 8.4, and is therefore negligent *per se*.

189.    As a direct and proximate result of Defendant Altman's negligence per se, Plaintiff has suffered damages, both pecuniary and reputational in nature.

## COUNT XIII
## UNJUST ENRICHMENT
## AS TO DEFENDANTS KEITH ALTMAN, ESQ.
## & THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"

190.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

191.    As previously alleged, Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

192.    In short, and among other things, the oral agreement contemplated a fee sharing scheme between Plaintiffs and Defendants Altman and the Altman Firm resulting from their collaborative handling of student defense matters.

193.    Despite Plaintiffs consistently paying Defendants Altman and the Altman Firm the share to which they were owed pursuant to the oral agreement, Defendant Altman on behalf of himself and the Altman Firm regularly demanded more money than that to which they were entitled under

the oral agreement, even going so far as to extort Plaintiffs under threat of litigation should they not comply.

194.     Begrudgingly and under duress given Defendant Altman's threats, Plaintiffs on multiple occasions conceded to Defendant Altman's extortionate demands, paying him moneys to which he was not entitled under the oral agreement.

195.     Defendants have retained the economic benefit unlawfully and unjustly conferred upon them by Plaintiffs, despite Plaintiffs having received no benefit in consideration therefor.

196.     Thus, Defendants have been unjustly enriched at Plaintiffs' great expense, said damages to be proven at the time of trial.

**COUNT XIV**
**CONVERSION**
**AS TO DEFENDANTS KEITH ALTMAN, ESQ.**
**& THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW"**

197.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

198.     Plaintiffs, as the attorneys of record of the approximately one-hundred (100) open student defense clients' matters which had been assigned to Defendants Altman and the Altman Firm, have a right to immediate possession of the client files for said student defense matters.

199.     Said client files exist and are presently in the possession of Defendants Altman and the Altman Firm.

200.     Despite Plaintiffs having made demand for the return of these client files, Defendants Altman and the Altman Firm refuse to do so, and thus, have wrongfully interfered with Plaintiffs' possessory interest in same, the direct and proximate result of which has caused Plaintiff to incur damages of both a pecuniary and reputational nature.

**COUNT XV**

## CONVERSION
## TORTIOUS CONDUCT OF FICTITIOUS INDIVIDUALS AND ENTITIES
## AS TO DEFENDANTS JOHN DOES 1-10 AND ABC BUSINESS ENTITIES 1-10

201. Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

202. At all times relevant to this action, Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, are fictitious names for individuals and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private business entities, who participated in the tortious actions of Defendants described herein, whether by way of their negligence or in other ways as of yet undetermined.

203. As a direct and proximate results of the negligence and/or tortious conduct of Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, Plaintiffs have been caused to suffer, and in fact did suffer, significant damages.

204. Plaintiffs allege an insufficient opportunity to determine the identity of all individuals or business entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiffs.

205. As such, Plaintiffs specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JOSEPH D. LENTO, ESQ. and LENTO LAW FIRM, LLC, pray for relief as to all counts as follows:

1) Granting of Plaintiffs' Order to Show Cause in its entirety;

2) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive/exemplary damages, with interest;

3) For such other further relief as the Court may deem equitable and just.

Additionally, with respect to Counts I through III:

1) Threefold/treble damages and the cost of the suit, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

Additionally, with respect to Counts IV through VI:

1) Threefold/treble damages, costs of suit, including a reasonable attorney's fee, and costs of investigation and litigation, pursuant to <u>N.J.S.A.</u> § 2C:41-4;

Additionally, with respect to Count VII, consequential damages; and

Additionally, with respect to Counts VII and XIV, either:

A) Specific performance of the oral contract, such that Defendants Altman and the Altman Firm resume work on the subject student defense matters; or

B) Replevin and/or trover of the matters, such that the case files are returned to Plaintiffs or Plaintiffs are appropriately compensated for the loss of same.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs JOSEPH D. LENTO, ESQ. and LENTO LAW FIRM, LLC demand a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: <u>August 1, 2022</u>    LENTO LAW GROUP, P.C.

SAMUEL D. JACKSON, ESQUIRE
ATTORNEY ID: 130452017
LENTO LAW GROUP, P.C.
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
(T) (856) 652-2000
(F) (856) 375-1010
sdjackson@lentolawgroup.com

*Attorney for Plaintiffs Joseph D. Lento, Esq. &*
*Lento Law Firm, LLC*

## **VERIFICATION**

I, JOSEPH D. LENTO, ESQ., individually and on behalf of LENTO LAW FIRM, LLC, declare

under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for

and the factual statements contained therein are true and correct to the best of my personal

knowledge.

Executed on this 1st day of August, 2022.

_____

JOSEPH D. LENTO, Plaintiff, individually, and
On behalf of LENTO LAW FIRM, LLC, Plaintiff