Samuel D. Jackson, Esq.
Attorney ID: 130452017
**LENTO LAW GROUP, P.C.**
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
(T) (856) 652-2000
sdjackson@lentolawgroup.com

Howard W. Foster, Esq. (*pro hac vice* admission granted)
**FOSTER P.C.**
10 South Riverside Plaza, Suite 875
Chicago, Illinois 60606
(T) (312) 726-1600
HFoster@fosterpc.com

*Attorneys for Plaintiffs Joseph D. Lento, Esq.*
*& Lento Law Firm, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. LENTO ESQ., an individual,<br><br>LENTO LAW FIRM, a limited liability company,<br><br>Plaintiffs<br><br>KEITH ALTMAN, ESQ., an individual,<br><br>THE LAW OFFICE OF KEITH ALTMAN PLLC a/k/a K ALTMAN LAW, a limited liability company,<br><br>ARI KRESCH, an individual,<br><br>RICHARD GILL, an individual,<br><br>JOHN DOES 1-10, fictitious individuals, and<br><br>ABC BUSINESS ENTITIES 1-10, fictitious entities,<br><br>Defendants. | Civil Action No.: 1:22-cv-04840<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

1

Plaintiffs JOSEPH D. LENTO, ESQ. and LENTO LAW FIRM, LLC by and through their undersigned counsel, and by way of First Amended Complaint, bring this action for damages against Defendants KEITH ALTMAN, ESQ., THE LAW OFFICE OF KEITH ALTMAN, PLLC, also known as "K ALTMAN LAW", ARI KRESH, RICHARD GILL, JOHN DOES 1-10, and ABC BUSINESS ENTITIES 1-10, alleging as follows:

## I.      LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Joseph D. Lento, Esq.
309 Grayling Avenue
Narberth, Pennsylvania 19072

Lento Law Firm, LLC
242 Terrace Bvld., Suite D1
Voorhees, New Jersey 08043

Keith Altman, Esq.
30474 Fox Club Drive
Farmington Hills, Michigan 48331

The Law Office of Keith Altman, PLLC
a/k/a "K Altman Law"
37555 West 12 Mile Road
 Farmington Hills, Michigan 48331

Ari Kresch
31460 E. Stonewood Court
Farmington Hills, Michigan 48334

Richard Gill
37555 West 12 Mile Road
Farmington Hills, Michigan 48331

## II.      INTRODUCTION

1.       This is an action alleging breach of contract, bad faith, tortious interference with contract, fraud, civil conspiracy to commit fraud, negligence, negligence per se, racketeering and extortion, all arising from a scheme between Defendants that was designed and implemented to defraud Plaintiffs JOSEPH D. LENTO, ESQ. ("Lento") and LENTO LAW FIRM, LLC ("LLF").

2.       As to the federal and New Jersey RICO claims namely Defendant KEITH ALTMAN, ESQ. ("Altman") conspired  with his employees ARI KRESH and  RICH GILL, to engage in a pattern of racketeering activity which has damaged Plaintiff LLF and will continue to do so.

3.       Specifically, Plaintiff Lento and Defendant Altman entered into an agreement to collaboratively provide advisory services to student defense clients and share resources and fees in connection therewith.

4.       Defendant Altman and the Altman Firm, together with all other named Defendants, have acted at Altman's direction in a concerted effort to isolate and exclude Plaintiff Lento from the joint venture, and have further refused to turn over to Plaintiff Lento the case files for the student defense cases in which Plaintiff Lento is the attorney of record unless Plaintiff Lento concedes to Defendant Altman's extortionate demands.

## III.      PARTIES

5.       Plaintiff JOSEPH D. LENTO, ESQ. ("Lento"), is  citizen of the Commonwealth of Pennsylvania.

6.       Plaintiff LENTO LAW FIRM, LLC is a Pennsylvania corporation with its principal place of business in Pennsylvania.  It also has an office in this district.

7.       Defendant KEITH ALTMAN, ESQ. ("Altman"), is a citizen of Michigan.

8.    Defendant THE LAW OFFICE OF KEITH ALTMAN, PLLC, also known as "K ALTMAN LAW", is a Michigan limited liability company with its principal place of business in Michigan.

9.    Defendant ARI KRESCH is a citizen of Michigan.

10.   Defendant RICHARD GILL is a citizen of Michigan.

## IV.    JURISDICTION & VENUE

11.   This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 as a federal question because this action arises, in part, under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").

12.   This Court has supplemental jurisdiction of the remaining Counts as they arise from the same nucleus of facts pursuant to 28 U.S.C § 1367.

13.   This Court further also has personal jurisdiction over all Defendants pursuant to 28 U.S.C. § 1965(b) as the Defendants have purposefully directed their conduct at this forum.  Accordingly, the, the ends of justice require this Court's exercise of personal jurisdiction over the Defendants.

14.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiffs and Defendants.

15.   This Court also has original subject matter jurisdiction given that a number of the student defense cases contemplated by the oral agreement between Plaintiff Lento and Defendant Altman are New Jersey matters, and thus, matters which this Court has an interest in safeguarding.

16.   Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district.

4

17.    Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each Defendant, at least in part, transacts his or her affairs in this judicial district given each Defendants' participation in the conspiracy to harm the Lento Law Firm.

## VI.    FACTUAL ALLEGATIONS

18.    In 2008, Plaintiff Lento founded the predecessor firm to the present-day Lento Law Firm, LLC ("LLF"), a Pennsylvania-based law firm with a New Jersey office which handles many of the matters at issue in this case.  .

19.    Plaintiff Lento had been aware of Defendant Altman's reputation as an attorney and was considering him for a future associate position within LLF as far back as December 2019, if not earlier.

