Solomon Radner, Esq. (283502018)
**LAW OFFICE OF KEITH ALTMAN**
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. LENTO, ESQ., an individual, LENTO LAW FIRM, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH ALTMAN, ESQ., an individual, THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company, ARI KRESCH, an individual, and RICHARD GILL, an individual,<br><br>Defendants. | Civil Action No.: 1:22-cv-04840<br><br>Hon. Robert B. Kugler |

## <u>BRIEF OF DEFENDANTS, KEITH ALTMAN AND LAW OFFICE OF KEITH ALTMAN, PLLC, IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT, WITH PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.........................................................................4

I.    INTRODUCTION.............................................................................8

II.   PROCEDURAL HISTORY...............................................................8

III.  UNDISPUTED FACTS.....................................................................8

IV.   RESOLUTION AGREEMENT .......................................................13

V.    STANDARD OF REVIEW .............................................................13

VI.   ARGUMENT...................................................................................14

   A.    PLAINTIFFS' ALLEGATIONS OF VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) ARE WITHOUT MERIT.......................................................14

     1.    THE UNLAWFUL DEBT .................................................17

     2.    PATTERN OF ACTIVITY ...............................................18

     3.    NONCOMPETE AGREEMENT IS NON-EXISTENT .........18

     4.    EXTORTION SCHEME....................................................22

     5.    18 U.S.C. §1951 (the Hobbs Act) and New Jersey RICO Act, N.J.S.A. §2C:41-1 and §2C:41-1(2)(d), *et seq.* .............................................23

     6.    18 U.S.C. §1343 (WIRE FRAUD) ........................................27

     7.    PLAINTIFFS ARE TALKING OUT BOTH SIDES OF THEIR MOUTH 28

     8.    GOOGLE DRIVEN TRAFFIC TO WEBPAGE....................29

   B.    ALTMAN AND KA LAW DID NOT ACT IN BREACH OF CONTRACT OR BAD FAITH .......................................................................30

   C.    ALTMAN AND KA LAW DID NOT ACT IN TORTIOUS INTERFERENCE WITH CONTRACT ..........................................31

D.    NEGLIGENCE.................................................................................33

   1.   Professional Negligence.........................................................34

   2.   Negligence per se (Violation of NJ RPC 1.16/MI RPC 1.16/MRPC 1.16) 35

   3.   Negligence *per se* (Violation of NJ RPC 8.4 / MI RPC 8.4 / MRPC 8.4) (Count VIII) .................................................................................36

   4.   Negligence per se (Violation of NJ RPC 7.1 / MI RPC 7.1 / MRPC 7.1) (Count IX) .........................................................................37

E.    UNJUST ENRICHMENT, CONVERSION ...............................................38

F.  UNFAIR    COMPETION,    FALSE    REPRESENTATION,    FALSE DESIGNATION OF ORIGIN and FALSE ADVERTISING UNDER THE LANHAM ACT..................................................................................39

G.    DECLARATORY JUDGMENT ACT .......................................................41

VII.  CONCLUSION ........................................................................................41

VIII.  CERTIFICATE OF WORD COUNT......................................................43

IX.  CERTIFICATE OF NON-CONCURRENCE ...........................................43

X.  CERTIFICATE OF SERVICE .......................................................................44

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005)* .................................... 22, 24

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)............................................................11

*Beck v. Prupis*, 529 U.S. 494, 495, 120 S. Ct. 1608, 1611 (2000) ................... 21, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)....................................11

*Braitman v. Overlook Terrace Corp.*, 68 N.J. 368, 346 A.2d 76, 85 (N.J. 1975)...32

*Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983).....................13

*Cohen v. Horn*, 2022 U.S. Dist. LEXIS 95455, at *14-15 (D.N.J. May 27, 2022).31

*Conklin v. Hannoch Weisman,* 145 N.J. 395, 416, 678 A.2d 1060 (1996) ............31

*Cook Drilling Corp. v. Halco Am., Inc.*, Civ. A. No. 01-2940, 2002 U.S. Dist. LEXIS
   903, 2002 WL 84532, at *7 (E.D. Pa. Jan. 22, 2002) ..........................................37

*Cronin v. Bergmann*, No. 14-4663, 2014 U.S. Dist. LEXIS 147542, at *5 (E.D. Pa.
   Oct. 16, 2014) ............................................................................. 11, 37

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-184 (3d Cir. 2000)
   ....................................................................................................11

*Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 351 (6th Cir. 2005).. 16,
   17

*Fagnelli Plumbing Co. v. Gillece Plumbing & Heating, Inc.*, No. 10cv0679, 2011
   U.S. Dist. LEXIS 15090, at *8 (W.D. Pa. Feb. 15, 2011)....................................36

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ............................11

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ................................13

*HJ Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ..................................................................................12

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)........................................................................... 13, 21, 23

*Hoskins Mfg. Co. v. PMC Corp*., 47 F. Supp. 2d 852, 857 (E.D. Mich. 1999).......17

*Humana, Inc. v. Indivior Inc.*, No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *35 (E.D. Pa. July 22, 2021) ............................................................. 22, 23

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) ................12

*In re Mallinckrodt PLC*, 638 B.R. 57, 76 (Bankr. D. Del. 2021)...........................13

*In re NAHC, Inc. Sec. Litig*., 306 F.3d 1314, 1332 (3d Cir. 2002)........................39

*In re Rockefeller Ctr. Props., Inc. Sec. Litig*., 311 F.3d 198, 217 (3d Cir. 2002) ...13

*Interpace Corp. v. Lapp, Inc*., 721 F.2d 460, 463 (3d Cir. 1983)...........................38

*Irish v. Ferguson*, 970 F. Supp. 2d 317, 362 (M.D. Pa. 2013) ...............................22

*Kashi v. McGraw-Hill Glob. Educ. Holdings*, No. 17-1818, 2018 U.S. Dist. LEXIS 145057, at *4 (E.D. Pa. Aug. 27, 2018) ...............................................39

*Kenney v. Am. Bd. of Internal Med*., 847 F. App'x 137, 146 (3d Cir. 2021)...........12

*Kolar v. Preferred Real Estate Invs., Inc*., 361 F. Appx. 354, 367 (3d Cir. 2010) .22

*Lum v. Bank of Am*., 361 F.3d 217, 223-24 (3d Cir. 2004) ....................................13

*Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000) ....................................23

*Manhattan Telecomms. Corp. v. DialAmerica Mktg*., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001)........................................................................................13

*Marks v. Struble*, 347 F. Supp. 2d 136, 144 (D.N.J. 2004) ....................................28

*Mattero v. Silverman*, 71 N.J. Super. 1, 176 A.2d 270, 275 (N.J. Super. Ct. App. Div. 1962) ................................................................................................32

*Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) ................................................................................................28

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) ................................................................................................13

*Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) ............................24

*Tillery v. Leonard & Sciolla*, LLP, 437 F. Supp. 2d 312, 317 (E.D. Pa. 2006) ......37

### Statutes

18 U.S.C. § 1961(4) .................................................................................14

18 U.S.C. § 1962(c) .................................................................................12

18 U.S.C. §1343 .....................................................................................24

18 U.S.C. §1951 .....................................................................................21

18 U.S.C.S. § 1961(4) ..............................................................................22

18 U.S.C.S. §§ 1961-1968 .......................................................................21

28 U.S.C. §2201 .....................................................................................38

Mich. Comp. Laws Serv. § 445.774a ................................................... 17, 18

N.J.S.A. §2C:41-1 ...................................................................................21

N.J.S.A. §2C:41-1(2)(d) ...........................................................................21

### Other Authorities

Restatement (Second) of Contracts § 186 cmt. A (1981) .................................. 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................10

*N.J. Ct. R. app 3 R. R. 5.6* ................................................................................18

RPC 1.16 ............................................................................................................33

SCR 20:8.4(a).....................................................................................................16

# I.     INTRODUCTION

The present case is nothing more than an attempt to destroy the competition and a blatant attempt to evade an owed debt for personal and professional gain. The parties had a working business relationship for some time. When the business relationship started to deteriorate, Defendants sought payment of the outstanding debt owed. The parties resolved the payment dispute and entered into a Resolution Agreement. Plaintiff now brings forth the present frivolous case forward in an attempt to ruin Defendants business, reputation, ability to practice law and to absolve Plaintiff from an owed debt.

# II.     PROCEDURAL HISTORY

Plaintiffs, Joseph D. Lento and Lento Law Firm, LLC ("Plaintiffs"), filed an Amended Complaint on August 30, 2022 (ECF 15) ("Amended Complaint"), against Defendants, Keith Altman and Law Office of Keith Altman, PLLC a/k/a K Altman Law ("Altman" and "KA Law")[1]. Attached hereto and incorporated herein as **Exhibit A** is the Amended Complaint.

Defendants Ari Kresch and Richard Gill filed a separate Motion to Dismiss and supporting Brief. Attached hereto and incorporated herein as **Exhibit B** is a copy of the Kresch and Gill Motion to Dismiss and Brief in Support.

# III.     UNDISPUTED FACTS

---

[1] Plaintiffs' Amended Complaint also names Defendants, Ari Kresch and Richard Gill, which are included in Counts I and II, only. (Ex. A).

In May 2020, a working relationship started between Plaintiffs and Altman. ("Working Relationship"). Plaintiffs and Altman entered into a verbal agreement wherein all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Plaintiffs as the attorney of record and 40% of the fee going to Altman for his time and labor. ("Split Fee Clients"). Plaintiffs' marketing expenses were to be deducted off the top of all attorneys' fees prior to the fee split between Plaintiffs and Altman.  ("Verbal Contract").  The terms of the Verbal Contract are undisputed. (ECF 15 at ¶21).  No other individuals were a party to the Verbal Contract.  At the time the Verbal Contract was entered into between Plaintiffs and Altman, Gill was unknown to either Plaintiffs, Altman or Kresch[2].

The Working Relationship worked in the following manner:  Plaintiffs set up their own conference line ("Plaintiffs' Conference Line"); all potential clients contacted Plaintiffs; Plaintiffs contacted Altman to schedule a telephone conference between Lento, Altman and all potentials; at the scheduled appointment time and date, the potentials called Plaintiffs' Conference Line; during the consultation Plaintiffs after introduction remained silent and Altman took the lead; the Split Fee Clients paid the legal fees directly to the Plaintiffs; Plaintiffs deposited the legal fees directly into their operating account; all attorney/client agreements were in Plaintiffs' name (Not until 2022 did Altman's name appear anywhere in the

---

[2] In 2002, Altman met Kresch at a legal conference.  In May 2020, The Law Offices of Keith Altman, PLLC (KA Law) was incorporated.  In December 2020, Altman became a 1099 of counsel contract employee of Excolo Law, PLLC ("Excolo") which was incorporated in 2014 in Michigan.  In May 2020, KA Law, a sole proprietorship, did not have any employees.  In June 2021, Gill was hired as a student discipline writer for KA Law.  In November 2021, Gill became firm administrator of KA Law.

attorney/client agreement.); Altman and KA Law performed ALL the legal services.

Due to Plaintiffs owing Altman and KA Law excessive legal fees, Altman requested marketing expenses for calculation of legal fees owed to Altman minus Plaintiffs' paid marketing services specifically tailored to student defense and Title IX. To date, Plaintiffs have failed to provide an amount or documentation supporting Plaintiffs' marketing expenses.

In February 2022, effective March 1, 2022, Plaintiffs and Altman agreed to a modified fee split. Under the modification, Plaintiffs were to receive 55% of the legal fees paid to Plaintiffs with Altman receiving 45% of the fee, minus Plaintiffs' marketing expenses being reduced off the top of the legal fees rendered prior to the split.  Altman was to receive 25% of the consulting revenue retroactive to January 1, 2022. ("Modified Verbal Contract").

Due to the growth of the services being rendered by Altman through KA Law, Altman incurred additional staffing expenses. Plaintiffs and Altman agreed to a second modification of the Verbal Contract providing for Altman's law firm salaries, approximately $100,000 per month, being reduced along with Plaintiffs' marketing expenses from the Fee Split Clients' fees. ("Second Modified Verbal Contract").

As of July 2022, Plaintiffs owed Altman $705,665, plus $100,000 for KA Law's salaries.   Total amount owed by Plaintiffs to KA is $770,260. Altman provided to Plaintiffs an accounting evidencing the owed attorneys' fees and salary costs. (Ex. E). To reduce the amount owed, Plaintiffs agreed to send $80,000 to Altman on or before July 22, 2022.  On July 23, 2022, Plaintiffs did not send the agreed upon amount of $80,000 but only sent $55,000 to Altman. (Ex. E). On July

24, 2022, Plaintiffs and Altman agreed to sever the Working Relationship.  On that same day, John Hunt, agent for Plaintiffs, advised Altman that he had been appointed by Plaintiffs to negotiate the outstanding fees. Based on Hunt's representations of his appointment by the Plaintiffs to negotiate the outstanding fees, Altman made a demand to Plaintiffs in the amount of $500,000.

