# EXHIBIT B

Solomon Radner, Esq. (283502018)
**LAW OFFICE OF KEITH ALTMAN**
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. LENTO, ESQ., an individual, LENTO LAW FIRM, LLC, a limited liability company,<br><br>                    Plaintiffs,<br><br>      v.<br><br>KEITH ALTMAN, ESQ., an individual, THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company, ARI KRESCH, an individual, and RICHARD GILL, an individual,<br><br>                    Defendants. | Civil Action No.: 1:22-cv-04840<br><br> Hon. Robert B. Kugler |

## <u>DEFENDANTS', ARI KRESCH AND RICHARD GILL, MOTION TO DISMISS</u>

Come now Defendants Ari Kresch ("Kresch") and Richard Gill ("Gill") and move this honorable Court for a Motion to Dismiss. In support of said Motion, the Defendants state as follows:

1

1.    Kresch moves to be dismissed based on Plaintiffs', Joseph D. Lento and Lento Law Firm, LLC ("Plaintiffs"), failure to plead any facts, much less with specificity, as to Kresch's actions and/or involvement in the working relationship[1] between Plaintiffs' and Keith Altman and The Law Office of Keith Altman, PLLC ("Altman" and "KA Law").

2.    Gill moves to be dismiss based on Plaintiffs' failure to plead any facts, much less with specificity, as to Gill's actions and/or involvement in the working relationship between Plaintiffs' and Altman and KA Law.

3.    Kresch and Gill are contemporaneously file a Memorandum in Support of this Motion to Dismiss.  All supporting facts and relevant case law are set out therein.

WHEREFORE, PREMISES CONSIDERED, Defendants, Kresch and Gill, move this honorable Court based on the facts, evidence and case law set out in the contemporaneously filed Memorandum in Support to Motion to Dismiss requesting dismissal of Kresch and Gill on all counts so pled against them by Plaintiffs, award attorneys' fees and costs, and for all justice to which they are entitled.

Dated: November 14, 2022         Respectfully submitted,

                                 */s/ Solomon M. Radner*
                                 Solomon M. Radner, Esq. (283502018)
                                 LAW OFFICE OF KEITH ALTMAN

---

[1] The working relationship as defined in the Memorandum in Support of Defendants', Kresch and Gill, Motion to Dismiss.

33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

Solomon Radner, Esq. (283502018)
**LAW OFFICE OF KEITH ALTMAN**
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH D. LENTO, ESQ., an individual, LENTO LAW FIRM, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH ALTMAN, ESQ., an individual, THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company, ARI KRESCH, an individual, and RICHARD GILL, an individual,<br><br>Defendants. | Civil Action No.: 1:22-cv-04840<br><br>Hon. Robert B. Kugler |

## BRIEF OF DEFENDANTS, ARI KRESCH AND RICHARD GILL, IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, WITH PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................4

I.   I. INTRODUCTION........................................................................................7

II.   PROCEDURAL HISTORY .............................................................................7

III. UNDISPUTED FACTS....................................................................................8

IV. QUESTION PRESENTED...............................................................................11

SHOULD DEFENDANTS', ARI KRESH AND RICHARD GILL, MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) BE GRANTED WITH PREJUDICE AND ARI KRESH AND RICHARD GILL DISMISSED FROM PLAINTIFFS' AMENDED COMPLAINT? .......................................................11

V.   STANDARD OF REVIEW ............................................................................11

VI. ARGUMENT....................................................................................................13

A.   PLAINTIFFS' ALLEGATIONS OF VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) IS WITHOUT MERIT ....................................................................13

1.   THE UNLAWFUL DEBT ......................................................................15

2.   PATTERN OF ACTIVITY ....................................................................15

4.   EXTORTION SCHEME..........................................................................20

5.   18 U.S.C. §1951 (the Hobbs Act) and New Jersey RICO Act, N.J.S.A. §2C:41-1 and §2C:41-1(2)(d), *et seq*.............................................................20

6.   18 U.S.C. §1343 (WIRE FRAUD)...........................................................25

7.   PLAINTIFFS ARE TALKING OUT BOTH SIDES OF THEIR MOUTH 27

8.   GOOGLE DRIVEN TRAFFIC TO WEBPAGE ........................................27

VII.CONCLUSION .................................................................................................29

VIII.    CERTIFICATE OF WORD COUNT ..........................................................30

IX. CERTIFICATE OF NON-CONCURRENCE ....................................................30

CERTIFICATE OF SERVICE...................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005)* .................................... 20, 22

