**KATES NUSSMAN RAPONE**
**ELLIS & FARHI, LLP**
Sandra M. Barsoum, Esq.
Attorney ID # 145392015
190 Moore St., Suite 306
Hackensack, NJ 07601
(201) 488-7211
*Attorneys for Plaintiffs Joseph D. Lento, Esq.*
*& Lento Law Firm, LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. LENTO, ESQ., an individual,<br>LENTO LAW FIRM, LLC, a limited liability company,<br><div align="right">Plaintiffs,</div><br>v.<br><br>KEITH ALTMAN, ESQ., an individual,<br>THE LAW OFFICE OF KEITH ALTMAN, PLLC, a/k/a "K ALTMAN LAW", a limited liability company, ARI KRESCH, an individual, and RICHARD GILL, an individual,<br><div align="right">Defendants.</div> | Civil Action No.: 1:22-cv-04840<br><br>Hon. Robert B. Kugler<br><br><br>**Return Date: February 6, 2023** |

### BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
### PURSUANT TO FED. R. CIV. P.  12(b)(6).

On the Brief:

Howard W. Foster, Esq.
(*pro hac vice*)
FOSTER P.C.
150 N. Wacker Dr.
Suite 1925
Chicago, Illinois 60606
(T) (312) 726-1600
HFoster@fosterpc.com

Sandra M. Barsoum, Esq.
KATES NUSSMAN et al
190 Moore Street
Suite 306
Hackensack, NJ 07601
(T) (201) 488-7211
Sbarsoum@nklaw.com

Samuel J. Jackson, Esq.
LENTO LAW GROUP
300 Atrium Way
Suite 200
Mount Laurel, NJ
(T) (856) 652-2000
sdjackson@lentolawgroup.com

# TABLE OF CONTENTS

**Pages**

Table of Authorities……..………..…..……………..……..…………….. 4

Introduction……..……..……………….………………………………... 6

Defendants Have Violated L. CIV.R. 7.2……………..………………….…7

Legal Argument……..……………..……………………………..……...11

The 12(B)(6) Motion to Dismiss Legal Standard……………………..……...11

The Motions to Dismiss Must Be Denied because Plaintiffs' Complaint Contains Sufficient Factual Matter, Which if Accepted As True, "State a Claim to Relief that is Plausible on its Face"….. ……………..…………………………12

RICO Claims… ……………………………………………...…………13

The FAC states Claims for Violations of the Federal and New Jersey RICO Statutes …………………………………………………………………13

The FAC Alleges Defendants are engaged in a closed and open (ongoing) pattern of racketeering …………………………………………………………15

The FAC alleges Altman, Gill and Kresch entered into a conspiracy to commit the RICO violations …………………………………………………...21

The FAC complies with the requirements of Fed.R.Civ.P.9(B) as to the wire fraud allegations……..………………………………………………..24

Breach of Contract Claims and Bad Faith Claims………………..……………25

Tortious Interference with Contract Claims…………………….……..……….28

Negligence Claims ………………………………………...……………30

Professional Negligence Claims…………………………………..…………31

Negligence Per Se (Violation of NJ RPC 1.16/MRPC 1.16) ….........................34

Negligence Per Se (Violation of NJ RPC 8.4/MRPC 8.4) …………………..34

Negligence Per Se (Violation of NJ RPC 7.1/MRPC 7.1) ……………………..34

Unjust Enrichment and Conversion ……………………………...………..…….35

Plaintiffs Properly Stated a Claim for Unfair Compensation, False Designation of Origin, and False Advertising Under the Lanham Act…………………………36

Declaratory Judgment Act Claims……………………………………………...39
Conclusion…………………………………………………………………....40

# TABLE OF AUTHORITIES

**Pages**

Albright v. Burns, 206 N.J.Super. 625, (1986)………………………………… 32

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ……………………………………11,12

Banco Popular N. Am., 184 N.J. 161(2005) …………………………………..33

Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990) ………………………………22

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ………………………..11

Clearpath Utility Solutions, LLC v. US Crossings Unlimited, LLC, 2016 WL 4987092 …………………………………………………………………………..26

Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 614–15 (E.D. Pa. 2010).…………………………..…………………………………………19

CSR Ltd. v. Cigna Corp., Civ. No. 95-2947, 2005 WL 3132188, (D.N.J. Nov. 21, 2005)…………………………………………………………………………....9

DiGiorgio Corp. v. Mendez & Co., Inc., 230 F. Supp. 2d 552, 558 (D.N.J. 2002)…………………………………………………………………………....28

Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 504 n.2…………...…………..27

Grant v. Turner, 505 Fed. Appx. 107 at *3 (3d Cir. 2012) ………………………24

Hess v. Advanced Cardiovascular Systems, Inc., 520 U.S. 1277 (1997)…...….…11

International Raw Materials v. Stauffer Chem. Co., 978 F.2d 1318, (3d Cir.1992)……………………………………………………………………..…..27

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412–13 (3d Cir. 1991)……………………………………………………………………… 19, 20, 40

Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285 (2001)…………...……… 28

McGrogan v. Till, 771 A.2d 1187 (N.J. 2001) …………………………..……..31

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) …………………..39

Munsif v. Cassel, 331 F. App'x 954, 958 (3d Cir. 2009)………………..……...14

Nation Savings Bank v. Ward, 100 U.S. 195 (1879)…………………..……….32

Petrillo v. Bachenberg, 139 N.J. 471 (1995)…………………………..………..32

Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)……..….…..17

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)……..………11, 12

Rose v. Bartle, 871 F.2d 331 n. 53 (3d Cir. 1989)……………………..………..24

Rotella v. Wood, 528 U.S. 549, 557 (2000)…………..……………………..…..15

Sands v. McCormick, 502 F.3d 263, 268 (3rd Cir. 2007)……………..………...10

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497–98, (1985)………………..…..15

Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc., 737 F.3d 879, (3d Cir. 2013) ……………………………….......25

Swistock v. Jones, 884 F.3d 755, 759 (3d Cir. 1989)…………………………..21

<u>Thompson v. Eva's Village and Sheltering Program</u>, Civ. No. 04-2548, 2008 WL 4661802, (D.N.J. Oct. 20, 2008)……………………………………………....9

<u>Tillery v. Leonard & Sciolla, LLP</u>, 437 F. Supp. 2d 312, 317 (E.D. Pa. 2006)...37

<u>Too Much Media v. Hale,</u> 413 N.J. Super 135 (App. Div. 2010)……………...26

<u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3rd Cir. 2002)……....10

<u>United States v. Pharis</u>, 298 F.3d 228, 234 (3d Cir.2002)……..………………18

<u>United States v. Rosenblum</u>, 339 F.2d 473, 474 (2d Cir. 1964)……………....20

<u>United States v. Stirone</u>, 262 F.2d 571 (3rd Cir.)………………….…..……...16

<u>United States v. Sweeney</u>, 262 F.2d 272 (3rd Cir. 1959)……………...……...16

<u>United States v. Townley</u>, 665 F.2d 579, 585 (5th Cir.1982)…………..…..….19

<u>Wachovia Bank, N.A. v. Ferretti</u>, 935 A. 2d at 572)………………………..26, 30

Rules

Fed. R. Civ. P. 8(a)(2)………………………………………………….……..12

Fed. R. Civ. P. 8………………………………………………………………..12

Fed. R. Civ. P. 9(b) ………………………………………………….………..23

Statutes

18 U.S.C. § 1962(c)……………………………………………………….……14

18 U.S.C. §1343………………………………………………………….……..18

18 U.S.C. §1951(a)……………………………………………………………..16

## INTRODUCTION

Defendants have filed two separate Motions to Dismiss (ECF 26 and ECF 27) the Plaintiffs' First Amended Complaint (ECF 15), (hereafter "FAC") by presenting each of those motions on behalf of two of the four Defendants. Plaintiffs nevertheless file a single, uniform brief in opposition to both motions, responding to the duplicative and other arguments in each.