20.    Lento and Altman finally connected in or around March 2020 at LLF's New Jersey office and came to an arrangement with respect to the shared handling of student defense matters involving such things as academic misconduct, student code of conduct violations, and Title IX violations.

21.    From approximately March 2020 to August 2020, Lento began associating his student defense cases to Altman for Altman to take the lead on, under a verbal agreement.  The terms were that all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Lento as the attorney of record and the progenitor of the matters, and with 40% going to Altman for his time and labor.

22.    Importantly, it was discussed and agreed as between Lento and Altman this 60/40 split would occur only after LLF's incurred marketing expenses has been deducted from the total fee.

23.    It was agreed that deducting LLF's marketing expenses off the top prior to the fee split was the only method of fairly and proportionately compensating both Lento and Altman, for if LLF's expenses were deducted from Lento's 60% share post-split, Altman, comparatively, would be

5

receiving a windfall for each matter considering he was associated into each matter by Lento, the originating attorney.

24.     By approximately August 2020, Lento began a limited Pay Per Click (PPC) ad campaign for LLF's student defense practice, which resulted in a marked increase in the firm's volume of student defense cases.

25.     By approximately January 2021, Lento increased the PPC ad budget and the number of student defense leads LLF received increased significantly.

26.     Throughout 2021, however, Plaintiff Lento began noticing that problems were arising with respect to Defendant Altman's handling of the student defense matters.

27.     Specifically, Altman had failed on more than one occasion to follow-up with clients' phone calls and emails, which lead to several matters not being handled in a timely manner, such that the clients became frustrated and demanded the issuance of a refund of their fee, which Lento and LLF had no choice but to issue.

28.     By the Spring of 2021, the business relationship between Lento and Altman began to sour when Altman began demanding that Lento pay him a larger share of the fees collected in the student defense matters.

29.     Further, although it was Altman's responsibility to send out fee agreements to sign new clients, Lento eventually discovered that Altman had been neglecting to do so, and so many of the early student defense cases which Altman handled for LLG were performed pursuant to no client fee agreement.

30.     This failure to send client fee agreements was also partially the fault of Altman's Administrative Assistant, who was also responsible for many of the Altman Firm's administrative

duties, but who would regularly send out client fee agreements to new clients weeks or even months after the clients had paid their fee for legal services.

31.     Additionally, around this time Altman's poor handling of a particular matter involving a school student resulted in the client's mother leaving LLF a negative review online.

32.     Lento confronted Altman about the negative review, expressing to him the seriousness with which Lento takes bad reviews of his practice, saying, "This is my business's reputation on the line here!" (paraphrasing).

33.     To Lento's discomfort, Altman responded, "This is *my* business too," which, of course, it neither was then, nor is presently, as Altman has never had an ownership interest in LLF.

34.     Altman's co-opting of Lento's business became most apparent in roughly mid-2021 when Lento discovered that initial letters of representation in student defense matters which had theretofore been transmitted on LLF letterhead were now being sent out by Altman on letterhead for Defendant The Law Office of Keith Altman, PLLC, also known as  "K Altman Law" ("the Altman Firm").

### COUNT I
### VIOLATIONS OF THE RACKETEER INFLUENCED
### AND CORRUPT ORGANIZATIONS ACT (RICO)
**(As to Defendants Keith Altman, Esq., Ari Kresch, & Richard Gill)**

35.     Plaintiffs incorporate and reallege the foregoing paragraphs as if fully set forth herein.

36.     Plaintiff, Lento Law Firm was founded in 2008 and represents clients in numerous types of litigation including defending students in disciplinary cases involving academic misconduct, the violation of student codes of conduct and Title IX violations.  Joseph D. Lento ("Lento") is the principal of the firm.

37.     In 2020 Keith Altman ("Altman") was the principal of The Law Office of Keith Altman PLLC (the "Altman Firm") and approached the Lento Law Firm with a proposal for the firms to collaborate on student disciplinary cases.

38.     Richard Gill ("Gill") is the Managing Director of the Altman Firm and has agreed with Altman in the commission of all of the acts described below.

39.     Ari Kresch ("Kresch") works closely with Altman and has agreed with Altman in the commission of all of the acts detailed below.

40.     In March 2020 the firms reached an agreement by which they would work together on cases and divide fees earned on a 60%-40% basis in favor of the Lento Law Firm after the payment of marketing expenses.

**Altman's Extortion Scheme**

41.     By June 2021, before an accounting of fees was completed, Altman threatened to leave the joint venture with the Lento Law Firm, to stop working on the cases and to stop paying his employees if Lento Law Firm did not pay him $200,000.  He discussed making these demands on The Lento Law Firm with Gill and Kresch and they approved of doing so.  However, the three knew that The Lento Law Firm did not owe Altman $200,000.  The threats to abort cases with pending court dates and deadlines  instilled fear in Mr. Lento that his clients would not be served, his business would be damaged and his firm would lose money.  Consequently, he agreed, under duress, to have the firm pay Altman the $200,000 over the next three months as an advance on fees to which the Altman Firm might be entitled.

42.     The firms then continued to work on their respective cases until November 2021, when Altman, again with the agreement of Gill and Kresch, threatened to stop working on his cases and to sue the Lento Law Firm unless it paid him $365,000.  Again, fearing a tremendous loss of

business and income, the Lento Law Firm paid Altman another $200,000 under duress as an advance on fees.

43.     In or about February 2022, Altman, again with the approval of Gill and Kresch, threatened to stop working on his cases if the Lento Law Firm did not change the 60-40 percentage split on case fees to a formula that was skewed much more in his favor.  Again, the same fear of lost business was instilled from the threat to abort work on cases.  Again, under duress, the Lento Law Firm agreed to change the split to 55%-45% in its favor (a five percent adjustment in Altman's favor) beginning approximately in mid-February 2022, plus the Altman firm would be paid 25% of consultation fees earned on cases. It had previously not been paid any part of the consultation fees.