On July 25, 2022, a Resolution Agreement was made by Plaintiffs offering the following: 1) $365,000 payment; 2) Plaintiffs taking back all uncompleted student defense cases which were not active litigation cases; 3) Plaintiffs waving all referral fees in all litigation matters arising from the Verbal Contract to the present; 4) mutual indemnification; 5) mutual releases; and 6) mutual non disparagement. ("Resolution Agreement").

Altman forwarded to Plaintiffs a Memorandum of Understanding that accurately reflected the Resolution Agreement.  Attached hereto and incorporated herein as **Exhibit C** is a copy of the MOU.  On July 28, 2022, Plaintiffs revised the MOU and forwarded an unsigned copy of same to Altman. Attached hereto and incorporated herein as **Exhibit D** is a copy of the unsigned revised agreement ("Written Contract"). Although from August 2020 until July 2022, Plaintiffs continued to schedule up to ten potential client calls a day six and sometimes seven days a week, Plaintiffs filed this lawsuit in breach of the July 25, 2022, Written Contract.

Plaintiffs fraudulently filed this lawsuit with the information, knowledge, and belief that Altman provided the legal services for which he was hired by Plaintiffs as a 1099 employee. Plaintiffs fraudulently filed this lawsuit with the information,

knowledge, and belief that Plaintiffs owed fees for legal services performed by Altman.  Attached hereto and incorporated herein as **Exhibit E** is an itemization of the Split Fee Clients for which Altman provided legal services. ("Accounting Receivable Itemization"). The Accounting Receivable Itemization shows: Date Split Fee Client Acquired By KA From Lento (Column A); Split Fee Client (by initials only for redaction purposes only) (Column B); Fees Paid Exclusively To Lento By Split Fee Client (Column C); KA's Contracted Fee Percentage (Column D); KA's Fees Owed Per Lento/KA Contract (Column E); Actual Payment Received By KA From Lento (Column F); Fees Owed to KA from Lento (Column G); totals for each respective column; and totals per active cases; and totals per consults. (Ex. E).

Based on the facts stated herein and the Accounting Receivable Itemization, it is clearly undisputed that the Plaintiffs and Altman had a Working Relationship. It is clearly undisputed that Plaintiffs had knowledge of the Working Relationship and actively participated in the Working Relationship by continuing to use Altman as a 1099 employee to provide legal services for Plaintiffs' clients.  (Ex. F).  It is undisputed that the Plaintiffs had exclusive contracts/fee agreements/engagement letters with each Split Fee Client that were sent by Plaintiffs to Altman to provide legal services. (Ex. F).  It is undisputed that Plaintiffs received exclusively the fees paid by the Split Fee Clients and deposited the monies into their "operating account". It is undisputed that Plaintiffs paid only a portion of the monies owed to Altman for the legal services performed by him for the Split Fee Clients. (Ex. F). It is undisputed that the Plaintiffs actively participated in the Working Relationship until July 24, 2022.  It is undisputed that Plaintiffs owe Altman for the legal services performed.

It is undisputed that based on Plaintiffs continuing to hire Altman, a 1099 employee, that Plaintiffs considered Altman's legal services proper, ethical, and adequate. Plaintiffs have not provided any evidence to the contrary. It is undisputed that Plaintiffs had an ethical exclusive obligation to provide legal services to the contracted Split Fee Clients.  It is undisputed that Plaintiffs (PA firm and PA licensed attorney) were required to supervise all their employees and Altman a 1099 employee who performed legal services for the Split Fee Clients.

## IV.     RESOLUTION AGREEMENT

The Resolution Agreement entered into between the parties on July 28, 2022, is binding. The Resolution Agreement includes payment, transfer of client files, determination of referral fees, mutual indemnification, mutual releases for the partis and mutual non disparagement. Plaintiff's case is frivolous as it had already settled prior to the filing of the action.

## V.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a defendant is entitled to a dismissal of a plaintiff's complaint when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a plaintiff to survive a defendant's motion to dismiss, a plaintiff's complaint must contain sufficient factual information, accepted as true for purposes of the motion, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007), *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The test for "facial plausibility" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  Where a plaintiff alleges facts "that are merely consistent with a defendant's liability," a plaintiff "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678, *citing Twombly*, at 557. Pursuant to Fed.R.Civ.P. 12(b)(6), this Court is not required to accept legal conclusions as true. *Id.*  Likewise, the reviewing court need not "ignore or discount reality" when making its determination and need not "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183-184 (3d Cir. 2000).

The court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged— but failed to show—that the pleader is entitled to relief. *Id. See Cronin v. Bergmann*, No. 14-4663, 2014 U.S. Dist. LEXIS 147542, at *5 (E.D. Pa. Oct. 16, 2014).

## VI.    ARGUMENT

### A.    PLAINTIFFS' ALLEGATIONS OF VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) ARE WITHOUT MERIT

In Count One of Plaintiffs' Amended Complaint, Plaintiffs alleged that

Altman committed violations of RICO. Plaintiffs have not pled any injuries in fact. Plaintiffs do not state a single incident or provide evidence that Altman committed RICO violations. To allege a RICO claim pursuant to § 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, [plus (5) an] injury to property or business." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (*quoting Lum*, 361 F.3d at 223; *Sedima,* 473 U.S. at 496). The "conduct" element of RICO requires allegations that the defendant "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Altman acted on his own without the knowledge, participation or approval of Kresch or Gill when he requested from Plaintiffs' payment of the past due legal fees that arose from the Verbal Contract and modifications. There is no malice activity on the part of any of the Defendants. Plaintiffs have failed to show any predicated acts by Altman, Kresch or Gill that are related, "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *HJ Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). Section 1964(c) of Title 18 of the U.S. Code provides a private right of action for "[a]ny person injured in his business or property by reason of [a predicate offense]." *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137, 146 (3d Cir. 2021). The plaintiff must "state an injury to business or property and 'that a RICO predicate offense not only was a but for cause of injury but was the proximate cause as well.'" *Kenney, 847 F. App'x at 146 (quoting St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295,

300 (3d Cir. 2020)). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Reyes,* 802 F.3d at 483 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)); *In re Mallinckrodt PLC*, 638 B.R. 57, 76 (Bankr. D. Del. 2021).

Additionally, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiffs' claims, which sound in fraud. *See, e.g., Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (applying Rule 9(b) to federal RICO claims based on mail and wire fraud); *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (applying Rule 9(b) to state-law fraud claims). The Third Circuit has held that "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citations omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Manhattan Telecomms. Corp. v. DialAmerica Mktg.*, 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001) (quotations and citations omitted). "[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.* Plaintiffs have failed to meet the burden of proving the very basis of a RICO claim…how, when, where, and an injury of Altman, Kresch and Gill's involvement

in "racketeering activity" of the alleged conspiracy (the collection of an unlawful debt and advertising). Most importantly, if Plaintiffs fail to prove Kresch's and Gill's involvement in the conspiracy, Plaintiffs' RICO claim fails entirely for an enterprise does not exist. *See* 18 U.S.C. § 1961(4).