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)...................................................... 10, 11

*Beck v. Prupis*, 529 U.S. 494, 495, 120 S. Ct. 1608, 1611 (2000) ............. 19, 20, 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).............................. 10, 11

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (2016).............................................11

*Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183-184 (3d Cir. 2000)
.........................................................................................................................10

*Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 351 (6th Cir. 2005).. 15,
16

*Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S.
Ct. 1311 (1992).............................................................................................. 20, 22

*Hoskins Mfg. Co. v. PMC Corp*., 47 F. Supp. 2d 852, 857 (E.D. Mich. 1999).......16

*Humana, Inc. v. Indivior Inc.,* No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *1
(E.D. Pa. July 22, 2021) ........................................................................................21

*Humana, Inc. v. Indivior Inc.*, No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *35
(E.D. Pa. July 22, 2021) .................................................................................. 20, 21

*In re NAHC, Inc*. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ........................27

*Irish v. Ferguson*, 970 F. Supp. 2d 317, 362 (M.D. Pa. 2013)...............................20

*Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. Appx. 354, 367 (3d Cir. 2010) .20

M*aio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000) ....................................22

*Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 *N.Y.* 459, 132 *N.E.*

    148, 24 *A.L.R.* 1348 (*Ct. App.* 1921) ....................................................................12

*Soloff v. Josephson*, 21 N.J. Super. 106, 109-10, 90 A.2d 891, 893 (Super. Ct. App.

    Div. 1952) ............................................................................................................12

*Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) ............................22

**Statutes**

18 U.S.C. § 1962(c) ................................................................................................13

18 U.S.C. § 1962(d) ...............................................................................................13

18 U.S.C. §1343 .....................................................................................................23

18 U.S.C. §1951 .....................................................................................................19

18 U.S.C. §1962(c) .................................................................................................13

18 U.S.C.S. § 1961(4) .............................................................................................21

18 U.S.C.S. § 1962(c) .............................................................................................20

18 U.S.C.S. §§ 1961-1968 ......................................................................................19

Mich. Comp. Laws Serv. § 445.774a ............................................................. 16, 17

N.J.S.A. §2C:41-1 ..................................................................................................19

N.J.S.A. §2C:41-1(2)(d)..........................................................................................19

**Other Authorities**

1 *Restatement, Contracts* (1932)...................................................................................12

1 *Williston on Contracts* (*Rev. Ed.* 1936) ................................................................12

Restatement (Second) of Contracts § 186 cmt. a (1981) ...........................................15

Restatement (Second) of Contracts § 188 (1981)............................................. 15, 16

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................... 10, 26

Model Rule of Professional Conduct 5.6...................................................................17

*N.J. Ct. R. app 3 R. R. 5.6* .....................................................................................18

SCR 20:5.6(a)...........................................................................................................15

SCR 20:8.4 ...............................................................................................................15

SCR 20:8.4(a)...........................................................................................................15

**I.**

## I.  INTRODUCTION

The present case is nothing more than an attempt to destroy the competition and a blatant attempt to evade an owed debt for personal and professional gain. Plaintiffs, Defendant The Law Office of Keith Altman and Defendant Keith Altman had a working business relationship for some time. When the business relationship started to deteriorate, Defendants sought payment of the outstanding debt owed. The parties resolved the payment dispute and entered into a Resolution Agreement. Plaintiff now brings forth the present frivolous case forward in an attempt to ruin Defendants business, reputation, ability to practice law and to absolve Plaintiff from an owed debt.

## II.    PROCEDURAL HISTORY

Plaintiffs, Joseph D. Lento and Lento Law Firm, LLC ("Plaintiffs"), filed an Amended Complaint on August 30, 2022 ("Amended Complaint"), against Defendants, Ari Kresch and Richard Gill ("Kresch" and "Gill")[1].  Specifically, Plaintiffs brought the following causes of action against Kresch and Gill:

Count I - Violations of The Racketeer Influenced And Corrupt Organizations Act (RICO); and Count II - Violations Of The New Jersey Rico Law.

*See* Amended Complaint attached hereto and incorporated herein as **Exhibit A**.

---

[1] Plaintiffs' Amended Complaint also names Defendants, Keith Altman and The Law Office of Keith Altman, PLLC which are included in Counts I through XIV. *See* Exhibit A.