The RICO claims are based on the schemes to extort substantial sums of money from the Lento Law firm and to take clients looking for the Lento Law Firm on the internet by diverting them to the Altman Firm website. These schemes amount to a pattern of racketeering activity which has occurred over a significant period of time and is still ongoing. The Motions do not contest the adequacy of the pleading of most of the elements of the federal and New Jersey RICO claims. Rather they improperly contest the truth of the facts pleaded in the First Amended Complaint ("FAC"). This cannot be done at this stage of the litigation. Additionally, the Motions argue at great length that there is no valid non-compete agreement between the parties. This is irrelevant to the RICO claims which do not argue that there is such agreement. And no non-compete agreement is needed to state a RICO claim. Thus, the Motions do not put forth a basis for dismissal.

The New Jersey common law claims (Counts III, IV, V, VI, VII, VIII, IX, X and XI are founded on the admitted (by Defendants' motions) contractual relationship

between Plaintiffs and Defendants. As with the RICO claims, Defendants' motions do not challenge the adequacy of the allegations pled in the FAC; instead they improperly set forth blanket denials, improperly present "counter facts" and purported "evidence" and complain that "no evidence has been provided" to support those allegations. Of course, the presentation of evidence to support Plaintiffs' claims is not required at this stage of the litigation.

As to the Lanham Act claim in Count XII, Defendants' motions focus on purported "counter facts" and what "Plaintiffs have failed to prove." The cases on which Defendants rely as to this claim each concern adequacy of proofs, not of pleadings.

## **DEFENDANTS HAVE VIOLATED L. CIV.R. 7.2**

At the outset, it is important to bring to the Court's attention the procedural defects committed by the Defendants in the submission of their two (2) Motions to Dismiss, Court Docs. 26-1 and 27-1, each with an accompanying Memorandum of Law in support of its request for relief.

Local Civ. Rule 7.2, sets forth the page limit in support of any motions submitted, and provides in pertinent part that "[a]ny brief shall include a table of contents and a table of authorities and shall not exceed 40 ordinary typed or printed pages . . . excluding the pages required for the table of contents and authorities ." Id. The Memorandum in support of the Motion to Dismiss submitted by Defendants Ari Kresch and Richard Gill has a total of 31 pages. The Memorandum in support of the Second Motion to Dismiss, submitted by Defendants Keith Altman and the Law Office of Keith Altman is 44 pages. Together,

the two briefs total 75 pages, excluding the tables of contents and authorities. A brief that exceeds the page limit may only be submitted if "special permission …. is obtained prior to the submission of the brief." L.Civ. 7.2(b). On or about November 7, 2022 the Defendants filed a motion for leave to  submit a brief in excess of the page limit.  This Court denied the motion.  (November 9, 2022 Text Order). Nevertheless, the Defendants filed two  separate Motions to Dismiss in  a transparent attempt to circumvent the Court's Order.  This also violated L.Civ. 7.2(b).

The Defendants' legal arguments regarding the RICO claims bear particular scrutiny.  The Altman and Law office and  Keith Altman brief contains legal arguments and case citations at Pages 15-16 that argue those claims are  insufficient. The Kresch and Gill brief supplements/continues that same arguments beginning at the bottom of Page 21 and continuing through  the top of Page 25. Both briefs contain a Pattern of Activity section, with the Kresch and Gill brief containing an  additional section. Both briefs contain identical sections entitled: Non-compete Agreement is Non-Existent; 18 U.S.C. § 1951 (the Hobbs Act); 18 U.S.C. § 1343 (Wire Fraud); Plaintiffs Are Talking Out Both Sides Of Their Mouth. Another section, however, entitled Google Driven Traffic To Webpage, has the Kresch and Gill brief supplementing/continuing the arguments in the Altman and Law office of Keith Altman brief.

Thus, Defendants have deliberately circumvented the Court's aforesaid standing order. The Altman and Law office of Keith Altman brief already violates L.CIV.R. 7.2(a) and the Court's standing order with its length of 44 pages. The Kresch and Gill brief (31

pages) transparently supplements/continues/expands the Altman and Law office of Keith Altman brief's arguments, as aforesaid, on the following issues: (1) the RICO claims; (2) the Pattern of Activity argument; (3) the Google Driven Traffic To Webpage arguments. Thus the Kresch and Gill brief is a guise for extending the content and length of the Altman and Law office and Keith Altman brief's argument, well beyond even the improper 44 pages.  Each of the Motions attaches as Exhibits C and D, an unsigned "Memorandum of Understanding," between the law firms and an unsigned Settlement Agreement. Of equal concern, the Altman and Law office and Keith Altman brief in particular is improperly replete with statements of fact that are not pleaded in the FAC.

Comment 2 to L.CIV.R. 7.2 in the New Jersey Federal Practice Rules, 2023 Edition states: "L.Civ.R. 7.2(a) reflects the strongly-held position of the court that there should be a clear and inviable  line drawn between straightforward factual submissions on one hand and legal and factual arguments more appropriately reserved for a brief on the other hand." Defendants have blatantly crossed that line and furthermore have not presented their factual allegations in a manner that confirms that they were based on personal knowledge. LM Ins. Corp. v. All-Ply Roofing, Inc., 2019 U.S. Dist. LEXIS 14418 (D.N.J. Jan. 30, 2019)(Vazquez). Courts in this District strictly enforce the page limit rule.  *See, e.g.,* , Thompson v. Eva's Village and Sheltering Program, Civ. No. 04-2548, 2008 WL 4661802, (D.N.J. Oct. 20, 2008)(stating that "Courts in this district have admonished parties, including those proceeding pro se, for violating Rule 7.2(b) and have repeatedly refused to consider briefs submitted in violation of the rule."); CSR Ltd. v. Cigna Corp.,

Civ. No. 95-2947, 2005 WL 3132188, (D.N.J. Nov. 21, 2005)(referring to Local Civil Rule 7.2(b) and stating that "[t]he Court expects all parties to adhere strictly to the limitations of the Local Rules in all future submissions and avoid artificial ruses designed to expand the length of briefs."). Accordingly, Plaintiffs specifically request that the Court reduce the page limit of the anticipated Reply brief from 15 to 7.5 pages.   To the extent that Defendants exceed that limit, it is respectfully submitted that the entire content of the excess pages be disregarded.