44.     In May 2022, Altman, again with the approval of Gill and Kresch, threatened to stop working on the cases and lay-off his law firm's employees unless the Lento Law Firm paid the Altman Firm $130,000/month.  Again, this threat instilled the same fear of lost business.  The Lento Law Firm agreed under this duress to pay the $130,000 per month starting in June 2022.

45.     In July 2022, Altman, again with the approval of Gill and Kresch, threatened to stop working on cases unless the Lento Law Firm paid Altman $165,000 per month and the monthly payment was to be further increased.  Again, this threat instilled the same fear of lost business. The Lento Law Firm did not agree to the $165,000 demanded.  Therefore, Altman's threat was an attempt to extort more money from it.

46.     Finally, on July 24, 2022, Altman, again with the approval of Gill and Kresch, attempted to extort $500,000 from the Lento Law Firm.  He threatened that unless he was paid within 24 hours, he would file a state bar complaint against Lento, and inform their student defense clients that he would stop working on their cases because "Joe did not pay me."  This instilled fear of

economic harm, but the Lento Law Firm did not pay. It therefore constitutes another act of attempted extortion.

47.     Each of these extortions and attempted extortions violates, the Hobbs Act, which provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. §1951(a).

48.     "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id*. at (b)(2).

49.     In each instance, Altman obtained money, which is "property," from the Lento Law Firm with its consent by the use of fear of economic loss. Additionally, each act of extortion affected commerce because Altman made his threats from either Michigan or Pennsylvania to the Lento Law Firm in New Jersey.

50.     As detailed below, violation of 18 U.S.C. §1951 is a form of "racketeering activity." These acts of extortion are therefore RICO violations.

**Altman's Wire Fraud Scheme to Take the Lento Law Firm's Business**

51.     As part of their joint venture, the Lento Law Firm agreed to advertise for clients on the internet through Pay Per Click ads on Google and various other marketing endeavors. In return, Altman and the Altman Firm agreed not to advertise independently and/or solicit business for this type of case in competition with the Lento Law Firm.

52.     However, in October 2021 Altman, with the approval of Gill and Kresch, unveiled a revamped website for the Altman Firm with a home page blatantly advertising for student defense

and Title IX matters, and numerous other pages across the website related to such areas of practice. *See* a screen capture from Defendant Altman's website located at https://www.kaltmanlaw.com/ below as **IMAGE 1**.

**IMAGE 1.**



53.    On or about July 24, 2022 Altman unveiled a revised website with many more pages devoted to student defense than was previously on the site.

54.    Altman's website largely copied the Lento Law Firm's website by paraphrasing each section. Compare, Defendant Altman's student defense website at https://www.kaltmanlaw.com/student-defense with Lento Law Firm's student defense website at https://www.studentdisciplinedefense.com/.

55.     Additionally, with reference to Defendant Altman's website, some of the testimonials listed in the "student stories" tab located at https://www.kaltmanlaw.com/student-stories are testimonials from clients of the Lento Law Firm to whom Altman was merely assigned to handle their matters pursuant to their agreement, not clients of the Altman firm.

56.     Beginning on or about August 4, 2022, Altman, with the approval of Gill and Kresch, posted Pay Per Click ads on Google which use the Lento Law Firm name (and variations-Joseph D. Lento, Lento Law GROUP, etc.) but direct web traffic to the Altman Firm.  *See*, the below screen captures from Google:

**IMAGE 2.**



Ad · https://www.kaltmanlaw.com/studentdefense/legalexperts     ⋮   (888) 984-1341
**The Student Defense Lawyer - Lento Law Firm**
Academic misconduct, Title IX, and all areas of student rights. College Sexual Misconduct. Expert representation for students in disciplinary cases at colleges and universities.
Meet K Altman Law Team · Students Title IX Stories · What Title IX Entails?

**IMAGE 3.**



Ad · https://www.kaltmanlaw.com/

Lento Law Firm - Team of Experienced Litigators

**IMAGE 4.**



Ad · https://www.kaltmanlaw.com/     ⋮   (888) 984-1341
Lento Law Firm - Facing Academic Misconduct?
Academic misconduct, Title IX, and all areas of student rights. College Sexual Misconduct.
**Lento Law Firm**. Expert representation for students in disciplinary cases. Title IX Cases.
Meet K Altman Law Team · What Title IX Entails? · Students Title IX Stories

**IMAGE 5.**

Ad · https://www.kaltmanlaw.com/     ⋮     (888) 984-1341

Lento Law Firm - Student Defense Expert Lawyers

Academic misconduct, Title IX, and all areas of student rights. College Sexual Misconduct.
**Lento Law Firm.** Expert representation for students in disciplinary cases. Top Rated
**Law Firm.**
Meet K Altman Law Team · Students Title IX Stories · What Title IX Entails?

**IMAGE 6.**

Ad · https://www.kaltmanlaw.com/     ⋮

Lento Law Firm - Academic Misconduct Defense

Academic misconduct, Title IX, and all areas of student rights. College Sexual Misconduct.
**Lento Law Firm.** Expert representation for students in disciplinary cases. Title IX Cases.
Meet K Altman Law Team · Student Rights Defense · What Title IX Entails?

**IMAGE 7.**

Ad · https://www.kaltmanlaw.com/     ⋮     (888) 984-1341

Your Title IX Defense - Joseph Lento

Academic misconduct, **Title IX**, and all areas of student rights. College Sexual Misconduct.
Expert representation for students in disciplinary cases at colleges and universities.
Meet K Altman Law Team · Students Title IX Stories · Student Rights Defense

**IMAGE 8.**

Ad · https://www.kaltmanlaw.com/studentdefense/legalexperts     ⋮     (888) 984-1341

Student Defense Expert Lawyers - Joseph Lento

Academic misconduct, Title IX, and all areas of **student** rights. College Sexual Misconduct.
**Joseph Lento.** Expert representation for **students** in disciplinary cases.