### 1.    THE UNLAWFUL DEBT

Plaintiffs have failed to prove that an unlawful debt exists. The Accounting Receivable Itemization shows the legal fees and costs that Plaintiffs owe Altman. (Ex. E).  In addition to the proof of the debts owed and the contracts which formed the relationship between the Split Fee Clients and Plaintiffs are set out in two form "Engagement Letters" attached hereto and incorporated herein as **Exhibit F**.

Again, it is clearly undisputed that Plaintiffs had knowledge of the Working Relationship and actively participated in the Working Relationship by continuing to use Altman as a 1099 employee to provide legal services for Plaintiffs' clients. (Ex. E). It is undisputed that the Plaintiffs had exclusive contracts/fee agreements/engagement letters with each Split Fee Clients that were sent by Plaintiffs to Altman to provide legal services. (Ex. F).  It is undisputed that Plaintiffs received exclusively the fees paid by the Split Fee Clients and deposited the monies into their "operating account". (Ex. F). It is undisputed that Plaintiffs paid monies to Altman for the legal services performed by him for the Split Fee Clients. (Ex. E).  It is undisputed that the Plaintiffs actively participated in the Working Relationship until July 24, 2022. (Ex. E).  It is undisputed that Plaintiffs owe Altman for the legal services performed. (Ex. E). It is undisputed that based on Plaintiffs' actions of

continuing to hire Altman, a 1099 employee, to provide legal services evidence to the Split Fee Clients for which the Plaintiffs had exclusive contracts and ethical duties/responsibilities to provide adequate legal services that Plaintiffs considered Altman's legal services proper, ethical, and adequate.  Plaintiffs have not provided any evidence to the contrary.

### 2.    PATTERN OF ACTIVITY

Simply stated, the Plaintiffs have not pled a single fact to substantiate a "pattern of activity" that evidence RICO, conspiracy, concerted activity, a coo, or an agenda.  As have been previously stated herein, Altman performed the legal services as a 1099 employee for Plaintiffs and in doing so fulfilled his obligations under the Verbal Contract and all amendments thereto.  Kresch and Gill were in no way affiliated with the day-to-day operations of KA Law. (Ex. B).  The Engagement Letters between the Fee Split Clients and Plaintiffs are between the Fee Split Clients and Altman and/or KA Law, or Gill or Kresch. (Ex. F).  Nor, has Kresch been listed as co-counsel of any of the Split Fee Cases.  Gill nor Kresch have ever been listed on the Engagement Letters. (Ex. F).  Kresch does not have any monetary entitlement to the attorneys' fees generated from the Split Fee Clients. Kresch is not an employee of KA Law.  Kresch does not have any ownership in KA Law. Kresch in no way participates in the day-to-day operations of KA Law.

### 3.    NONCOMPETE AGREEMENT IS NON-EXISTENT

Noncompete agreements are to prohibit from competing business directly or indirectly for a specific duration of time after their employment has ended.  Supreme

Court Rule 20:5.6 provides, "A lawyer shall not participate in offering or making... a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement." SCR 20:5.6(a). SCR 20:8.4 states that it "is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." SCR 20:8.4(a).

Altman entered into the Verbal Contract with Plaintiffs while in the state of Michigan.  Similarly, all modifications/amendments to the Verbal Contract were made while Altman was in Michigan. KA Law is incorporated in Michigan.  Model Rule of Professional Conduct 5.6(b), which has been adopted in Michigan and is a rule against restraints on competition and representation by lawyers states that a lawyer shall not participate in an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties. *Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 351 (6th Cir. 2005).

Under the Restatement (Second) of Contracts § 188 (1981), a promise by an employee or agent not to compete in the future must be closely analyzed and invalidated as a matter of public policy if the "relationship is unreasonably in restraint of trade" arising from the fact that "the restraint is greater than is needed to protect the promisee's legitimate interest." The analysis required is designed to invalidate a contract interpretation "detrimental to the smooth operation of a freely competitive private economy." Restatement (Second) of Contracts § 186 cmt. A (1981). In addition, courts have been reluctant to uphold employment promises to

refrain from competition based on the employee's knowledge of "confidential information" because employer claims of "confidential information" are "often difficult to distinguish [from] . . . normal skills of the trade," § 188 cmt. b, and because "the likely injury to the public may be too great if it is seriously harmed by the impairment of [a worker's] economic mobility, or by the unavailability of the skills developed in his employment," *id.* cmt. e. *See, e.g., Hoskins Mfg. Co. v. PMC Corp.*, 47 F. Supp. 2d 852, 857 (E.D. Mich. 1999) (matters of general knowledge cannot be trade secrets).

The court cited Rule 5.6(b) of the Michigan Rules of Professional Conduct, which prohibits law partnership noncompete agreements in subsection (a) and states in subsection (b) that a lawyer shall not participate in "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." *Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 353 (6th Cir. 2005). § 445.774a. Agreement or covenant protecting business interests of employer; applicability of section.

Sec. 4a.(1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as

limited. Mich. Comp. Laws Serv. § 445.774a (LexisNexis, Lexis Advance through Act 143, 145, 146 of the 2022 Regular Legislative Session and E.R.O. 2022-1).

The American Bar Association Model Rule of Professional Conduct 5.6 – Restrictions on Rights to Practice – prohibits a lawyer from making a "a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement, or b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy."

New Jersey has held that a noncompete agreement signed by an in-house lawyer is not enforceable because direct and indirect restrictions on the practice of law violate the language and spirit of the Restrictions on Right to Practice Rule 5.6 (prohibiting agreements that restrict a lawyer's right to practice law).

Rule 5.6 - Restrictions on Right to Practice

A lawyer shall not participate in offering or making:

**(a)** a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or **(b)** an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

*N.J. Ct. R. app 3 R. R. 5.6*

On August 4, 2022, during a hearing on this matter, this honorable court stated that there was not a valid noncompete in this case. Even if the noncompete were to be found to be valid, it would be unenforceable. Lento testified that the noncompete

was to be enforced in unlimited scope and locality, making it by law unenforceable.