Plaintiffs' claims completely and entirely fail against Kresch and Gill as a matter of law. Therefore, Kresch and Gill's Motion to Dismiss should be granted with prejudice in its entirety.

### III.   UNDISPUTED FACTS

In May 2020, a working relationship started between Plaintiffs and Keith Altman ("Altman"). ("Working Relationship"). Plaintiffs and Altman entered into a verbal agreement wherein all attorneys' fees collected for pre-litigation student defense matters would be split 60/40, with 60% of the fee going to Plaintiffs as the attorney of record and 40% of the fee going to Altman for his time and labor. Plaintiffs' marketing expenses were to be deducted off the top of all attorneys' fees prior to the fee split between Plaintiffs and Altman.  ("Verbal Contract")[2].  No other individuals were a party to the Verbal Contract.  At the time the Verbal Contract was entered into between Plaintiffs and Altman, Gill was unknown to either Plaintiffs, Altman or Kresch[3].

The Working Relationship worked in the following manner:  Plaintiffs set up their own conference line ("Plaintiffs' Conference Line"); all potential clients contacted Plaintiffs; Plaintiffs contacted Altman at first, then employees of KA Law

---

[2] The terms of the Verbal Contract are undisputed. (ECF 15 at ¶21).
[3] In 2002, Altman met Kresch at a legal conference. In November 2011, The Law Offices of Keith Altman, PLLC (KA Law) was incorporated.  In December 2020, Altman became a 1099 of counsel contract employee of Excolo Law, PLLC ("Excolo") which was incorporated in 2014 in Michigan.  In May 2020, KA Law, a sole proprietorship, did not have any employees.  In June 2021, Gill was hired as a student discipline writer for KA Law.  In November 2021, Gill became firm administrator of KA Law.

to schedule a telephone conference between Lento, Altman and all potentials; at the scheduled appointment time and date, the potentials called Plaintiffs' Conference Line; during the consultation Plaintiffs after introduction remained silent and Altman took the lead; all potentials paid the monies directly to the Plaintiffs; all attorney/client agreements were in Plaintiffs' name (Not until approximately end of 2021 did Altman's name appear anywhere in the attorney/client agreement.); Altman and KA Law performed all the legal services.  These clients are herein referred to as the "Fee Split Clients". In summary, Plaintiffs got the potentials in, Altman closed the deal, Plaintiffs received all the attorneys' fees, and Altman did all the work.

The Working Relationship continued until Plaintiffs owed Altman and KA Law excessive legal fees. Since the end of 2020, Altman has been requesting documentation to support Plaintiffs' marketing expenses in order to get a true calculation of legal fees owed to Altman minus Plaintiffs' paid marketing services specifically tailored to student defense and Title IX.  To date, Plaintiffs have failed to provide any documentation showing the amount Plaintiffs paid for marketing specifically tailored to student defense.

In February 2022 and effective March 1, 2022, Plaintiffs and Altman came to an agreement with respect to the modification of the fee split. Under the new agreed upon fee split, Plaintiffs were to receive 55% of the legal fees paid to Plaintiffs with Altman receiving 45% of the fee, minus Plaintiffs' marketing expenses being

reduced off the top of the legal fees rendered prior to the split.  Altman was to receive 25% of the consulting revenue retroactive to January 1, 2022. ("Modified Verbal Contract").

Due to the growth of the services being rendered by Altman through KA Law, Altman incurred additional staffing expenses. Plaintiffs and Altman agreed to a second modification of the Verbal Contract providing for Altman's law firm salaries, approximately $100,000 per month, being reduced along with Plaintiffs' marketing expenses from the Fee Split Clients' fees. ("Second Modified Verbal Contract").

By July 2022, Plaintiffs owed Altman over $800,000, plus the $110,000 in KA Law's salaries. Altman provided to Plaintiffs an accounting evidencing the owed attorneys' fees and salary costs.  To reduce the amount owed, Plaintiffs agreed to send $80,000 to Altman on or before July 22, 2022.  On July 23, 2022, Plaintiffs did not send the agreed upon amount of $80,000 but only sent $55,000 to Altman.  On July 24, 2022, Plaintiffs and Altman agreed to sever the Working Relationship.  On that same day, Hunt advised Altman that he had been appointed by Plaintiffs to negotiate the outstanding fees. Based on Hunt's representations of his appointment by the Plaintiffs to negotiate the outstanding fees, Altman made a demand to Plaintiffs in the amount of $500,000.