The Defendants' attach as to each of their briefs an unsigned "Memorandum of Understanding," between the law firms (Court Docs. 26-3 and 27-4) and an unsigned Settlement Agreement.  This Circuit has adopted the general rule that  when confronted with a Rule 12(b)(6) motion to dismiss that "a district court relies [only] on the complaint, attached exhibits, and matters of public record."  Sands v. McCormick, 502 F.3d 263, 268 (3rd Cir. 2007) (citation omitted). "Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.' " U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3rd Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3rd Cir. 1997)). The documents attached to the Defendants' Motions are not referred to, or relied upon in the FAC. As such, it is respectfully submitted that the Court not consider the Memorandum of Understanding or the Settlement Agreement in considering these Motions to Dismiss.

## **LEGAL ARGUMENT**

### I.    **The 12(b)(6) Motion to Dismiss Legal Standard**

Fed.R.Civ.P. 12(b)(6)  provides that a Defendant can move to dismiss a complaint where the Plaintiff has "failed to state a claim upon which relief can be granted." Id.  A Rule 12(b)(6) motion serves to test the sufficiency of a claim in order to determine whether it should proceed. Morris v. Azzi, 866 F. Supp. 149 (D.N.J. 1994). Such motions are also designed "to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." Hess v. Advanced Cardiovascular Systems, Inc., 520 U.S. 1277 (1997).

A Complaint which is challenged by a 12(b)(6) Motion, must contain sufficient factual details to "state a claim to relief that is plausaible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint will pass the "plausible" test when the facts pled allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. (citing T Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The standard is not whether it appears likely that the plaintiff will be able to prove the alleged facts or will prevail on the merits. Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).There is no "probability requirement at the pleading stage." Id. (citing Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To be "plausible," a claim must only rise "above the speculative level" by setting forth "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id.

Importantly, in considering a 12(b)(6) motion, the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008). This is in line with Fed. R. Civ. P. 8(a)(2), which states in relevant part that a pleading stating a claim for relief must also contain "a short and plain statement of the claim showing that the pleader is entitled to relief," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), in order provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests," <u>Id.</u> To comply with Rule 8(a)(2)'s 'notice pleading requirements and to prevent a dismissal of a complaint based on Rule 12(b)(6), "[a] plaintiff need not set out in detail the facts upon which he bases his claim, so long as he gives the defendant(s) fair notice of the claim" and the reasons giving rise to the claim to permit a defendant to answer and to prepare for trial. <u>Id</u>.

The FAC has set forth the necessary details in its factual allegations to meet this pleading standard. In fact, it was drafted to meet the more stringent New Jersey state fact pleading standard not the federal court notice pleading standard, and is far from a "threadbare recital" of the causes of action. Indeed, the Plaintiffs' 36-page Amended Complaint provides more than sufficient notice as it is specific in its allegations.

**II.   THE MOTIONS TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT CONTAINS SUFFICIENT FACTUAL MATTER, WHICH IF ACCEPTED AS TRUE, "STATE A CLAIM TO RELIEF THAT IS PLAUSIBLE ON ITS FACE."**

## A. RICO CLAIMS

The RICO claims do not rely upon the existence of a non-compete agreement between the Law Office of Keith Altman PLLC (the "Altman Firm") or Keith Altman ("Altman") and the Lento Law Firm. The RICO claims consist partly of an extortion scheme to take money from the Lento Law Firm. These acts are illegal absent a non-compete agreement. The RICO claims also consist of a wire fraud scheme to deceive potential clients seeking representation from the Lento Law Firm by steering them to the Altman Firm's website by using the Lento Law Firm name. This violates the wire fraud statute as a type of false advertising absent a non-compete agreement. The Motions argue at great length that non-compete agreements among lawyers are unenforceable. Court Doc. 26-1 at pp. 16-20 and Court Doc. 27-1 at pp. 18-22. But they do not contend that such an agreement is required in order for the Lento Law Firm to assert the RICO claims. This issue is a diversion from whether the RICO claims properly state causes of action.

### i. The FAC States Claims For Violations Of The Federal And New Jersey RICO Statutes[1]

The FAC alleges that the Defendants have conspired to commit a pattern of racketeering activity, extortion, attempted extortion, and wire fraud in order to illegally

---

[1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961-1968 and the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1-6.2. The New Jersey RICO law is generally interpreted in accordance with federal court RICO decisions. State v. Ball, 141 N.J. 142, 156, 661 A.2d 251, 258 (1995)("Nevertheless, because the federal [RICO] statute served as an initial model for our own, we heed federal legislative history and case law in construing our [RICO] statute"); accord, In re Schering Plough Corp.Intron/Temodar Consumer Class Action, 678 F.3d 235, 245 (3d Cir. 2012)("Since the TPP Complaint's federal and New Jersey RICO claims parallel each other, and because the two RICO statutes are intended to be coextensive, we follow the District Court's approach and analyze the two claims concurrently").

take money from the Lento Law Firm, and then deceptively divert potential Lento Law Firm clients to the Altman Firm.  This racketeering activity  continues unabated costing the Lento Law Firm millions of dollars in lost business. A claim alleging a pattern of racketeering under Civil RICO, 18 U.S.C. § 1962(c), requires proof of four elements: (i) the existence of an enterprise engaged in or affecting interstate commerce; (ii) that the defendant was employed by or associated with the enterprise; (iii) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (iv) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.  Munsif v. Cassel, 331 F. App'x 954, 958 (3d Cir. 2009).[2]

As will be demonstrated, the FAC alleges all of these elements.  Accordingly, this case is appropriately brought pursuant to RICO, which exists not only to compensate victims of racketeering activity but to "turn them into prosecutors, private attorneys general, dedicated to eliminating racketeering activity."  Rotella v. Wood, 528 U.S. 549, 557 (2000).  Moreover, the Supreme Court has held that "RICO is to be read broadly. This is the lesson not only of Congress's self-consciously expansive language and overall approach, but also of its express admonition that RICO is to be liberally construed to

---

[2] Similarly, the elements of a claim under the New Jersey RICO law are "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by, or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy."  Marina Dist. Dev. Co., LLC v. Ivey, 216 F. Supp. 3d 426, 436 (D.N.J. 2016).

effectuate its remedial purposes." <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 497–98, (1985) (citations and quotation marks omitted).

### ii. The FAC Alleges Defendants Are Engaged In A Closed And An Open (Ongoing) Pattern Of Racketeering

#### a. The Extortion Scheme

The FAC details that in June 2021, Altman devised an extortion scheme to demand substantial sums of money from the Lento Law Firm or he would stop working on the cases they were jointly handling and stop paying his employees who were working on these cases. FAC at ¶41. Defendants Richard Gill and Ari Kresch agreed to the extortion, thus forming a conspiracy. *Id.* Fearing its clients would be unrepresented and the Lento Law Firm would be damaged if Altman carried out his threat, the Lento Law Firm paid Altman the sum of $200,000 over three months. *Id.* Thereafter, Altman extorted the Lento Law Firm again, in November 2021, for another $200,000. *Id.* at ¶42. Another extortion attempt occurred in February 2022. *Id.* at ¶43. Although no specific sum of money was paid, the Lento Law Firm agreed to change its fee split in Altman's favor plus the payment of "consultation fees". *Id.* Altman and his conspirators Gill and Kresch carried out a fourth extortion in May 2022, this time demanding the Lento Law Firm pay $130,000 *per month*. Again, the Lento Law Firm paid, under duress and fearing business damage. *Id.* at ¶44. Altman and his conspirators attempted to extort another $165,000 per month in July 2022. This instilled the same fear in the Lento Law Firm, but it did not pay. *Id.* at ¶45. And in July 2022, Altman and the conspirators attempted to extort

$500,000 from the Lento Law Firm.  It instilled fear, but the Lento Law Firm did not pay. *Id.* at ¶46.  In total, six (6) Hobbs Act violations are pleaded.