57.     Upon information and belief, this is an ongoing scheme to take business from the Lento

Law Firm.  The ads remain on the internet and are using the Lento Law Firm's name and reputation

in the student defense field to direct Lento Law Firm's potential clients to Altman's website and

law firm.  The Lento Law Firm has demanded that these fraudulent and unfair Google ads be taken

13

off the internet.  Altman refuses to do so.  Therefore, the use of the internet to harm the Lento Law

Firm is the regular way Altman, with the approval of Gill and Kresch, operates the Altman Firm

and will not cease without judicial intervention.

58.     Each of these uses of the internet to harm the Lento Law Firm was intended to deceive and

confuse potential clients seeking the expertise of the Lento Law Firm, by diverting them to the

website of the Altman Firm.  This is a "scheme to defraud" in violation of the wire fraud statute,

18 U.S.C. §1343, which provides:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises, transmits
> or causes to be transmitted by means of wire… communication in
> interstate or foreign commerce… shall be fined under this title or
> imprisoned not more than 20 years, or both.

18 U.S.C. §1343.

59.     The placement of ads on Google entails the use of interstate wires as the Altman Firm is

domiciled in Michigan and Google is in California.  Additionally, the ads solicit potential clients

from all over the country and ask them to contact the Altman Firm in Michigan to establish an

attorney-client relationship.

60.     This scheme was intended to, and did, damage the Lento Law Firm by taking away its

business and diverting it to the Altman Firm.

**The Defendants Have Conspired to Violate RICO**

61.     This Count is brought against defendants Altman, Gill and Kresch for conspiring to violate

18 U.S.C. §1962(c), which makes it illegal for "any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."  Accordingly, the claim is brought pursuant to 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1962(c).

62.     Altman, Gill and Kresch are "persons" pursuant to 18 U.S.C. §1961(3) in that they are each an "individual… capable of holding a legal or beneficial interest in property."

63.     The Law Office of Keith Altman PLLC a/k/a K Altman Law is an enterprise pursuant to 18 U.S.C. §1961(4) in that it is a "partnership, corporation… or other legal entity."  It is a Michigan limited liability company and affects interstate commerce by representing clients in states other than its Michigan location.

64.     Altman is the principal of and an officer of this corporate enterprise.  Gill works closely with Altman as his Managing Director in this small enterprise and is thus a lower rung participant in its workings.

65.     Kresch also works closely with Altman in operating the firm.  He is also a lower rung participant in the Altman Firm.

66.     As detailed, Altman, pursuant to an agreement with Gill and Kresch, has committed four acts of extortion and two acts of attempted extortion, by violating 18 U.S.C. §1951 (the Hobbs Act), made a form of racketeering activity by 18 U.S.C. §1961(1)(B).  This occurred over a period of just over a year.

67.     Additionally, Altman, Gill and Kresch agreed to violate the wire fraud statute, 18 U.S.C. §1343 as detailed above numerous times.

68.     Wire fraud is made a form of racketeering activity by 18 U.S.C. §1961(1)(B).  These wire fraud violations occurred over a period of months, are ongoing, and will not stop without judicial intervention.  Moreover, this is the regular way Altman, Gill and Kresch conduct the Altman Firm enterprise.

69.     Therefore, Altman, Gill and Kresch have each agreed to the commission of a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5), which requires a minimum of two racketeering acts in a ten-year period.  The racketeering acts alleged constitute a "closed" pattern because they have been committed over a 14-month period and have resulted in many separate injuries to the Lento Law Firm.

70.     The racketeering also satisfies an "open" pattern because the wire fraud is ongoing, will continue indefinitely and is the regular way Altman, Gill and Kresch operate the Altman Firm enterprise.

**WHEREFORE**, Plaintiff, LENTO LAW FIRM demands judgment against the defendants, KEITH ALTMAN, ESQ., RICHARD GILL and ARI KRESCH for three times its damages as proven at trial plus pre-judgment interest, post-judgment interest, its costs and reasonable attorneys' fees and any other monetary relief the Court deems just pursuant to 18 U.S.C. §1964(c).  Plaintiff LENTO LAW FIRM also demands that the Court enter a permanent injunction against the defendants, prohibiting them from committing any further racketeering activity against it pursuant to 18 U.S.C. §1964(a).

### COUNT II
### VIOLATIONS OF THE NEW JERSEY RICO LAW
**(As to Defendants Keith Altman, Esq., Ari Kresch, & Richard Gill)**

71.     Plaintiffs incorporate and reallege the foregoing paragraphs as if fully set forth herein.

72.     Plaintiffs allege that Defendants' conduct also constitutes "racketeering," pursuant to the New Jersey RICO Act, N.J.S.A. §2C:41-1 *et seq.*

73.     Specifically, the Hobbs Act and the federal wire fraud statute are incorporated as "racketeering activity" pursuant to N.J.S.A. §2C:41-1(2).