### 4.    EXTORTION SCHEME

Plaintiffs allege that in June 2021 and November 2021 Altman threatened to leave the joint venture with Plaintiffs and stop working on the cases and stop paying his employees if Plaintiffs did not pay Altman the owed legal fees from the Fee Split Clients and Gill and Kresch approved. (ECF 15 at ¶41-46).  This is false. At no time did Altman extort Plaintiffs to pay legal fees.  It is undisputed that Plaintiffs owed Altman legal fees in June 2021 to the present. (Ex. E). Plaintiffs allege Altman instilled fear in Plaintiffs "his [Plaintiffs] clients would not be served, his business would be damaged and his firm would lose money" (ECF 15 at ¶41) is preposterous. First of all, the money was owed.  Demanding payment of money that is owed is not extortion.  Secondly, for the sake of argument that it was true that Plaintiffs were fearful that Altman would abandon the Split Fee Clients, Plaintiffs themselves were responsible to the Split Fee Clients based on the Engagement Letter. (Ex. F). Nowhere in either of the two Engagement Letters sent to the Split Fee Clients did Plaintiffs relinquish their ethical obligations as their attorney or state that the responsibilities or legal services are of another attorney:

> Prospective services as determined by the Lento Law Firm may include the following: preparing an overall strategy and preparing correspondence with XXXX, preparing your XXXXX for the upcoming interview, attending the interview with XXXXX, and reviewing the draft investigation report and commenting on the report.

Per standard practice, the conclusion to this engagement will be determined by the Lento Law Firm and will be no later than the issuance of the final investigative report.  The filing of a lawsuit is not included in this engagement. (Ex. F)

…the Lento Law Firm will determine case strategy, appropriate steps forward, reasonable efforts, and the conclusion to representation per this engagement." (Ex. F).

As to Gill, it is completely senseless that Altman would consult with Gill, who in June 2021 was not even an employee and who was later hired as a writer with zero vested interest in the "joint venture".  As to Kresch, it is completely senseless that Altman would consult with Kresch, a non-employee who had zero vested interest in the "joint venture" and no entitlement to the attorneys' fees from the services rendered to the Fee Split Clients.

The facts are Altman personally requested from Plaintiffs payment of the legal fees which were owed by Plaintiffs. To request something that is rightfully owed is not extortion.  Plaintiffs agreed to pay the monies owed, made intermittent representations to Altman to make specified payment amounts but to date have failed to pay the legal fees owed.

5.    **18 U.S.C. §1951 (the Hobbs Act) and New Jersey RICO Act, N.J.S.A. §2C:41-1 and §2C:41-1(2)(d),** *et seq*.

The Hobbs Act Plaintiffs contend that Altman, pursuant to an agreement with Gill and Kresch, has committed four acts of extortion and two acts of attempted

23

extortion, by violating 18 U.S.C. §1951 (the Hobbs Act). (ECF 15 at ¶66) and New Jersey RICO Act, N.J.S.A. §2C:41-1 and N.J.S.A. §2C:41-1(2)(d), *et seq*. (ECF 15 at ¶72 and 73). An agreement between Gill, Kresch and Altman NEVER existed. Plaintiffs do not state what the agreement is, nor do they provide one shred of evidence to support such agreement. Kresch and Gill did not obstruct, delay or affect commerce or the movement of any article or commodity in commerce by robbery or extortion. Apparently, Plaintiffs are trying to opine that Gill and Kresch affected legal services or attempted to conspire to do so without any basis or reasoning why a non-lawyer and a noncommissioned lawyer would have any impotence to do so.

Congress enacted the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. §§ 1961-1968 (1994) as Title IX of the Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922, for the purpose of seeking the eradication of organized crime in the United States. *Beck v. Prupis*, 529 U.S. 494, 495, 120 S. Ct. 1608, 1611 (2000). Person injured by overt act done in furtherance of RICO conspiracy held not to have cause of action under 18 USCS 1964(c) where overt act was not act of racketeering. *Id*. Plaintiffs were not injured by an overt act done in furtherance of a RICO conspiracy. Plaintiffs do not have a cause of action under 1964(c) because the alleged overt act committed is not an act that was itself tortious as to be incorporated in the common understanding of "civil conspiracy". *Id*. In *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. *Anderson v. Ayling, 396 F.3d*

*265, 269 (3d Cir. 2005).* The Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *Id.* at 505-06, and not merely by a non-racketeering act in furtherance of a broader RICO conspiracy. *Id.*

Plaintiffs' RICO claims fall for failure to state a substantive claim. "If the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." *Irish v. Ferguson*, 970 F. Supp. 2d 317, 362 (M.D. Pa. 2013) (*citing Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. Appx. 354, 367 (3d Cir. 2010)) *Humana, Inc. v. Indivior Inc.*, No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *35 (E.D. Pa. July 22, 2021). RICO statute, 18 U.S.C.S. § 1962(c) makes it unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. To plead a RICO claim under § 1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. An enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961(4). Id. The essential elements of a § 1962(d) conspiracy include: (1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities. There is no requirement of an overt act and, thus, a defendant may be held liable for conspiracy to violation section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise. *Humana, Inc. v. Indivior Inc.,* No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *1 (E.D. Pa. July 22,

2021).  Kresch nor Gill conspired because no conspiracy exists. In order for Plaintiffs to meet the elements of § 1962(d), Plaintiffs have to prove that Kresch and Gill had knowledge of the enterprise's [KA Law] corrupt activities, agreed to the corrupt activities and knowingly agreed to facilitate the scheme through their operation or management of the RICO enterprise [KA Law].  Plaintiffs have not stated that a conspiracy exists.  Plaintiffs have not stated that Kresch or Gill knowingly agreed to facilitate Altman or KA Law's scheme and had the authority to operate and did operate and/or manage KA Law in fulfilling the conspiracy scheme to meet the elements of § 1962(c) and (d).

Plaintiffs' allegations do not give rise to standing under § 1964(c), which requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962. Civil RICO "standing" is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction. M*aio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000). In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. Then, in *Beck v. Prupis*, 529 U.S. 494, 507, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000), the Court held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." The Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *Id*. at 505-06, and not merely by a non-

racketeering act in furtherance of a broader RICO conspiracy. *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005). Altman attempting to practice law through his law firm KA Law, is not an independently wrongful act under RICO. *Id.*

Plaintiffs point to no concrete losses, financial or otherwise, stemming from the alleged corruption. "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." (*quoting Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). *Anderson* at 265, 271.

### 6.   18 U.S.C. §1343 (WIRE FRAUD)

Plaintiffs are alleging that Altman, Kresch and Gill committed wire fraud by having competitive marketing. Plaintiffs have failed to prove how competitive marketing that is a "scheme to defraud" in violation of the wire fraud statute, 18 U.S.C. §1343. Plaintiffs have not proved fraud, misrepresentations or false promises committed in any manner authorized by Kresch or Gill. (ECF 15 at ¶58). Altman, Gill or Kresch did not agree to violate the wire fraud statute, 18 U.S.C. §1343.