On July 25, 2022, a Resolution Agreement was made by Plaintiffs offering the following: 1) $365,000 payment; 2) Plaintiffs taking back all uncompleted

student defense cases which were not active litigation cases; 3) Plaintiffs waving all referral fees in all litigation matters arising from the Verbal Contract to the present; 4) mutual indemnification; 5) mutual releases; and 6) mutual non disparagement. ("Resolution Agreement").

Altman drafted and forwarded to Plaintiffs a Memorandum of Understanding that accurately reflected the Resolution Agreement.   Attached hereto and incorporated herein as **Exhibit B** is a copy of the MOU.  On July 28, 2022, Plaintiffs revised the MOU and forwarded an unsigned copy of same to Altman. Attached hereto and incorporated herein as **Exhibit C** is a copy of the unsigned revised agreement ("Resolution Agreement"). Although from August 2020 until July 2022, Plaintiffs continued to schedule up to ten potential client calls a day six and sometimes seven days a week, Plaintiffs filed this lawsuit in breach of the July 25, 2022, Resolution Agreement.

## IV.    QUESTION PRESENTED

**SHOULD DEFENDANTS', ARI KRESH AND RICHARD GILL, MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) BE GRANTED WITH PREJUDICE AND ARI KRESH AND RICHARD GILL DISMISSED FROM PLAINTIFFS' AMENDED COMPLAINT?**

*SUGGESTED ANSWER:*             *YES.*

## V.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a defendant is entitled to a dismissal of a plaintiff's complaint when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order for a plaintiff to survive a defendant's motion to dismiss, a plaintiff's complaint must contain sufficient factual information, accepted as true for purposes of the motion, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The test for "facial plausibility" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. However, most importantly, where a plaintiff alleges facts "that are merely consistent with a defendant's liability," a plaintiff "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678, *citing Twombly*, at 557.

Pursuant to Fed. R. Civ. P. 12(b)(6), this Court is not required to accept legal conclusions as true. *Id.* Likewise, the reviewing court need not "ignore or discount reality" when making its determination and need not "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-184 (3d Cir. 2000).

Therefore, in determining whether to grant a Motion to Dismiss the following three (3) questions should be reviewed:

i)      What are the elements the plaintiff must plead to state a valid claim?

ii)     Are the allegations more than mere conclusions of law and, therefore, not entitled to an assumption of truth?

iii)    If there are "well-pled" facts, do they plausibly give rise to a legal entitlement to relief?

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (2016).

Kresch and Gill respectfully aver that the above-referenced standard of review is applicable to all the Counts in Plaintiffs' Complaint. For the reasons set forth below, this honorable Court should deny and dismiss Plaintiffs' Complaint in its entirety, with prejudice.

## VI.    ARGUMENT

### A. PLAINTIFFS' ALLEGATIONS OF VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) IS WITHOUT MERIT

In Count One of Plaintiffs' Complaint, Plaintiffs alleged that Kresch and Gill committed violations of RICO. Plaintiffs have not pled any injuries in fact. Plaintiffs do not state a single incident wherein Kresch and Gill committed RICO violations. Plaintiffs do not state or provide any evidence to support their claims of RICO violations. Plaintiff's Amended Complaint is mere conjecture. Plaintiffs' Amended Complaint must contain sufficient facts, accepted as true for purposes of the motion, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiffs alleged facts are knowingly incorrect and untrue. In December 2020, Altman became a 1099 of counsel contract employee of Excolo and continues as of counsel.  Kresch is not nor has he ever been an employee or partner of KA Law. Kresch is not entitled to any fees from the Split Fee Clients. Kresch in no way participated, agreed, suggested, or discussed the consideration with Altman or Plaintiffs in the making of the Verbal Contract.