All of these acts of extortion and attempted extortion are alleged to violate the Hobbs Act, 18 U.S.C. §1951(a).  *Id.* at ¶47.  This is made a form of racketeering activity by 18 U.S.C. §1961(1)(B).  FAC at ¶66.  The "fear" element of extortion can be the fear of "economic loss," as it is here.  "Extortion" is defined by the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The "fear" may be fear of economic loss as well as of physical harm. *See,* United States v. Sweeney, 262 F.2d 272 (3rd Cir. 1959); United States v. Stirone, 262 F.2d 571 (3rd Cir.), rev'd. on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The Motions do not take issue with the pleading of the extortion allegations.  Rather Altman improperly tries to create a factual dispute as to whether the Lento Law Firm owed money to the Altman Firm. *See* Docket No. 27-1 at p. 22 ("At no time did Altman extort Plaintiffs to pay legal fees.  It is undisputed that Plaintiffs owed Altman legal fees in June 2021 to the present").  They also state, "To request something that is rightfully owed is not extortion."  Court Doc. 27-1 at 23.  Mr. Kresch and Mr. Gill's Motion repeatedly attempts to assert new facts which are not alleged in the Complaint such as that Gill was not the Altman Firm administrator at the relevant time and that Mr. Kresch was not involved in the day-to-day operation of the Altman Firm.  Court Doc. 26-1 at pp. 14-16.  One Motion even cites to an unsigned settlement agreement in support of its

argument. Court Doc. 26-4 Ex. C. Of course, the law is clear that the Court must take the allegation made in the FAC, which asserts that Kresch and Gill were involved in the Altman Firm at the relevant time and that the Lento Law Firm did not owe money to the Altman Firm, as true. *See, e.g.,* Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)("The Supreme Court also reaffirmed that on a Rule 12(b)(6) motion, the facts alleged must be taken as true…"). *See* FAC at ¶41 ("However, the three [Altman, Kresch and Gill] knew that the Lento Law Firm did not owe Altman $200,000").

Therefore, the contention that there was no extortion because the money was owed, and it was thus not wrongful to demand it from the Lento Law Firm cannot be decided at this stage of the litigation.[3]

### b. The Wire Fraud Scheme

The FAC also alleges Altman conspired with Gill and Kresch to commit wire fraud in order to take business from the Lento Law Firm. FAC ¶¶51-66. Specifically, in August 2022, the three conspirators posted Pay Per Click ads on Google which use the Lento Law Firm name, but instead direct users to the Altman Firm. *Id.* at ¶56. This is alleged to be "an ongoing scheme to take business from the Lento Law Firm." *Id.* at ¶57. The Google postings are damaging to the Lento Law Firm because they direct potential Lento Law Firm clients in student defense cases to the Altman Firm. *Id.* The Lento Firm demanded that the Altman Firm take down the deceptive Google ads. The Altman Firm refuses to

---

[3] The Motion also makes arguments that no conspiracy is alleged and that the Lento Firm does not have "standing" to bring its RICO claim. These are addressed below.

do so. *Id.* The use of the internet to harm the Lento Law Firm by deceiving potential clients seeking the reputation and experience of the Lento Law Firm is a scheme to defraud in violation of the wire fraud statute, 18 U.S.C. §1343.[4] This scheme has damaged the Lento Law Firm by diverting its business to the Altman Firm. *Id.* at ¶60.

The elements of a violation of the wire fraud statute are "(1) a scheme to defraud; (2) the use of the mails or wires for the purpose of executing the scheme; and (3) fraudulent intent." United States v. Pharis, 298 F.3d 228, 234 (3d Cir.2002). The internet is a use of interstate wires. *See, e.g,* United States v. Rodriguez, No. 3:07–cr–414–PJB, 2008 WL 5157891, at *1 (D. Puerto Rico Dec.9, 2008) ("The wire fraud statute makes it unlawful for any person having devised or intending to devise any scheme or artifice to defraud to use interstate wires such as telephone lines or the *internet* for the purpose of executing the fraud scheme.") (emphasis added, internal quotations omitted); American Auto Guardian. Inc. v. Kramer, No. 05 C 6404, 2008 WL4553092, at *6 (N.D.Ill. July 8, 2008) ("[defendant] used the wires in furtherance of a scheme when she used the internet ..."); *see also, e.g.,* United States v. Leger, 377 F. App'x 911, 912–13 (11th Cir.2010) ("[b]ecause these FAFSA forms were transmitted through the internet and

---

[4] "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C.A. § 1343 (West).

through regular mail, there is also overwhelming evidence supporting his conviction for Pell Grant fraud and wire fraud.").

The Motions, without citing any authority, assert that there is no scheme to defraud. Rather, they characterize the Google ads as "competitive marketing."  Motions at 27 ("Plaintiffs have failed to prove how competitive marketing that is a 'scheme to defraud' in violation of the wire fraud statute…").   But the wire fraud statute is broad enough to include the statements at issue here which use the Lento Law Firm name to confuse potential clients and direct them to the Altman Firm website:

> A scheme to defraud means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another or by which someone intends to deprive another of something of value. Plaintiffs may satisfy the burden by showing a scheme to defraud involving "some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir.1991).

Deceitful statements, half truths, or the knowing concealment of material facts are all actionable under the mail and wire fraud statutes United States v. Townley, 665 F.2d 579, 585 (5th Cir.1982).

> The statements need not be false or fraudulent on their face, and the accused need not misrepresent any fact, since all that is necessary is that the scheme be reasonably calculated to deceive persons of ordinary prudence and comprehension, and that the mail service of the United States be used in the execution of the scheme.

Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 614–15 (E.D. Pa. 2010).

Misleading advertising is included within the concept of a "scheme to defraud." *United* States v. Rosenblum, 339 F.2d 473, 474 (2d Cir. 1964).[5]   Accordingly, the use of misleading advertising by the defendants to divert potential clients from the Lento Law Firm website, which they intended to visit, to the Altman Firm website by the use of the Lento Law Firm name is a type of "scheme to defraud."   No contrary authority is cited. Thus, the assertion in the Motions that no wire fraud violation is pleaded is wrong.