74.     Altman, Gill and Kresch are "persons" pursuant to N.J.S.A. §2C:41-1(2)b.

75.     The Law Office of Keith Altman PLLC a/k/a K Altman Law is an "enterprise" pursuant to N.J.S.A. §2C:41-1(2)c.

76.     Altman, Gill and Kresch have committed a "pattern of racketeering activity" pursuant to N.J.S.A. §2C:41-1(2)(d).

77.     Therefore, the defendants have violated N.J.S.A. §2C:41-2d by participating in the affairs of the enterprise by conspiring with each other to commit a pattern of racketeering activity

78.     Plaintiffs seek treble damages and other relief, detailed below, pursuant to N.J.S.A. §2C:41-4c.

**WHEREFORE**, Plaintiff, LENTO LAW FIRM demands judgment against the defendants, KEITH ALTMAN, ESQ., RICHARD GILL and ARI KRESCH for three times its damages as proven at trial plus costs, reasonable attorney's fees, interest and any other monetary relief the Court deems just pursuant to N.J.S.A. §2C:41-4c and a(7).  Plaintiff LENTO LAW FIRM also demands that the Court enter a permanent injunction against the defendants prohibiting them from committing any further racketeering activity against it pursuant to N.J.S.A. §2C:41-4a.(2),(6) and to dissolve the enterprise pursuant to §a(3).

**COUNT III**
**BREACH OF CONTRACT**
**(As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")**

79.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

80.     Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

81.     As detailed more fully earlier herein in Plaintiff's Factual Allegations, the oral agreement provided for a number of things, specifically:

(1)     Plaintiff Lento would begin associating his student defense cases to Defendant Altman for Altman and the Altman Firm to take the lead on;

(2)     all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Lento as the attorney of record and the progenitor of the matters, and with 40% going to Altman for his time and labor.

(3)     this 60/40 split would occur only after LLF's incurred marketing expenses has been deducted from the total fee;

(4)     a non-compete clause on the part of Altman and the Altman Firm, wherein all student defense cases which Altman and the Altman Firm handled would be those and only those which were worked collaboratively with Lento and LLF pursuant to their oral agreement – in other words, Altman agreed to handle these student defenses cases exclusively in association with Lento and LLF; and finally,

(5)     in consideration of Lento's having started the Student Defense business in 2013 or earlier and Lento's larger share of the fee split, Lento agreed to advertise for student defense matters as alleged earlier, through such means as online ad campaigns and Pay Per Click ("PPC"), and that as Altman would only be handling such matters with Lento and LLF, he was prohibited from advertising independently for case of that nature.

82.     Despite Plaintiffs having fully performed pursuant to the terms of this oral agreement, and the subsequent oral modification to the fee split in February 2022, with Plaintiff having

consistently paid Defendant Altman all monies to which he was owed, Defendants Altman and the Altman Firm have nonetheless breach numerous provisions of the oral agreement.

83.     Specifically, Defendants Altman and the Altman Firm have failed to perform pursuant to the oral agreement, in that:

      a.  they have repeatedly failed to competently handle various student defense cases assigned to them;

      b.  they have repeatedly failed to honor the terms of the fee split and subsequent revision thereto by demanding – and even extorting – of Plaintiffs more money than which they were entitled to;

      c.  they have advertised for student defense matters independent of Plaintiffs Lento and LLF, in violation of the non-compete provision of the oral agreement;

      d.  they have taken on new student defense matters independent of Plaintiffs Lento and LLF, in violation of the non-compete provision of the oral agreement; and

      e.  they have ceased work on all open student defense matters assigned to them by Plaintiffs Lento and LLF in violation of their obligation to perform under the oral agreement.

84.     As a direct and proximate result of Defendant Altman and Defendant the Altman Firm's breach of contract as alleged, Plaintiffs have been caused to sustain damages.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT IV
## <u>BAD FAITH</u>
### (As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")

85.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

86.     As previously alleged, Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

87.     As alleged more fully in the previous Count (Count VII), Defendants have breached said contract.

88.     Section 205 of the Restatement (Second) of Contracts suggests that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

89.     It is well-settled law that, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey..." <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236, 244 (2001), and as such, "[e]very party to a contract... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>, 182 N.J. 210, 223-24 (2005).

90.     Here, with respect to the oral contract entered into between the parties, Defendants Altman and the Altman Firm did not exercise good faith and fair dealing in their performance of the contract, in that, they willfully and intentionally violated many provisions of the agreement and have ceased performance further unless Plaintiffs consent to be extorted.

91.     As a direct and proximate result of the bad faith dealing of the Defendants, Plaintiffs have been caused to suffer damages.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT V**
**<ins>TORTIOUS INTERFERENCE WITH CONTRACT</ins>**
**(As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")**

92.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

93.   Plaintiff Lento, individually and on behalf of Plaintiff LLF, has entered into numerous attorney fee agreements with student defense clients whose matters had subsequently been assigned to Defendants Altman and the Altman Firm to be handled by them pursuant to the terms of Lento and Altman's oral agreement.

94.   Plaintiffs have a clear and discernable interest, both monetarily and professionally, in the preservation of the attorney-client relationship arising under those fee agreements.

95.   It is well settled that, in addition to reasonable expectations of economic advantage, New Jersey law protects a party's interest in contracts already made.

96.   There are approximately one-hundred (100) open student defense which Plaintiffs had assigned Defendants Altman and the Altman Firm to be handled by them pursuant to the terms of Lento and Altman's oral agreement, each with such an attorney fee agreement.

97.   As alleged earlier herein, due to a fee dispute between Defendant Altman and Plaintiff Lento – a dispute which is, or rather, should be, of no concern to the individual student defense clients – Defendants Altman and the Altman Firm threatened on or about July 24, 2022, to cease

all work on all student defense matters assigned them by Plaintiffs, unless Plaintiff Lento concede

to Defendant Altman's extortionate demand of $500,000.00 by the following day, July 25, 2022.

98.    So as to preserve both Plaintiffs' clear and discernable interest in the matters, as well as

the clients' interests in their own matters, Plaintiff Lento agreed to tender $365,000.00 to

Defendant Altman to settle the fee dispute, despite not having conceded that Defendant Altman

was actually entitled to said monies.

99.    Ultimately, upon realizing that he was being extorted and for fear of further financial and

professional exposure should he concede to Defendant Altman's extortionate demand, Plaintiff

Lento refused to tender the $365,000.00 to Defendant Altman.