Again, in October 2021, Gill as a mere student defense writer for Altman, non-equity holder of KA Law, Gill did not have any authority to give approval to revamp the KA Law website. (ECF 15 at ¶52). Furthermore, Gill did not have any prior technological, marketing, or legal experience to even give an effective position. Kresch, an owner of his own law firm with no interest in the Split Fee Cases or new cases generated by KA Law, had no reason to assist in the marketing and did not. Plaintiffs have not given any proof of the participation or authorization

of KA Law's marketing.

After the Working Relationship as setout herein was terminated by Plaintiffs and Altman on July 24, 2022, KA Law's website advertised for Title IX and student defenses as alleged by Plaintiffs (ECF 15 at ¶53) as it was within KA Law's rights to do so. KA Law nor Altman are bound by a fictious, verbal noncompete as Plaintiffs allege. Plaintiffs have not provided a single writing that evidence conversations between Plaintiffs and Altman regarding the parameters or existence of a noncompete. Nor are KA Law or Altman restrained by any other means for establishing a website that contains the area of practice and services the law firm performs.  Nor are KA Law or Altman restrained by any other means for advertising in whatever manner they so choose for Title IX and student defense cases. It begs the question for the sake of argument *if* there was a written confidentiality agreement, why did Plaintiffs not stop the Working Relationship and hold Altman accountable for breach of confidentiality agreement? Conversely, Plaintiffs continued to send up to ten potentials six to seven days a week to Altman and KA Law.

## 7. PLAINTIFFS ARE TALKING OUT BOTH SIDES OF THEIR MOUTH

Plaintiffs go on and on in paragraph after paragraph that KA Law is an enterprise and Altman the chief facilitator of a completely hypothetical conspiracy that rises to the level of RICO involving himself, his law firm, Kresch and Gill. But, ironically, in Paragraph 55 of the Amended Complaint (ECF 15 at ¶55)

Plaintiffs state the following:

> 55.  Additionally, with reference to Defendant Altman's website, some of the testimonials listed in the "student stories" tab located at https://www.kaltmanlaw.com/student-stories are testimonials from clients of the Lento Law Firm to whom ***Altman was merely assigned to handle their matters*** pursuant to their agreement, not clients of the Altman firm. (emphasis added).

Here, Plaintiffs concede that the positive testimonials praising the legal representation the Split Fee Clients received in their student defense/Title IX legal issues was based on Altman's legal services. As such, Altman was completely within his right to advertise the positive testimonials of the Split Fee Clients for the work he performed.

## 8.    GOOGLE DRIVEN TRAFFIC TO WEBPAGE

After the Working Relationship ended, July 24, 2022, Plaintiffs contend that Altman with the approval of Gill and Kresch posted Pay Per Click ads on Google which used the Lento Law Firm.  (ECF 15 at ¶56).  Regardless of whether or not there was a non-compete written agreement (which there was NOT), Altman and KA Law were not bound to restraints on marketing by Plaintiffs during the Working Relationship or after, presently, or in the future.

On July 18, 2022, Altman and KA Law launched its student defense, Title

IX pages on KA Law website. On July 24, 2022, KA Law began using Google ads. However, even though Altman and KA Law are not or have they ever been restrained from marketing by Plaintiffs, Altman and KA Law did not list Plaintiffs in their marketing.  The screen shots displayed by Plaintiffs were as the Plaintiffs stated Google ads for which Google generated the subheadings in searches. (ECF 15 at ¶56). Regardless, Altman and KA Law are free to advertise in the competitive legal market just like any other law firm. If Altman and KA Law want to advertise services for Title IX and student defense, they have ever right to do so.  Additionally, it does not matter who assisted or authorized them to do so. However, Kresch nor did not assist or authorize the marketing of Altman or KA Law.  Plaintiffs have failed to prove the existence of a noncompete or Kresch's and Gill's involvement in Altman or KA Law's marketing/advertisement practices.

**B.**   **ALTMAN AND KA LAW DID NOT ACT IN BREACH OF CONTRACT OR BAD FAITH**

Plaintiffs' contention that they "fully performed pursuant to the terms of this oral agreement, and the subsequent oral modification to the fee split in February 2022 and consistently paid Defendant Altman all monies to which he was owed" is false. (ECF 15 at ¶82) (Ex. E).  Altman and KA Law competently handled all student defense cases "assigned to them".  (ECF 15 at ¶83).  Altman merely requested from Plaintiffs the legal fees that were rightfully owed for the services rendered for the Split Fee Clients based on the Verbal Contracts and all subsequent modifications.  (Ex. E). One cannot extort what one is rightfully owed.

Altman and KA Law never ceased work on the Split Fee Clients. Only when Plaintiffs requested the return of the Split Fee Clients, did Altman and KA Law formally return those clients to Plaintiffs.

Plaintiffs have not provided any evidence of Altman and KA Law breaching their duty of good faith, fair dealing and performance based on the Verbal Contract and all modifications thereto. Plaintiffs have not proven that they were damaged by Altman and KA Law's or any actions of anyone affiliated with them. Under New Jersey law, Plaintiffs bear the burden of showing: 1) the existence of a valid contract; 2) a breach of the obligations under that contract; and 3) resulting damages. *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). Plaintiffs have failed to meet the burden of showing a breach and the resulting damages by Altman or KA Law of their obligations under the Verbal Contract or the modifications thereto.

## C.     ALTMAN AND KA LAW DID NOT ACT IN TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiffs have not provided any evidence of Altman and KA Law acted in a manner that was tortious interference of the relationship with the Split Fee Clients. The elements of a tortious interference with an existing contract claim are that: (1) a valid contract exists; (2) the third party had knowledge of the contract; (3) "the third party intentionally and improperly procured the breach of the contract; " and (4) the plaintiff sustained damages as a result of the breach. *Marks v. Struble*, 347 F. Supp. 2d 136, 144 (D.N.J. 2004). Plaintiffs cannot meet

the third or fourth prong to prove tortious interference.  Plaintiffs did not procure a breach between Plaintiffs and the Split Fee Clients. Plaintiffs have not provided or proven in damages caused by said interference.