In May 2020, when Plaintiffs and Altman entered into the Verbal Contract, Altman, Kresch nor Plaintiffs had ever met Gill.  Plaintiffs paint Gill as the firm administrator in an attempt to twist the facts.  As previously stated herein, Gill was hired as a student discipline writer for KA Law.  It was not until November 2021; Gill became the firm administrator of KA Law. Obviously, Gill in no way participated, agreed, suggested, or discussed the consideration with Altman in the making of the Verbal Contract. Basic requirements of an informal contract are a valuable consideration and a manifestation of mutual assent by the parties thereto. 1 *Williston on Contracts* (*Rev. Ed.* 1936), § 18, *p* 25; 1 *Restatement, Contracts* (1932), § 20, *p* 25. Mutual assent usually takes the form of an offer, which must be communicated to the offeree, and an acceptance thereof by the latter, either by words or conduct. *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 *N.Y.* 459, 132 *N.E.* 148, 24 *A.L.R.* 1348 (*Ct. App.* 1921). *Soloff v. Josephson*, 21 N.J. Super.

106, 109-10, 90 A.2d 891, 893 (Super. Ct. App. Div. 1952).

Plaintiffs allege that Altman, Gill and Kresch conspired to violate 18 U.S.C. §1962(c), which makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Accordingly, the claim is brought pursuant to 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1962(c). Plaintiffs have failed to meet the burden of proving the very basis of a RICO claim…how were Kresch and Gill involved in the collection of an unlawful debt.

## 1.    THE UNLAWFUL DEBT

Plaintiffs have failed to prove that an unlawful debt exists.  There is a debt owed to Altman and/or KA Law based on the Verbal Contract and all modifications thereto.  Plaintiffs owe Altman attorneys' fees for legal services rendered in the Working Relationship for the Fee Split Clients. As of July 2022, Plaintiffs owed Altman $705,665, plus $100,000 for KA Law's salaries.  It is important to note that Gill nor Kresch had had any form of communications with Plaintiffs regarding the outstanding fees owed by Plaintiffs for the Fee Split Cases.

## 2.    PATTERN OF ACTIVITY

Plaintiffs contend that Kresch works directly with the commission of the acts of Altman but fails to provide a single fact to substantiate that allegation. Kresch is in no way affiliated with the day-to-day operations of KA Law. The contracts between the Fee Split Clients and Plaintiffs are not a contract between the Fee Split Clients and Altman and/or KA Law or Kresch. Nor, has Kresch been co-counsel of any of the cases that arise from Altman's association with Plaintiffs or the Verbal Contract. Gill nor Kresch have ever been listed on any of the contracts between the Fee Split Clients and Plaintiffs. Kresch does not have any monetary entitlement to the attorneys' fees generated from the Split Fee Clients. Kresch is not an employee of KA Law. Kresch does not have any ownership in KA Law. Kresch in no way participates in the day-to-day operations of KA Law.

Altman is the sole proprietor of KA Law and Gill, an employee, who has no ownership in KA Law was a student writer and now managing director, merely assists in the supervision along with other similarly situated employees in insuring that no deadlines are missed in all the cases of KA Law. Gill is a W-2 employee who does not earn any additional income based on the success of the Split Fee Clients' cases.

### 3.    NONCOMPETE AGREEMENT IS NON-EXISTENT

Noncompete agreements are to prohibit from competing business directly or indirectly for a specific duration of time after their employment has ended. Supreme

Court Rule 20:5.6 provides, "A lawyer shall not participate in offering or making... a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement." SCR 20:5.6(a). SCR 20:8.4 states that it "is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." SCR 20:8.4(a).

Model Rule of Professional Conduct 5.6(b), which has been adopted in Michigan (where KA Law is incorporated) and is a rule against restraints on competition and representation by lawyers states that a lawyer shall not participate in an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties. *Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 351 (6th Cir. 2005).

Under the Restatement (Second) of Contracts § 188 (1981), a promise by an employee or agent not to compete in the future must be closely analyzed and invalidated as a matter of public policy if the "relationship is unreasonably in restraint of trade" arising from the fact that "the restraint is greater than is needed to protect the promisee's legitimate interest." The analysis required is designed to invalidate a contract interpretation "detrimental to the smooth operation of a freely competitive private economy." Restatement (Second) of Contracts § 186 cmt.

a (1981). In addition, courts have been reluctant to uphold employment promises to refrain from competition based on the employee's knowledge of "confidential information" because employer claims of "confidential information" are "often difficult to distinguish [from] . . . normal skills of the trade," § 188 cmt. b, and because "the likely injury to the public may be too great if it is seriously harmed by the impairment of [a worker's] economic mobility, or by the unavailability of the skills developed in his employment," *id.* cmt. e. *See, e.g., Hoskins Mfg. Co. v. PMC Corp.*, 47 F. Supp. 2d 852, 857 (E.D. Mich. 1999) (matters of general knowledge cannot be trade secrets).