Taken together, the extortion scheme and the scheme to divert potential Lento Law Firm clients has persisted for a period of seventeen (17) months to date, beginning in June 2021, with the first extortion and presently, with the scheme to divert Lento Firm clients. In order to show a closed pattern of RICO violations courts consider several factors: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."   Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412–13 (3d Cir. 1991).   Here there are seven predicate acts (six Hobbs Act violations and one ongoing wire fraud violation), committed over seventeen months, the predicate acts are almost identical: there is one victim and three perpetrators.   The Motions do not even contend that these acts fail to plead a closed pattern.   The Third Circuit has held predicate

---

[5] This decision interpreted the mail fraud statute, 18 U.S.C. §1341.  But the "scheme to defraud" element of the mail and wire fraud statutes is interpreted in the same way**.** The mail fraud statute and the wire fraud statute are "in pari materia and are, therefore, to be given similar construction." United States v. Tarnopol, 561 F.2d 466, 475 (3d Cir.1977), *abrogated on other grounds by* Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). "[T]he cases construing the mail fraud statute are applicable to the wire fraud statute as well." *Id.* United States v. Fumo, 628 F. Supp. 2d 573, 582 (E.D. Pa. 2007)

acts occurring over a fourteen-month period are sufficient to meet the duration required to plead a closed ended pattern.  <u>Swistock v. Jones,</u> 884 F.3d 755, 759 (3d Cir. 1989).  Accordingly, the FAC alleges a closed pattern of racketeering.

The allegations also satisfy the requirements of an open-ended pattern, that the predicate acts are a regular way of conducting an ongoing legitimate business.  *See, e.g.,* <u>Tabas v. Tabas</u>, 47 F.3d 1280, 1295 (3d Cir. 1995)("*H.J. Inc.* suggests that open-ended continuity may be satisfied "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO 'enterprise.' " (internal citation quotation omitted). The FAC alleges that the wire fraud scheme is "an ongoing scheme to take business from the Lento Law Firm."  FAC at ¶57.  It is further alleged that the Lento Law Firm has demanded that Altman take down the deceptive ads and Altman refuses to do so.  *Id.* Therefore, the continuing use of the deceptive web ad is the regular way the Altman Firm does business.  This alleges an open-ended pattern of RICO violations.

### iii. The FAC Alleges Altman, Gill And Kresch Entered Into A Conspiracy To Commit The RICO Violations

The FAC alleges that Altman devised the extortion and wire fraud schemes.  FAC at ¶41 ("He discussed making these demands on the Lento Law Firm with Gill and Kresch and they approved of doing so.  However, the three knew that the Lento Law Firm did not owe Altman $200,000.").  Altman made the first extortionate demand on the Lento Law Firm.  And the FAC reiterates that Gill and Kresch agreed with Altman to make each

of the subsequent extortionate demands for money.  FAC at ¶¶42-46.  It also alleges Gill

and Kresch agreed with Altman to commit the wire fraud scheme.  Id. at ¶52.

Without citing any authority, the Motions contend "Altman acted on his own

without the knowledge, participation or approval of Kresch or Gill when he requested

from Plaintiffs' [sic] payment of the past due legal fees that arose from the Verbal

Contract and modifications."  Motions at 15, 23.  They further contend "An agreement

between Gill, Kresch and Altman NEVER existed.  Plaintiffs do not state what the

agreement is, nor do they provide one shred of evidence to support such agreement."

Motions at 24.  They further state:

> In order for Plaintiffs to meet the elements of §1962(d) [RICO's conspiracy
> provision], Plaintiffs have to prove that Kresch and Gill had knowledge of
> the enterprise's [KA Law] corrupt activities, agreed to the corrupt activities
> and knowingly agreed to facilitate the scheme through their operation or
> management of the RICO enterprise [KA Law].  Plaintiffs have not stated
> that a conspiracy exists.  Plaintiffs have not stated that Kresch or Gill
> knowingly agreed to facilitate Altman or KA Law's scheme and had the
> authority to operate and did operate and/or manage KA Law in fulfilling the
> conspiracy scheme to meet the elements of 1962(c) and (d).

Motions at 26.

The Third Circuit requirements to plead a RICO conspiracy are "agreement to

commit predicate acts and knowledge that the acts were part of a pattern of racketeering

activity."  Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990).   Moreover, there is no

requirement that each conspirator personally commit any of the RICO violations.  And as

the Supreme Court has held, "A conspirator must intend to further an endeavor which, if

completed, would satisfy all of the elements of a substantive criminal offense, but it

suffices that he adopt the goal of furthering or facilitating the criminal endeavor," <u>Salinas v. United States</u>, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L. Ed. 2d 352 (1997)( affirming RICO conviction of conspirator who did not commit any predicate acts.); *accord*, <u>United States v. Adams</u>,  759 F.2d 1099, 1116 (3d Cir. 1985)("By not requiring the personal commission of predicate offenses, we must affirm Vicito's conviction on the RICO conspiracy count").   The FAC alleges that each of the defendants entered into an agreement to commit the predicate acts. .  As stated above, the FAC at ¶41 alleges Altman "discussed making these demands [the extortions] on the Lento Law Firm with Gill and Kresch and they approved of doing so."   And the FAC proceeds to allege that Gill and Kresch agreed with Altman to commit every act of extortion and the wire fraud.  FAC at ¶¶42-46 and 52.  Gill and Kresch also agreed that these acts would be committed through the Altman Firm enterprise.   Gill is the Managing Director of the Altman Firm, the enterprise, and Kresch "works closely with Altman."  FAC at ¶¶38-39.  They both knew that the predicate acts were being committed through Altman Firm as the dispute was between it and the Lento Law Firm.  Accordingly, the FAC adequately alleges a RICO conspiracy. The pleading of a conspiracy among the defendants, including Kresch and Gill answers their contention made in their Motion that "Plaintiffs do not state a single incident wherein Kresch and Gill committed RICO violations."  Motion at p. 13.  As stated above, in order to plead a §1962(d) RICO conspiracy claim the Amended Complaint need only allege Kresch and Gill agreed to the commission of RICO violations. But they do not have to commit them.  The Amended Complaint alleges they agreed with

Altman to commit all of the RICO predicate acts.  It thus adequately states a RICO conspiracy claim against them.  The Motion cites no contrary authority.

### iv. The FAC Complies With The Requirements Of Fed. R. Civ. P. 9(b) As To The Wire Fraud Allegations

The Motions point out that allegations of fraud must comply with Fed. R. Civ. P. 9(b).  Motions at 16.  While this is true, the only allegation of fraud in the RICO claim is the wire fraud scheme, alleged at FAC ¶¶51-60.  The scheme alleges all of the facts required by the Third Circuit in RICO cases alleging fraud: "the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some affirmative means."  Grant v. Turner, 505 Fed. Appx. 107 at *3 (3d Cir. 2012)(reversing dismissal of RICO claim as adequately pled).  The allegations of wire fraud allege the dates of the fraudulent internet postings (beginning August 4, 2022, FAC at ¶56), the place (the Altman Firm's office in Michigan) and screen shots of the offensive statements leaving no doubt as to the nature of the allegation of wire fraud.  And notably, the Motions do not contend any specific piece of information is missing.  The suggestion that the allegations of the wire fraud scheme fail to conform to Rule 9(b) is wrong.

No suggestion is made that the extortion allegations fail to provide the basic statement of the claim required by Fed. R. Civ. P. 8, which applies to non-fraud predicate acts in RICO complaints. Rose v. Bartle, 871 F.2d 331 n. 53 (3d Cir. 1989)("We note that the Fed. R. Civ. P. 9(b) requirement that fraud allegations be pleaded with greater particularity than others is inapplicable here, since the plaintiffs allege no fraud on the part of Asher or Bartle").  Therefore, all of the predicate acts have been adequately

pleaded. In conclusion, the RICO claims state causes of action and should not be dismissed.