100.    Defendant Altman has since ceased all work on the student defense matters, and not only

that, but he is refusing to promptly turn over all the case files for the matters to Plaintiffs Lento

and LLF, such that Plaintiffs can protect both the client's interests in their matters and Plaintiff's

own financial and professional interests.

101.    Plaintiffs' interests in maintaining the attorney-client relationships arising under each of

the student defense clients' fee agreements is clearly a protectable interest under New Jersey law.

102.    Despite Plaintiffs' interests, Defendants Altman and the Altman Firm have intentionally

and without justification interfered in the preservation and ultimate consummation of the student

defense clients' fee agreements with Plaintiffs, as aforesaid.

103.    There is more than a reasonable likelihood that the interference of Defendants Altman and

the Altman Firm, if permitted to continue, would ultimately cause the loss of the prospective

economic and professional advantage to the Plaintiffs – in other words, the loss of a successful

resolution to the clients' matters – not to mention the loss of said clients' own interests in their

matters.

104.     Thus, as a direct and proximate result of Defendant Altman and Defendant the Altman Firm's tortious interference into the student defense clients' fee agreements with Plaintiffs, Plaintiffs have been, and are presently being, prevented from preserving the attorney-client relationships arising under said agreements, and further, are being prevented from protecting the clients' interests with respect to their matters, causing Plaintiffs to sustain damages thereby.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT VI
## PROFESSIONAL NEGLIGENCE
### (As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")

105.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

106.     Defendants Altman and the Altman Firm hold themselves out to the public as professional purveyors of legal services, respectively, a licensed attorney and his law firm.

107.     As such, these Defendants owe a duty of care to the public and to other attorneys with whom they associate on matters, in the conduct of their business operations.

108.     Defendants Altman and the Altman Firm have breached this duty of care as owed to the Plaintiffs in that they failed to take care in the execution of their profession and the provision of their legal services, such that they have failed to competently prosecute the student defense cases which Plaintiffs assigned to them – this includes their failure to work on these matters, whether in part or at all.

23

109.    Specifically, Defendants Altman and the Altman firm have failed to take reasonable steps as would be expected of a reasonably prudent attorney and law firm to protect the interests of the approximately one-hundred (100) student defense clients with open matters which had been assigned to the Defendants by Plaintiffs.

110.    But-for the failures of Defendants Altman and the Altman firm to take reasonable steps as would be expected of a reasonably prudent attorney and law firm to protect the interests of the approximately one-hundred (100) student defense clients with open matters which had been assigned to the Defendants by Plaintiffs, these Defendants have jeopardized the interests of these student defense clients with respect to their matters, and thus have caused injury, both pecuniary and reputational, to Plaintiffs.

111.    It is reasonably foreseeable that an attorney and law firm such as Plaintiffs who associate cases to another attorney and firm could be harmed or prejudiced by said associated attorney and firm's failure to competently prosecute those matters.

112.    Therefore, the respective failures of Defendants Altman and the Altman Firm, through their errors, omissions, and/or professional negligence as alleged herein, were both the actual and proximate cause of Plaintiffs' damages.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT VII**
**NEGLIGENCE *PER SE***
**(Violation of NJ RPC 1.16 / MI RPC 1.16 / MRPC 1.16)**
**(As to Defendant Keith Altman, Esq.)**

113.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

114.    Pursuant to the New Jersey Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of New Jersey, specifically, NJ RPC 1.16, entitled, "Declining or Terminating Representation", "Except as otherwise permitted by paragraph (c) [which is inapplicable here], a lawyer may withdraw from representing a client if:" as relevant here, "(1) withdrawal can be accomplished without material adverse effect on the interests of the client."

115.    Similarly, pursuant to the Michigan Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of Michigan, specifically MI RPC 1.16, also entitled, "Declining or Terminating Representation", "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client..."

116.    Similarly, pursuant to the Model Rules of Professional Conduct, upon which both New Jersey and Michigan's Rules are based, specifically MRPC 1.16, also entitled, "Declining or Terminating Representation", "a lawyer may withdraw from representing a client if:" as relevant here, "(1) withdrawal can be accomplished without material adverse effect on the interests of the client..."

117.    It is clear then, that regardless of which jurisdiction's Rules of Professional Conduct this Court chooses to apply to in this matter, Defendant Altman, was bound by the Rules of Professional

Conduct governing attorneys to refrain from withdrawing from representing a client where such a withdrawal would have a material adverse effect on the interests of the client.

118.    Here, Defendant Altman has expressly stated to Plaintiff Lento that he would cease working on all student defense clients' matters, and further, refuse to turn the case files over to Plaintiffs such that they could resume the representation, by Monday, July 25, 2022, if Plaintiff Lento did not consent to Defendant Altman's extortionate monetary demand. This date was later extended to Saturday, July 30, 2022.

119.    Defendant Altman has ceased work on the approximately one-hundred (100) open student defense matters which Plaintiffs had assigned to him, abandoning these matters completely through his withdrawal, and has further, spitefully and obstinately refused to enable Plaintiffs to protect the clients' interests given that Defendant Altman refuses to promptly turn over all the clients' case files to Plaintiff.

120.    Thus, in each and every one of these student defense matters, Defendant Altman is violating his ethical obligation under NJ RCP / MI RCP / MRPC 1.16, in that he withdrew from the representations despite that fact that his withdrawal has a material adverse effect on each and every such client.

121.    These clients are within the class of individuals these Rules of Professional Conduct were intended to protect in that they are clients of an attorney bound by said Rules.

122.    Further, the conduct Defendant Altman has engaged in is precisely the type of conduct these Rules were intended to prevent as evident by the language of the relevant Rule.

123.    As such, Defendant Altman's conduct is in direct violation of NJ RCP / MI RCP / MRPC 1.16, and is therefore negligent *per se*.