Exactly as stated by the Plaintiffs (ECF 15 at ¶93), Plaintiffs entered into fee agreements with the Split Fee Clients, not Altman or KA Law.  As further stated by the Plaintiffs, the Split Fee Clients were "assigned" to Altman.  Any interest that the Plaintiffs had in the monies received from Split Fee Clients were the responsibility of Plaintiffs, who was the responsible party to the Split Fee Client based on their one-on-one contract (Engagement Letter) with the Split Fee Clients. (Ex. F).  Additionally, the Plaintiffs have an ethical obligation to prudent legal representation to the Split Fee Clients.  Altman and KA Law performed adequate legal services to the Split Fee Clients that were "assigned" to them. Plaintiffs have failed to provide any evidence to the contrary.  Ironically, Plaintiffs if as they purport it is true that Altman and KA Law failed to perform adequate legal services to the Split Fee Clients, it was the Plaintiffs' duty to oversee, supervise all legal services provided by anyone who the Plaintiffs "assigned" cases to which they were ethically required to legally represent the Split Fee Clients' best interests.  With these allegations, Plaintiffs themselves breached their obligations and responsibilities ethically and contractually to the Split Fee Clients. The Plaintiffs, if anyone, breached the Split Fee Clients' interests in their contracts with the Split Fee Clients.  Again, all monies were paid directly by the Split Fee Clients to the Plaintiffs.  If any damages were incurred, the Plaintiffs are/were solely responsible to the Split Fee Clients.

Again, Altman and KA Law never ceased work on the Split Fee Clients. Only when Plaintiffs requested the return of the Split Fee Clients, did Altman and KA Law formally return those clients to Plaintiffs.   Converse to Plaintiffs' allegations, Altman and KA Law have emails, letters, time entries to prove their continued representation of the Split Fee Clients even after the termination of the Working Relationship on July 24, 2022.[3]  In fact, in Altman's attempts to protect the Split Fee Clients' interests, the Plaintiffs refused on numerous occasions to communicate with Altman and KA Law after July 24, 2022 in complete disregard to their ethical and contractual obligations to the Split Fee Clients.

Plaintiffs have failed to prove the elements of tortious interference and to prove any damages that arose from the alleged wrongdoing by Altman and KA Law.

## D.    NEGLIGENCE

Plaintiffs have failed to state a claim for professional negligence or negligence *per se* that arose from Altman's professional negligence in New Jersey for the New Jersey rules of professional negligence to apply.   Altman is not licensed to practice law in the state of New Jersey. The New Jersey Rules of Professional Conduct do not apply to the claims for which the Plaintiffs seek relief.  As such, respectfully this Honorable Court does not have jurisdiction over Plaintiffs' negligence claims, if any existed. Without conceding the argument that New Jersey Professional Rules of Conduct apply to Altman, the Plaintiffs have

---

[3] Upon this Honorable Court's request, Altman can provide evidence of the continued representation of the Split Fee Clients.

failed to state a claim for malpractice. The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. *Conklin v. Hannoch Weisman,* 145 N.J. 395, 416, 678 A.2d 1060 (1996). *Cohen v. Horn*, 2022 U.S. Dist. LEXIS 95455, at *14-15 (D.N.J. May 27, 2022).   Further, Plaintiff's do not have standing to bring a malpractice action as there was never an attorney-client relationship between the parties.

### 1.  Professional Negligence

Plaintiffs do not cite what statute for which they seek relief for professional negligence or what damages for professional negligence they are entitled. Plaintiffs' sole argument for professional negligence is that Plaintiffs "failed to competently prosecute the student defense cases which Plaintiffs assigned to them – this includes their failure to work on these matters, whether in part or at all." Plaintiffs entered into fee agreements with the Split Fee Clients, not Altman or KA Law. (Ex. F). Plaintiffs have an ethical obligation to prudent legal representation to the Split Fee Clients.  Altman performed adequate legal services to the Split Fee Clients that were "assigned" to them.  Plaintiffs have failed to provide any evidence to the contrary. It was the Plaintiffs' duty to oversee, supervise Altman's legal services performed for the Split Fee Clients.

Only when Plaintiffs requested the return of the Split Fee Clients, did Altman and KA Law formally return those clients to Plaintiffs.  Converse to

Plaintiffs' allegations, Altman has emails, letters, time entries to prove his continued representation of the Split Fee Clients even after the termination of the Working Relationship on July 24, 2022.   In fact, in Altman's attempts to protect the Split Fee Clients' interests, the Plaintiffs refused on numerous occasions to communicate with Altman and KA Law after July 24, 2022 in complete disregard to their ethical and contractual obligations to the Split Fee Clients.

Plaintiffs did not commit professional negligence. Plaintiffs have failed to provide any evidence of professional negligence or any damages that arose therefrom.

## 2. Negligence per se (Violation of NJ RPC 1.16/MI RPC 1.16/MRPC 1.16)

Plaintiffs have failed to state a claim for negligence *per se* under NJ RPC 1.16. Plaintiffs have failed to state any damages to the Split Fee Clients or to themselves to entitle an award of damages for negligence *per se*.   In New Jersey, "the violation of a statutory duty of care is not conclusive on the issue of negligence in a civil action but it is a circumstance which the trier of fact should consider in assessing liability." *Braitman v. Overlook Terrace Corp.*, 68 N.J. 368, 346 A.2d 76, 85 (N.J. 1975). Violation of a statute does not constitute negligence *per se*, but is "evidence which may be considered by a jury together with all of the evidence in determining issues of negligence . . . ." *Mattero v. Silverman*, 71 N.J. Super. 1, 176 A.2d 270, 275 (N.J. Super. Ct. App. Div. 1962).

Altman did not cease representation of the Split Fee Clients as stated herein.

However, Altman had the right to cease termination pursuant to NJ Rule 1.16, MJ Rule 1.16, and Model Rules of Professional Conduct RPC 1.16 - Declining or Terminating Representation which states:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law;

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

Plaintiffs discharged Altman of his "assigned" cases when they failed to pay in accordance with the Verbal Contract and all amendments thereto and when they specifically requested return of the Split Fee Cases in the MOU.

3.    **Negligence *per se* (Violation of NJ RPC 8.4 / MI RPC 8.4 / MRPC 8.4) (Count VIII)**

Plaintiffs have failed to state a claim for negligence *per se* under NJ, MI and MRPC 8.4 Plaintiffs have failed to state any damages to the Split Fee Clients or to themselves to entitle an award of damages for negligence per se. Plaintiffs' sole argument for negligence per se under 8.4 is: "Altman knowingly and intentionally violated NJ RCP / MI RCP / MRPC 1.16, in that he knowingly and intentionally withdrew from the representation of each of the approximately one-hundred (100) open student defense clients' matters which had been assigned to him by Plaintiffs, despite knowing that his withdrawal would have a material adverse effect on each and every such client." (ECF 15 at ¶130). Plaintiffs discharged Altman of his "assigned" cases when they failed to pay in accordance with the Verbal Contract and all amendments thereto and when they specifically requested return of the Split Fee Cases in the MOU.