The court cited Rule 5.6(b) of the Michigan Rules of Professional Conduct, which prohibits law partnership noncompete agreements in subsection (a) and states in subsection (b) that a lawyer shall not participate in "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." *Earnings Performance Grp. v. Quigley*, 124 F. App'x 350, 353 (6th Cir. 2005). § 445.774a. Agreement or covenant protecting business interests of employer; applicability of section.

Sec. 4a.(1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable

as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. Mich. Comp. Laws Serv. § 445.774a (LexisNexis, Lexis Advance through Act 143, 145, 146 of the 2022 Regular Legislative Session and E.R.O. 2022-1).

In the United States, can lawyers sign non-compete agreements? *The simple answer is yes, lawyers can sign non-compete agreements when accepting employment* but generally these agreements are not enforceable. In other words, in general, post-employment non-compete agreements that directly restrict a lawyer's ability to practice law are not enforceable in the United States.

The American Bar Association Model Rule of Professional Conduct 5.6 – Restrictions on Rights to Practice – prohibits a lawyer from making a "a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement, or b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy."

New Jersey has held that a noncompete agreement signed by an in-house lawyer is not enforceable because direct and indirect restrictions on the practice of

law violate the language and spirit of the Restrictions on Right to Practice Rule 5.6 (prohibiting agreements that restrict a lawyer's right to practice law).

Rule 5.6 - Restrictions on Right to Practice

A lawyer shall not participate in offering or making:

**(a)** a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or **(b)** an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

*N.J. Ct. R. app 3 R. R. 5.6*

## 4.    EXTORTION SCHEME

Plaintiffs allege that in June 2021 and November 2021 Altman threatened to leave the joint venture with Plaintiffs and stop working on the cases and stop paying his employees if Plaintiffs did not pay Altman the owed legal fees from the Fee Split Clients and Gill and Kresch approved. (ECF 15 at 41 - 46).  It is completely senseless that Altman would consult with Gill who in June 2021 was not even an employee and was later hired as mere employee who had zero vested interest in the "joint venture" or with Kresch also a non-employee who had zero vested interest in the "joint venture".

## 5.    18 U.S.C. §1951 (the Hobbs Act) and New Jersey RICO Act,

### N.J.S.A. §2C:41-1 and §2C:41-1(2)(d), *et seq*.

The Hobbs Act Plaintiffs contend that Altman, pursuant to an agreement with Gill and Kresch, has committed four acts of extortion and two acts of attempted extortion, by violating 18 U.S.C. §1951 (the Hobbs Act). (ECF 15 at ¶66) and New Jersey RICO Act, N.J.S.A. §2C:41-1 and N.J.S.A. §2C:41-1(2)(d), *et seq*. (ECF 15 at ¶72 and 73).

First of all, an agreement between Gill, Kresch and Altman has NEVER existed. Plaintiffs do not state what the agreement is, nor do they provide one shred of evidence to support such agreement.  Kresch and Gill did not obstruct, delay or affect commerce or the movement of any article or commodity in commerce by robbery or extortion. Apparently, Plaintiff is trying to opine that Gill and Kresch affected legal services or attempted to conspire to do so without any basis or reasoning why a non-lawyer and a noncommissioned lawyer would have any impotence to do so.

Congress enacted the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. §§ 1961-1968 (1994) as Title IX of the Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922, for the purpose of seeking the eradication of organized crime in the United States. *Beck v. Prupis*, 529 U.S. 494, 495, 120 S. Ct. 1608, 1611 (2000). Person injured by overt act done in furtherance of RICO conspiracy held not to have cause of action under 18 USCS 1964(c) where overt act

was not act of racketeering. *Id.* Plaintiffs were not injured by an overt act done in furtherance of a RICO conspiracy. Plaintiffs do not have a cause of action under 1964(c) because the alleged overt act committed is not an act that was itself tortious as to be incorporated in the common understanding of "civil conspiracy". *Id.* In *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. *Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005).* The Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *Id.* at 505-06, and not merely by a non-racketeering act in furtherance of a broader RICO conspiracy. *Id.*