## B. BREACH OF CONTRACT CLAIMS AND BAD FAITH CLAIMS

Under New Jersey law, to state a claim for breach of contract, a plaintiff must plead that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *S*heet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc., 737 F.3d 879, (3d Cir. 2013) (citing Coyle v. Englander's, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)). To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms. Id.

In support of their Motion to dismiss Count III of Plaintiffs' Complaint for Breach of Contract as to Defendants Keith Altman and the Law office of Keith Altman PLLC, Defendants argue that the Plaintiff has failed to "meet the burden of showing a breach and the resulting damages…. of their obligations under the verbal contract of the modifications thereto." Unfortunately, however, the Defendants' argument is superficial at best. As an initial matter, the Defendants do not contest the existence of an oral agreement. Nor do the Defendants argue that the Plaintiffs insufficiently plead the facts alleged in support of the breach of contract claim. Instead, the Defendants merely deny their breach of the oral agreement. Its denial, however, does warrant the dismissal of

Plaintiffs' breach of contract claim. Furthermore, the Defendants are clearly mistaken with regard to the Plaintiffs' presentation of proofs at this stage of the proceeding. Indeed, Courts within this District have firmly established that, as opposed to a summary judgment motion, on a motion to dismiss for failure to state a claim, a court is not concerned with a plaintiff's ability to prove the allegations contained in his complaint but simply, whether the complaint, when viewed liberally, states the fundament of a cause of action. The lack of specific evidence of damages to the Plaintiffs provides no basis for dismissal of plaintiffs' complaint. Indeed, as the court in <u>Wachovia Bank, N.A. v. Ferretti,</u> 935 A. 2d at 572 held, "[i]t is unnecessary ... to prove a specific damage amount at this preliminary stage of the proceedings."). At the pleading stage, "a truncated assessment of [plaintiff's] recoverable damages is not a warranted undertaking," because "the applicable federal pleading standards require a party to set forth a plausible showing of entitlement to relief..." and "do not require the plaintiff to meet a quantum of proof." *See also,* <u>Too Much Media v. Hale,</u> 413 N.J. Super 135 (App. Div. 2010)(denying motion to dismiss complaint because plaintiff sufficiently pled lost profits); see also, <u>Clearpath Utility Solutions, LLC v. US Crossings Unlimited, LLC,</u> 2016 WL 4987092(W.D. Pa. Sept. 19, 2016) (denying motion to dismiss counterclaim because defendant sufficiently pled lost profits).

The facts surrounding the formation of the oral agreement (including the key terms) and the circumstances surrounding the breach are sufficiently pled in Plaintiffs' Complaint. The extent of damages suffered by the Plaintiffs as a result of the Defendants'

breach is also sufficiently plead in the complaint. Indeed, as a direct result of the Defendant Altman's breach in adequately handling the student files, many clients became frustrated and "Demanded the issuance of a refund of their fee, which [Plaintiffs] had no choice but to issue." (Pls. Amended Complaint at ¶27). Similarly, Defendant Altman breached the oral agreement by neglecting to send out fee arrangements to new clients, thereby resulting in many student defense cases which were not handled pursuant to client fee arrangements (FAC at ¶29). More so, due to Defendant Altman's breach and poor performance, clients left negative reviews of Plaintiffs online. (FAC at ¶31). Most obviously, the Plaintiffs have suffered an extraordinary financial damage as thoroughly detailed in the FAC ¶41-46 as a result of the Defendants' breach. The Plaintiffs could not have been more detailed in its allegations of breach and resulting damages, and as such meet the "plausibility" standard required at this stage of the proceeding.

Finally, Defendants did not sufficiently brief or otherwise address Plaintiffs' Count IV, Bad Faith claims, and as such, have waived any arguments thereto. See, Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 504 n.2 (App. Div. 2015)("An issue that is not briefed is deemed waived upon appeal.")See also, International Raw Materials v. Stauffer Chem. Co., 978 F.2d 1318, (3d Cir.1992)(an issue is waived unless a party raises it in its opening brief, and for those purposes "a passing reference to an issue ... will not suffice to bring that issue before this court.) Accordingly, the Defendants' motion to dismiss Count III for Breach of Contract and Count IV for Bad Faith as to Defendants Keith Altman and the Law office of Keith Altman PLLC., must be denied.

27

## C. TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS

Plaintiffs' Complaint alleges that the Defendants tortuously interfered with its attorney-client relationships arising under each of the student defense clients' fee agreements. An action for tortious interference is designed to protect "the right to pursue one's business, calling, or occupation, free from undue influence or molestation. Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285 (2001). To establish tortious interference with an existing contract, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with the relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. DiGiorgio Corp. v. Mendez & Co., Inc., 230 F. Supp. 2d 552, 558 (D.N.J. 2002).

In support of their Motion to dismiss Count V of Plaintiffs' Complaint for Tortious Interference as to Defendants Keith Altman and the Law office of Keith Altman PLLC, Defendants challenge only the sufficiency of Plaintiffs' pleading of the third and fourth elements, specifically that the Defendants did not procure a breach between the split fee clients, and that the plaintiffs have not proven damages caused by said interference.

It is necessary to note the troubling paradox that the Defendants present to this Court. While Defendants' dismissal briefs argue that the Split fee clients were the "responsibility of the Plaintiffs', and that the plaintiffs have an "ethical obligation to prudent legal representation to the split-fee clients," they nonetheless maintain that if they failed to adequately provide legal services then same would be the Plaintiffs' fault because it was the "Plaintiffs' duty to oversee and supervise all legal work." In essence,

the Defendants admit their breach but claim that it was the "Plaintiffs' fault."  The Defendants' argument is unconvincing and irrational, but more importantly—it is not warranting the dismissal of Plaintiffs' Complaint on this claim.

Importantly, the Plaintiff has plausibility plead facts giving rise to claim for tortious interference. Indeed, the Complaint states that the Plaintiff entered into approximately one hundred (100) attorney fee agreements with the student defense clients and subsequently assigned those cases to Defendant Altman and the Altman Firm to be handled by them pursuant to the terms of the oral agreement. (FAC at ¶93, 96). Plaintiffs had a clear and discernable interest, both monetarily and professionally, in the preservation of the attorney-client relationship arising under those fee agreements. Due to a fee dispute between the parties, Defendant Altman and the Altman Firm threatened to cease all work on the student defense matters assigned by them, unless the Plaintiff conceded to Defendant Altman's exonerate demand of $500,000. (FACat ¶97). The Defendants have intentionally and without justification interfered in the preservation and ultimate consummation of the student defense clients' fee agreements with Plaintiffs. (FAC at ¶102).

The FAC makes it clear that as a result of the Defendants' tortious interference into the student defense clients' fee agreements, Plaintiffs have been, and are presently being, prevented from preserving the attorney-client relationships arising under said agreements, and further, are being prevented from protecting the clients' interests which constitutes a clear breach and is causing the Plaintiff to sustain damages thereby. Finally,

the Defendants' argument that the Plaintiff failed to prove damages fails for the same reason as noted above--the lack of specific evidence of damages to the Plaintiffs provides no basis for dismissal of plaintiffs' complaint. Indeed, it is "unnecessary ... to prove a specific damage amount at this preliminary stage of the proceedings." Wachovia Bank, N.A. v. Ferretti, 935 A. 2d at 572). As such, the Defendants' motion to dismiss Count V of the Complaint for Tortious interference as to Defendants Keith Altman and the Law office of Keith Altman PLLC., must be denied.