124.    As a direct and proximate result of Defendant Altman's negligence per se, Plaintiff has suffered damages, both pecuniary and reputational in nature.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against Defendant KEITH ALTMAN, ESQ. for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT VIII**
**NEGLIGENCE *PER SE***
**(Violation of NJ RPC 8.4 / MI RPC 8.4 / MRPC 8.4)**
**(As to Defendant Keith Altman, Esq.)**

125.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

126.    Pursuant to the New Jersey Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of New Jersey, specifically, NJ RPC 8.4, entitled, "Misconduct", "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

127.    Similarly, pursuant to the Michigan Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of Michigan, specifically MI RPC 8.4, also entitled, "Misconduct," "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

128.    Similarly, pursuant to the Model Rules of Professional Conduct, upon which both New Jersey and Michigan's Rules are based, specifically MRPC 8.4, also entitled, "Misconduct," "It is professional misconduct for a lawyer to:" as relevant here, "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly..."

129.     It is clear then, that regardless of which jurisdiction's Rules of Professional Conduct this Court chooses to apply to in this matter, Defendant Altman, was bound by the Rules of Professional Conduct governing attorneys to refrain from knowingly violating the Rules of Professional Conduct.

130.     As articulated more fully in the previous Count, Defendant Altman knowingly and intentionally violated NJ RCP / MI RCP / MRPC 1.16, in that he knowingly and intentionally withdrew from the representation of each of the approximately one-hundred (100) open student defense clients' matters which had been assigned to him by Plaintiffs, despite knowing that his withdrawal would have a material adverse effect on each and every such client.

131.     These clients are within the class of individuals these Rules of Professional Conduct were intended to protect in that they are clients of an attorney bound by said Rules.

132.     Further, the conduct Defendant Altman has engaged in is precisely the type of conduct these Rules were intended to prevent as evident by the language of the relevant Rule.

133.     As such, Defendant Altman's conduct is in direct violation of NJ RCP / MI RCP / MRPC 8.4, and is therefore negligent *per se*.

134.     As a direct and proximate result of Defendant Altman's negligence per se, Plaintiff has suffered damages, both pecuniary and reputational in nature.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against Defendant KEITH ALTMAN, ESQ. for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT IX**
**NEGLIGENCE *PER SE***
**(Violation of NJ RPC 7.1 / MI RPC 7.1 / MRPC 7.1)**
**(As to Defendant Keith Altman, Esq.)**

135.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

136.   Pursuant to the New Jersey Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of New Jersey, specifically, NJ RPC 7.1, entitled, "Communications Concerning a Lawyer's Service," "A lawyer shall not make false or misleading communications about the lawyer, the lawyer's services, or any matter in which the lawyer has or seeks a professional involvement."

137.   Further, under NJ RPC 7.1, and as relevant here, "A communication is false or misleading if it... contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading..."

138.   Similarly, pursuant to the Michigan Rules of Professional Conduct governing the conduct of attorneys licensed to practice within the State of Michigan, specifically MI RPC 7.1, entitled, "Communications Concerning a Lawyer's Services," "A lawyer may... use or participate in the use of any form of public communication that is not false, fraudulent, misleading, or deceptive."

139.   Further, under MI RPC 7.1, and as relevant here, "A communication shall not... contain a material misrepresentation of fact or law, or omit a fact necessary to make the statement considered as a whole not materially misleading..."

140.   Similarly, pursuant to the Model Rules of Professional Conduct, upon which both New Jersey and Michigan's Rules are based, specifically MRPC 7.1, also entitled, Communications Concerning a Lawyer's Services," "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."

141.     Further, under MRCP 7.1, and as relevant here, "A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

142.     It is clear then, that regardless of which jurisdiction's Rules of Professional Conduct this Court chooses to apply to in this matter, Defendant Altman, was bound by the Rules of Professional Conduct governing attorneys to refrain from making false or misleading communications to the public about himself or his services.

143.     As Images 2 through 8 included earlier within this Complaint demonstrate, Defendant Altman repeated made false or misleading communications to the public regarding himself and his services in that he repeatedly posted advertisements falsely identifying his firm by Plaintiffs' names, in order to highjack Plaintiffs' goodwill and steal clients attempting to hire Plaintiffs.

144.     Defendant Altman knowingly and intentionally included in these communications pictured in Images 2 through 8 repeated false statements that appropriated Plaintiffs' names, reputations, and goodwill for his own monetary gain and to harm the business and reputation of Plaintiffs.

145.     The recipients of the communications displayed in Images 2 through 8 – in other words, members of the public searching online for attorney services, or, put even more simply, potential clients – are within the class of individuals these Rules of Professional Conduct were clearly intended to protect in that they are potential clients of an attorney bound by said Rules.

146.     Further, the conduct Defendant Altman has engaged in is precisely the type of conduct these Rules were intended to prevent as evident by the language of the relevant Rule.

147.     As such, Defendant Altman's conduct is in direct violation of NJ RCP / MI RCP / MRPC 7.1, and is therefore negligent *per se*.

148.     As a direct and proximate result of Defendant Altman's negligence per se, Plaintiff has suffered damages, both pecuniary and reputational in nature.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against Defendant KEITH ALTMAN, ESQ. for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT X**
**UNJUST ENRICHMENT**
**(As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")**

149.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

150.     As previously alleged, Plaintiff Lento, individually and on behalf of Plaintiff LLF, entered into an oral agreement with Defendant Altman, individually and on behalf of Defendant the Altman Firm, in or around March 2020, during a meeting at LLF's New Jersey office.

151.     In short, and among other things, the oral agreement contemplated a fee sharing scheme between Plaintiffs and Defendants Altman and the Altman Firm resulting from their collaborative handling of student defense matters.