### 4.    Negligence per se (Violation of NJ RPC 7.1 / MI RPC 7.1 / MRPC 7.1) (Count IX)

Plaintiffs have failed to state a claim for negligence per se under NJ, MI and MRPC 7.1 Plaintiffs have failed to state any damages to the Split Fee Clients or to themselves to entitle an award of damages for negligence per se. Plaintiffs' sole argument for negligence *per se* under 7.1 is: "Altman, was bound by the Rules of Professional Conduct governing attorneys to refrain from making false or misleading communications to the public about himself or his services. As Images 2 through 8 included earlier within this Complaint demonstrate, Defendant Altman repeated made false or misleading communications to the public regarding

himself and his services in that he repeatedly posted advertisements falsely identifying his firm by Plaintiffs' names, in order to highjack Plaintiffs' goodwill and steal clients attempting to hire Plaintiffs." (ECF 15 at ¶142,143).

First of all, Plaintiffs cannot even begin to claim damages for an action that *might* have caused damages. Plaintiffs were not harmed by the Google advertisements. Secondly, As stated herein, the Google advertisements that Plaintiffs allege caused them damages are ads created solely by Google themselves.   Thirdly, any facts or representations that Altman and KA Law provide Title IX and student defense services and are competent to do so is not false.  Plaintiffs have not provided any evidence to the contrary.  Conversely, the Plaintiffs continued to "assign" cases to Altman for which they were solely contracted with the client to provide legal services based on Plaintiffs' knowledge and belief of Altman's abilities to provide proper, adequate legal services specifically in the areas of Title IX and student defense.

## E.    UNJUST ENRICHMENT, CONVERSION

Plaintiffs have failed to state a claim or pled damages for which relief can be granted for unjust enrichment or conversion.  Plaintiffs' claim for unjust enrichment and conversion is: "Begrudgingly and under duress given Defendant Altman's threats, Plaintiffs on multiple occasions conceded to Defendant Altman's extortionate demands, paying him moneys to which he was not entitled under the oral agreement." (ECF 15 at ¶153).  Again, the Plaintiffs directly deposited into their "operating account" the Split Fee Clients' payments. (Ex. F). Plaintiffs owed Altman for the legal services performed on behalf of the Split Fee

Clients and in accordance with the Verbal Contract and all modifications thereto. (Ex. E, F). Any monies paid by Plaintiffs to Altman were legally due to Altman. (Ex. E).

F.    **UNFAIR COMPETION, FALSE REPRESENTATION, FALSE DESIGNATION OF ORIGIN and FALSE ADVERTISING UNDER THE LANHAM ACT**

Plaintiffs have failed to state a claim or pled damages for which relief can be granted for unfair competition, false designation of origin and false advertising under The Lanham Act. Plaintiffs contend that the Google advertisements are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Altman with Plaintiffs. The Google ads were created solely by Google and not Altman. The following factors under Section 1125(d)(1)(A)(ii)(I) may be considered in determining whether a mark is distinctive: (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods and services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; and (G) the nature and extent of use of the same or similar mark by third parties. *Fagnelli Plumbing Co. v. Gillece Plumbing & Heating, Inc.*, No. 10cv0679, 2011 U.S. Dist. LEXIS 15090, at *8 (W.D. Pa. Feb. 15, 2011). Plaintiffs do not state what is their

"mark".  Plaintiffs do not have a cause of action based on their unknown "mark".

Additionally, liability for false advertising under the Lanham Act arises if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous but has the tendency to deceive consumers. *Tillery v. Leonard & Sciolla*, LLP, 437 F. Supp. 2d 312, 317 (E.D. Pa. 2006).  Plaintiffs have failed to prove false advertising. There are no allegations that Altman and KA Law have obtained pecuniary benefits as a result of making their representations. Allowing Plaintiffs' claim to proceed would effectively transform the Lanham Act into a federal misrepresentation or defamation statute and create a federal cause of action for virtually any injury to commercial reputation. *See Cook Drilling Corp. v. Halco Am., Inc.*, Civ. A. No. 01-2940, 2002 U.S. Dist. LEXIS 903, 2002 WL 84532, at *7 (E.D. Pa. Jan. 22, 2002) ("The operative congressional concern was not with remedying reputational harms per se, but rather with addressing the deliberate transference by means of misrepresentation of the good will and reputation earned by a party.")  *Cronin v. Bergmann*, No. 14-4663, 2014 U.S. Dist. LEXIS 147542, at *6-7 (E.D. Pa. Oct. 16, 2014).   In the Third Circuit, the likelihood of consumer confusion is generally evaluated by weighing the ten so-called Lapp factors:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion

arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Interpace Corp. v. Lapp, Inc*., 721 F.2d 460, 463 (3d Cir. 1983).  Plaintiffs' claims fail based on every level of the Lapp factor.

## G.     DECLARATORY JUDGMENT ACT

Plaintiffs are seeking a creation of a remedy under 28 U.S.C. §2201. However, they fail to state a cause of action to which they are entitled to relief. Plaintiffs' relief sought fails for failure to state a claim.

Clearly, the Plaintiffs owe Altman and KA Law for the legal services rendered to the Split Fee Clients. (Exhibit E).

## VII.  CONCLUSION

Plaintiffs fraudulently filed with lawsuit to delay and/or escape payment of the legal fees owed. Lento is ethically responsible for the legal services performed on behalf of the Split Fee Clients. Plaintiffs cannot escape liability of their non-

employees' actions either. Pa. Rule 5.3(a) requires lawyers with "managerial authority" to undertake "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the [non-lawyer's] conduct is compatible with the professional obligations of the lawyer." *Kashi v. McGraw-Hill Glob. Educ. Holdings*, No. 17-1818, 2018 U.S. Dist. LEXIS 145057, at *4 (E.D. Pa. Aug. 27, 2018). Under Fed. R. Civ. P. 12(b)(6), this Honorable Court is permitted to grant Altman's and KA Law's Motion to Dismiss in its entirety, with prejudice, since Plaintiffs have "failed to state a claim upon which relief can be granted." Plaintiffs have already amended their complaint as a matter of right and failed to state a claim for which relief could be granted. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) ("We have made it clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'").

Dated: November 14, 2022        Respectfully submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner, Esq. (283502018)
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## VIII.  CERTIFICATE OF WORD COUNT

The undersigned counsel for Defendants, hereby certifies that according to Microsoft Word's word count feature, this Brief, excluding title page, signature blocks and attached certificates, contains 9,347 words.

## IX.    CERTIFICATE OF NON-CONCURRENCE

I certify that Plaintiffs' counsel does not concur with this motion.

## X.    CERTIFICATE OF SERVICE

The undersigned attorney for Defendant hereby certifies that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure.

Dated: November 14, 2022                     Respectfully submitted,

                                             */s/ Solomon M. Radner*
                                             Solomon M. Radner, Esq. (283502018)