Plaintiffs' RICO claims fall for failure to state a substantive claim. "If the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." *Irish v. Ferguson*, 970 F. Supp. 2d 317, 362 (M.D. Pa. 2013) (*citing Kolar v. Preferred Real Estate Invs., Inc*., 361 F. Appx. 354, 367 (3d Cir. 2010)) *Humana, Inc. v. Indivior Inc.*, No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *35 (E.D. Pa. July 22, 2021). RICO statute, 18 U.S.C.S. § 1962(c) makes it unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity. To plead a RICO claim under §
1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a
pattern (4) of racketeering activity. An enterprise includes any individual,
partnership, corporation, association, or other legal entity, and any union or group
of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961(4).
*Id.* The essential elements of a § 1962(d) conspiracy include: (1) knowledge of the
corrupt enterprise's activities and (2) agreement to facilitate those activities. There
is no requirement of an overt act and, thus, a defendant may be held liable for
conspiracy to violation section 1962(c) if he knowingly agrees to facilitate a scheme
which includes the operation or management of a RICO enterprise. *Humana, Inc. v.
Indivior Inc.,* No. 20-4602, 2021 U.S. Dist. LEXIS 137063, at *1 (E.D. Pa. July 22,
2021). Kresch nor Gill conspired because no conspiracy exists. In order for Plaintiffs
to meet the elements of § 1962(d), Plaintiffs have to prove that Kresch and Gill had
knowledge of the enterprise's [KA Law] corrupt activities, agreed to the corrupt
activities and knowingly agreed to facilitate the scheme through their operation or
management of the RICO enterprise [KA Law]. Plaintiffs have not stated that a
conspiracy exists. Plaintiffs have not stated that Kresch or Gill knowingly agreed to
facilitate KA Law's scheme and had the authority to operate and did operate and/or
manage KA Law in fulfilling the conspiracy scheme to meet the elements of §
1962(c) and (d).

Plaintiffs' allegations do not give rise to standing under § 1964(c), which requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962. Civil RICO "standing" is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction. M*aio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000). In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992), the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause. Then, in *Beck v. Prupis*, 529 U.S. 494, 507, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000), the Court held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." The Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *Id*. at 505-06, and not merely by a non-racketeering act in furtherance of a broader RICO conspiracy. *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005). Altman attempting to practice law through his law firm KA Law, is not an independently wrongful act under RICO. *Id.*

Plaintiffs point to no concrete losses, financial or otherwise, stemming from the alleged corruption. "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." (*quoting Steele*

*v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). *Anderson* at 265, 271.

### 6.      18 U.S.C. §1343 (WIRE FRAUD)

Plaintiffs are alleging that Altman, Kresch and Gill committed wire fraud by having competitive marketing.  Plaintiffs have failed to prove how competitive marketing that is a "scheme to defraud" in violation of the wire fraud statute, 18 U.S.C. §1343.  Plaintiffs have not proved fraud, misrepresentations or false promises committed in any manner authorized by Kresch or Gill.  (ECF 15 at ¶58). Altman, Gill or Kresch did not agree to violate the wire fraud statute, 18 U.S.C. §1343. Plaintiffs do not give any factual information to support their allegation. Plaintiffs merely state: "These wire fraud violations occurred over a period of months, are ongoing, and will not stop without judicial intervention." (ECF 15 at ¶68). Plaintiffs do not state what are the wire fraud violations. Most importantly, Plaintiffs are incapable of proving that there exists a non-compete agreement between Plaintiffs, Altman and KA Law because no such agreement exists. Absent proof of an existing written, limited in scope and geographical location, the Plaintiffs cannot bring claims for violations of the non-compete or for wire fraud schemes when Altman has never been bound by any agreement to not advertise for legal services.

Again, in October 2021, Gill as a mere student defense writer for Altman, non-equity holder of KA Law, Gill did not have any authority to give approval to

revamp the KA Law website. (ECF 15 at ¶52).  Furthermore, Gill did not have any prior technological, marketing, or legal experience to even give an effective position. Kresch, an owner of his own law firm with no interest in the Split Fee Cases or new cases generated by KA Law, had no reason to assist in the marketing and did not. Plaintiffs have not given any proof of the participation or authorization of KA Law's marketing.