### D. NEGLIGENCE CLAIMS

In support of their Motion to Dismiss the negligence claims lodged against them, Defendants argue that the Plaintiffs have failed to state a claim for professional negligence or negligence per se that arose from Defendant Altman's professional negligence in New Jersey for the New Jersey rules of professional negligence to apply. Specifically, Defendants argue that since Altman is not licensed to practice law in the state of New Jersey, then the New Jersey Rules of Professional Conduct do not apply. However, the Defendants argument is without any merit.

The New Jersey Rules of Professional Conduct Rule 5.5 squarely addresses the scenario at hand by providing a safe harbor for legal practices of out-of-state attorneys, which allow them to perform in New Jersey without engaging in the unauthorized practice of law by allowing the out-of-state attorney to associate with a New Jersey attorney, who would be specifically responsible for the conduct of the out-of-state lawyer in the matter. See, 5.5(b)(3)(iv). Notwithstanding, Rule 5.5 specifically indicates that

"out-of-state attorneys practicing under these rules are subject to the New Jersey Riles of Professional Conduct." Id. To be sure, Rule 8.5 recognizes that attorneys practicing in more than one jurisdiction will likely be subject to conflicting admission rules, court rules, or rules of professional conduct. Indeed, Rule 8.5(a) specifically states that "a lawyer not admitted in New Jersey is also subject to the disciplinary authority of New Jersey if the lawyer provides or offers to provide any legal services in New Jersey. A lawyer may be subject to the disciplinary authority of both New Jersey and another jurisdiction for the same conduct." Id. Therefore, Defendants' claim that they are not subject to New Jersey's Professional Conduct rules unequivocally fail.

### 1.  Professional Negligence Claims

Defendants argue, in essence, that the Plaintiff does not have standing to bring a malpractice action against it, as there was never an attorney-client relationship between the parties. Unfortunately, however, the Defendants miss the mark yet again.

Generally, a legal malpractice consists of three elements: (1) existence of an attorney client relationship creating a duty of care, (2) breach of that duty, and (3) proximate causation. McGrogan v. Till, 771 A.2d 1187 (N.J. 2001). An attorney generally owes a duty to perform diligently and with a high degree of "fidelity and good faith." Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756 (N.J. App. Div. 2001). To fulfill his or her duties, an attorney must exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.

Over the past century, the United States Supreme Court held that a third party not in privity of contract with an attorney could not maintain a legal malpractice action against that attorney absent fraud or collusion. Nation Savings Bank v. Ward, 100 U.S. 195 (1879). This rule was premised upon two basic concerns. First, "absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement." Id. Second, "imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability." Id. Since the Supreme Court's decision in *Ward*, however, numerous courts have continually chipped away at the "black letter law," carving out a number of exceptions to this rule. As such, there are many jurisdictions that allow third parties to bring legal malpractice claims where no attorney-client relationship is formed. In these jurisdictions, the attorney may be liable to a third party where the third party was an intended beneficiary of the attorneys' services or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others.

Under New Jersey law, "attorneys may owe a limited duty in favor of specific non-clients." Petrillo v. Bachenberg, 139 N.J. 471 (1995). Specifically, "a member of the bar owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity.'" Id. (quoting Albright v. Burns, 206 N.J.Super. 625, (1986)). This duty to non-clients is limited to "situations in which the lawyer intended or should have foreseen that the third-party would rely on the lawyer's work." Id. "If the attorney['] s actions are intended to induce a specific non-client [']s

reasonable reliance on his or representations, then there is a relationship between the attorney and the third-party." <u>Banco Popular N. Am</u>., 184 N.J. 161(2005). "Contrariwise, if the attorney does absolutely nothing to induce reasonable reliance by a third-party, there is no relationship to substitute for the privity requirement." <u>Id</u>.

Defendants Altman and the Altman law firm have breached their duty of care by failing to take care in the execution of their profession and the provision of their legal services by failing to competently prosecute the student defense cases which Plaintiff assigned to them. (FAC at ¶108). But-for-the failures of the Defendants to take reasonable steps as would be expected of a reasonably prudent attorney and law firm to protect the interests of the student defense cases assigned to them by the Plaintiff, the Defendants have jeopardized the interests of these clients and have caused injury, both pecuniary and reputational to the Plaintiffs. (FAC at ¶110).It is certainly reasonable that an attorney and law firm such as the Plaintiff who assign cases to another attorney and firm such as the Defendants and rely on them to provide adequate legal services, could be harmed by the failure to competently prosecute those matters. Accordingly, because the Plaintiffs relied on the Defendants' professional capacity, there is a relationship between the Plaintiff and the Defendants that would qualify for the privity requirement. To that end, the Plaintiff has standing to sue and therefore, the Court should deny the Defendants motion to dismiss Count VI of Plaintiffs' Amended Complaint.

## 2. Negligence per se (Violation of NJ RPC 1.16/MI RPC 1.16/MRPC 1.16)

Defendants do not challenge the sufficiency of Plaintiffs pleading with respect to this claim, nor do they challenge its legality. Instead, Defendants simply deny ceasing representation of the split fee clients and argue that Count VII of the FAC for that reason. Again, however, the Defendants blanket denial of facts does not warrant the dismissal of this claim. Similalry, the Defendants argument that they "had the right to cease termination," is equally unimpressive.

Pursuant to NJ Rule 1.16, MJ Rule 1.16, and Model Rules of Professional Conduct RPC 1.16, "an attorney shall withdraw from the representation of a <u>client</u> if ... the lawyer is discharged." However, this provision unequivocally refers to the discharge of an attorney by the client. There is nothing in the record that would support the Defendants' proposition that they were somehow clients of the Plaintiff. Accordingly, the Defendants motion to dismiss this claim must be denied.

## 3. Negligence per se (Violation of NJ RPC 8.4 / MI RPC 8.4 / MRPC 8.4)

Again, Defendants do not challenge the sufficiency of Plaintiffs pleading with respect to this claim, nor do they challenge its applicability. Instead, they argue that the Plaintiff has not shown any damages and that they were "discharged from the assignment." However, these arguments fail for the same reasons advanced herein above. As such, the Defendants motion to dismiss this claim must also be denied.

## 4. Negligence per se (Violation of NJ RPC 7.1 / MI RPC 7.1 / MRPC 7.1)

Defendants argue that the Plaintiff has failed to state a claim for negligence per se under NJ, MI, and MRPC 7.1 because Plaintiffs have failed to show damages. Specifically, Defendants deny Plaintiffs' allegation that it was harmed by Defendants' Google Advertisement by claiming that the "Google advertisements were created solely by Google themselves."  This argument lacks any logic or merit. Without burdening the court with technical notions, it suffices to say that any advertiser on Google would first need to supply Google with the terms in their ads—known as "headlines." The Defendants wrote several of these headlines from which Google used to create the ads in question.