152.     Despite Plaintiffs consistently paying Defendants Altman and the Altman Firm the share to which they were owed pursuant to the oral agreement, Defendant Altman on behalf of himself and the Altman Firm regularly demanded more money than that to which they were entitled under the oral agreement, even going so far as to extort Plaintiffs under threat of litigation should they not comply.

153.     Begrudgingly and under duress given Defendant Altman's threats, Plaintiffs on multiple occasions conceded to Defendant Altman's extortionate demands, paying him moneys to which he was not entitled under the oral agreement.

154.     Defendants have retained the economic benefit unlawfully and unjustly conferred upon them by Plaintiffs, despite Plaintiffs having received no benefit in consideration therefor.

155.     Thus, Defendants have been unjustly enriched at Plaintiffs' great expense, said damages to be proven at the time of trial.

     **WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for disgorgement of the restitution damages to which Plaintiffs are entitled, as well as reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

### COUNT XI
### CONVERSION
**(As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")**

156.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

157.     Plaintiffs, as the attorneys of record of the approximately one-hundred (100) open student defense clients' matters which had been assigned to Defendants Altman and the Altman Firm, have a right to immediate possession of the client files for said student defense matters.

158.     Said client files exist and are presently in the possession of Defendants Altman and the Altman Firm.

159.     Despite Plaintiffs having made demand for the return of these client files, Defendants Altman and the Altman Firm refuse to do so, and thus, have wrongfully interfered with Plaintiffs'

possessory interest in same, the direct and proximate result of which has caused Plaintiff to incur damages of both a pecuniary and reputational nature.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

**COUNT XII**
**UNFAIR COMPETITION, FALSE REPRESENTATIONS, FALSE DESIGNATION OF ORIGIN, and FALSE ADVERTISING UNDER THE LANHAM ACT**
**(As to Defendants Keith Altman, Esq. & The Law Office of Keith Altman, PLLC, d/b/a/ "K Altman Law")**

160.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

161.   15 U.S.C. § 1125(a)(1), a section of the Lanham Act, provides in relevant part that:

> Any person who, on or in connection with any goods or services... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

162.     Defendants Altman and the Altman Firm's unauthorized use of Plaintiff's mark, "Lento Law Firm", in connection with their services in commercial advertising as displayed in Images 2 through 8 earlier within the herein Complaint, constitutes unfair competition, false representation, false designation of origin of said defendants' services, and false advertising in violation of the Lanham Act, including, but not limited to 15 U.S.C. § 1125(a)(1), as cited above, in that said advertisements are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Altman with Plaintiff Lento.

163.     Defendants Altman and the Altman Firm acted with willful deception in so using Plaintiff's mark.

164.     As a direct and proximate result of Defendants Altman and the Altman Firm's unauthorized use of Plaintiff's mark, Plaintiff has been caused to incur damages of both a pecuniary and reputational nature.

**WHEREFORE,** Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, KEITH ALTMAN, ESQ. and THE LAW OFFICE OF KEITH ALTMAN, PLLC, d/b/a/ "K ALTMAN LAW", are entitled to relief pursuant to 15 U.S.C. § 1117(a), and demand judgement pursuant to same, subject to the principles of equity, to recover, (1) said defendants' profits, (2) any damages sustained by Plaintiffs, and (3) the costs of this action.

## COUNT XIII
## <u>DECLARATORY JUDGMENT ACT</u>

165.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

166.     The Altman Firm has demanded that the Lento firm pay it costs (for travel and other out-of-pocket expenses) which it contends are due under the joint venture.

167.   No reimbursement for costs of any kind are due to be paid by the Plaintiffs to the Altman Firm under the joint venture agreement.

168.   Accordingly, Plaintiffs seek a declaration that they do not owe the Altman Firm any costs  on any cases which were jointly handled pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

**WHEREFORE**, Plaintiffs demand the Court declare that Plaintiffs do not owe any costs to the Altman Firm pursuant to cases being handled under the joint venture agreement and any other relief the Court deems just.

**COUNT XIV**
**TORTIOUS CONDUCT OF FICTITIOUS INDIVIDUALS AND ENTITIES**
**AS TO DEFENDANTS JOHN DOES 1-10 AND ABC BUSINESS ENTITIES 1-10**

169.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if set forth at length herein.

170.   At all times relevant to this action, Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, are fictitious names for individuals and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private business entities, who participated in the tortious actions of Defendants described herein, whether by way of their negligence or in other ways as of yet undetermined.

171.   As a direct and proximate results of the negligence and/or tortious conduct of Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, Plaintiffs have been caused to suffer, and in fact did suffer, significant damages.

172.   Plaintiffs allege an insufficient opportunity to determine the identity of all individuals or business entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiffs.

173.    As such, Plaintiffs specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiffs.

**WHEREFORE**, Plaintiffs, JOSEPH D. LENTO and LENTO LAW FIRM demand judgment against the defendants, JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, for general and compensatory damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs JOSEPH D. LENTO, ESQ. and LENTO LAW FIRM, LLC demand a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.


Dated: <u>September 1, 2022</u>          LENTO LAW GROUP, P.C.


SAMUEL D. JACKSON, ESQUIRE
ATTORNEY ID: 130452017
LENTO LAW GROUP, P.C.
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
(T) (856) 652-2000
(F) (856) 375-1010
sdjackson@lentolawgroup.com
*Attorney for Plaintiffs Joseph D. Lento, Esq. &*
*Lento Law Firm, LLC*
FOSTER P.C.

/s/ *Howard W. Foster, Esq.*
HOWARD W. FOSTER, ESQ.
(*pro hac vice* admission granted)
10 South Riverside Plaza, Suite 875
Chicago, Illinois 60606
(T) (312) 726-1600
HFoster@fosterpc.com

36