After the Working Relationship as setout herein was terminated by Plaintiffs and Altman on July 24, 2022, KA Law's website advertised for Title IX and student defenses as alleged by Plaintiffs (ECF 15 at ¶53) as it was within KA Law's rights to do so. KA Law nor Altman are bound by a fictious, verbal noncompete as Plaintiffs allege. Plaintiffs have not provided a single writing that evidence conversations between Plaintiffs and Altman regarding the parameters or existence of a noncompete. Nor are KA Law or Altman restrained by any other means for establishing a website that contains the area of practice and services the law firm performs.  Nor are KA Law or Altman restrained by any other means for advertising in whatever manner they so choose for Title IX and student defense cases.

It begs the question for the sake of argument *if* there was a written confidentiality agreement, why did Plaintiffs not stop the Working Relationship and hold Altman accountable for breach of confidentiality agreement? Conversely, Plaintiffs continued to send up to ten potentials six to seven days a week to Altman

and KA Law.

### 7.     PLAINTIFFS ARE TALKING OUT BOTH SIDES OF THEIR MOUTH

Plaintiffs go on and on in paragraph after paragraph that KA Law is an enterprise and Altman the chief facilitator of a completely hypothetical conspiracy that rises to the level of RICO involving himself, his law firm, Kresch and Gill. But, ironically, in Paragraph 55 of the Amended Complaint (ECF 15 at ¶55) Plaintiffs state the following:

> 55. Additionally, with reference to Defendant Altman's website, some of the testimonials listed in the "student stories" tab located at https://www.kaltmanlaw.com/student-stories are testimonials from clients of the Lento Law Firm to whom ***Altman was merely assigned to handle their matters*** pursuant to their agreement, not clients of the Altman firm. (emphasis added).

Here, Plaintiffs concede that the positive testimonials praising the legal representation the Split Fee Clients received in their student defense/Title IX legal issues was based on Altman's legal services. As such, Altman was completely within his right to advertise the positive testimonials of the Split Fee Clients for the work he performed.

### 8.     GOOGLE DRIVEN TRAFFIC TO WEBPAGE

After the Working Relationship ended, July 24, 2022, Plaintiffs contend

that Altman with the approval of Gill and Kresch posted Pay Per Click ads on Google which used the Lento Law Firm. (ECF 15 at ¶56). Regardless of whether or not there was a non-compete written agreement (which there was NOT), Altman and KA Law were not bound to restraints on marketing by Plaintiffs during the Working Relationship or after, presently, or in the future.

On July 18, 2022, Altman and KA Law launched its student defense, Title IX pages on KA Law website. On July 24, 2022, KA Law began using Google ads. However, even though Altman and KA Law are not or have they ever been restrained from marketing by Plaintiffs, Altman and KA Law did not list Plaintiffs in their marketing. The screen shots displayed by Plaintiffs were as the Plaintiffs stated Google ads for which Google generated the subheadings in searches. (ECF 15 at ¶56). Regardless, Altman and KA Law are free to advertise in the competitive legal market just like any other law firm. If Altman and KA Law want to advertise services for Title IX and student defense, they have ever right to do so. Additionally, it does not matter who assisted or authorized them to do so. However, Kresch nor did not assist or authorize the marketing of Altman or KA Law. Plaintiffs have failed to prove the existence of a noncompete or Kresch's and Gill's involvement in Altman or KA Law's marketing/advertisement practices.

Under Fed. R. Civ. P. 12(b)(6), this Honorable Court is permitted to grant

28

Kresch's and Gill's Motion and dismiss Count One and Count Two of Plaintiff's Complaint, in its entirety, with prejudice, since Plaintiffs have "failed to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Plaintiffs have already amended their complaint as a matter of right and failed to state a claim for which relief could be granted. *In re NAHC, Inc*. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("We have made it clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'").

## VII.  CONCLUSION

Based on the foregoing, Defendants, Ari Kresch and Richard Gill, respectfully request that their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted and that Plaintiffs' Complaint against them be denied and dismissed, with prejudice.

Dated: November 14, 2022          Respectfully submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner, Esq. (283502018)
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com
*Attorney for Defendants*

## VIII.  CERTIFICATE OF WORD COUNT

The undersigned counsel for Defendants, hereby certifies that according to Microsoft Word's word count feature, this Brief, excluding title page, signature blocks and attached certificates, contains 5,453 words.

## IX.    CERTIFICATE OF NON-CONCURRENCE

I certify that Plaintiffs' counsel does not concur with this motion.

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendant hereby certifies that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure.

Dated: November 14, 2022          Respectfully submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner, Esq. (283502018)