The rest of the Defendants' arguments in this regard are blanket denials, which would be better found in its Answer to the FAC More so, these blanket denials would not justify the dismissal of the Plaintiffs' claims at this stage of the proceeding and for that reason, this Court should deny the Defendants' motion to dismiss this claim.

### E. Unjust Enrichment and Conversion Claims

The Defendants do not challenge the sufficiency of the facts alleged, nor do they challenge its legal applicability. Instead, Defendants argue that the court should dismiss Count X for Unjust Enrichment and Count XI for Conversion because the "Plaintiffs owed Altman for the legal services performed on behalf of the Split Fee Clients and in accordance with the verbal contract and all modification thereto." In essence, the Defendants argue that these claims should be dismissed because any monies paid by the Plaintiffs were legally due to the Defendants.

This does not warrant dismissal of the FAC. In fact, given the fact-intensive nature of all claims involved and the parties' respective positions regarding money owed to the Defendants, it would be inappropriate to grant a motion to dismiss at this stage of this proceeding. This Court should deny the Defendants' motion to dismiss these claims.

### F.   PLAINTIFFS PROPERLY STATED A CLAIM FOR UNFAIR COMPENSATION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER THE LANHAM ACT.

As set forth in the Amended Complaint, Plaintiffs allege that Defendants Altman and Altman's Law Firm made unauthorized and deceptive use of Plaintiffs' mark "Lento Law Firm" (and even Plaintiff's personal name "Joseph Lento") in online advertisements that redirect consumers via hyperlink to Defendants' own website where they offer competing legal services. In doing so, Defendants attempted to take advantage of and trade on the goodwill that Plaintiffs endeavored to build in their mark and reputation among consumers. Defendants posed as Plaintiffs to deceive and intercept clients seeking legal services, and to usurp Plaintiffs' goodwill and advertising efforts in a clear violation of the Lanham Act.

Defendants fail to argue the correct standard to support their Rule 12(b)(6) Motion to Dismiss. In support of their motion, Defendants only cite inapposite law and dispute material facts. While the Court considers a Rule 12(b)(6) motion, matters of fact are not subject to a moving party's dispute but are accepted as true as alleged in the Amended Complaint. Hence, Defendants' claim that "The Google ads were created solely by Google and not Altman" is immaterial to the 12(b)(6) motion before the Court, not to

mention false as Plaintiffs will demonstrate at trial. The same is true of all other factual disputes Defendants immaterially raised in support of their 12(b)(6) motion to dismiss.

The correct standard dictates that Defendants may prevail on their 12(b)(6) motion only if they successfully argue that the applicable law cannot support a verdict for the Plaintiff when applied to the facts as alleged in the Amended Complaint. Instead of making such a showing, Defendants bizarrely draw reference to an unrelated and inapposite section of the statute 15 U.S.C. § 1125(d)(1)(A)(ii)(I) which pertains only to cases involving website domain names. The Amended Complaint did not allege that Defendants used Plaintiffs' mark in any domain name, but rather it alleged that the Defendants used Plaintiffs' mark in advertising Defendants' own website. In a similarly bizarre fashion, Defendants attempt to support their 12(b)(6) motion by confusing the issue and mounting a legal challenge as to the distinctiveness of Plaintiff's mark "Lento Law Firm" and even Plaintiff's own personal name when used as a mark to designate origin. The distinctiveness of Plaintiffs' mark is not at issue in this case. False advertising claims do not require distinctiveness as an element.

Defendants cite to the standard in Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 317 (E.D. Pa. 2006), that for liability to arise, an advertisement must be either (1) literally false or (2) literally true or ambiguous but has the tendency to deceive consumers. But again, Defendants decline to actually analyze the allegations in the Amended Complaint under the standard they cite. The most cursory analysis demonstrates that

Plaintiffs properly stated a claim and Defendants' 12(b)(6) motion must be denied: Defendants' advertisements here are literally false. "Lento Law Firm" is Plaintiffs' mark – not Defendants' mark.

Defendants argue that "Plaintiffs have failed to prove false advertising." The standard for a dismissal for failure to state a claim pursuant to Rule 12(b)(6) is well-known and need not be repeated here. Suffice it to say, Plaintiffs have no need to "prove" false advertising at this stage. They must simply allege enough facts which, if true, would constitute a valid cause of action.

Defendants attempt to confuse the issue by pointing out that Plaintiffs' Amended Complaint does not explicitly state that Defendants obtained pecuniary benefits as a result of making their representations, but "obtaining" pecuniary benefits is not an element that must be alleged under 15 U.S.C. § 1125(a)(1). False advertising is still a violation of the Lanham Act even if the false advertiser does not actually make any money from the false advertising. Plaintiffs did allege that Plaintiffs *suffered* pecuniary losses from Defendants' false advertising, along with every other element of this cause of action.

Defendants also falsely claim that "Plaintiffs do not state what is their "mark"." Altman Motion, pp. 39-40. In fact, Plaintiffs plainly stated that "Lento Law Firm" was their mark: "Defendants Altman and the Altman Firm's unauthorized use of **Plaintiff's mark, "Lento Law Firm"** Amended Complaint, Paragraph 162 (emphasis added).

As Defendants correctly note, addressing the theft of goodwill and reputation is the purpose of the Lanham Act, and that is exactly what Defendants have done to Plaintiffs here, as Plaintiffs have properly alleged in their Amended Complaint. Defendants' request to dismiss Plaintiffs' claims under the Lanham Act must be denied since their legal arguments are entirely without merit, nor at times coherence, and the factual allegations supporting their request are simply not true or material to the 12(b)(6) motion.

## G. DECLARATORY JUDGMENT ACT CLAIMS

The Declaratory Judgment Act does not create a basis for federal jurisdiction. Rather, jurisdiction must be established in accordance with Article III, Section 2 of the Constitution, and therefore, jurisdiction under the Declaratory Judgment Act requires an actual controversy between the parties. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007). More specifically, jurisdiction over a declaratory judgment action requires that "the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id.

There is an actual controversy between the parties. Indeed, by its own admission, the Defendants argue that the Plaintiffs owe them money for the legal services rendered pursuant to the split fee clients. Plaintiffs, on the other hand, emphatically deny owing the

Defendants any more money and seek a judgment to that effect. As such, this claim must also survive the Defendants' Motion to Dismiss.

## <u>CONCLUSION</u>

As indicated herein above, in a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." <u>Gould Elec. Inc. v. United States,</u> 220 F.3d 169, 178 (3d Cir.2000). The defendant bears the burden of showing that no claim has been presented.  <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir.1991). To that end, it is respectfully submitted that the Defendants have not met their burden in showing that no claims were presented. Indeed, by virtue of the FAC, the Plaintiffs have adequately asserted claims for RICO violations, breach of contract, tortious interference, negligence, unjust enrichment and conversion, and violation of the Lanham Act.  The facts alleged in the Complaint are clear and put the Defendants on sufficient notice of the claims to properly prepare a defense. On the basis of the foregoing argument and the legal authority cited herein, it is requested that Defendants' Motions to Dismiss be denied in their entirety.

<div align="right">

Respectfully Submitted,
**KATES NUSSMAN ELLIS
FARHI & EARLE, LLP**

<u>/s/ Sandra M. Barsoum</u>
SANDRA BARSOUM

</div>