IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH D. LENTO, ESQ., *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Civil No. 22-4840 (RBK/EAP) |
| v. : | |
| : | **OPINION** |
| KEITH ALTMAN, ESQ., *et al.*, : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Plaintiffs/Counterclaim Defendants Joseph D. Lento, Esq. and the Lento Law Firm, LLC's ("LLF") (collectively, "Counterclaim Defendants") Motion to Dismiss Defendants/Counter Plaintiffs Keith Altman, Esq., and the Law Office of Keith Altman, PLLC's (the "Altman Firm") (collectively, "Counter Plaintiffs") Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (the "Motion" or "Mot."). (ECF No. 58). For the reasons set forth below, the Court **GRANTS** the Motion.

I.  BACKGROUND

A.  Factual Background[1]

According to Altman and the Altman Firm's Counterclaim, Altman entered a business relationship with Lento and LLF in May 2020 in which the former helped provide legal services

---

[1] At the motion to dismiss stage, the Court must limit its review to the face of the counterclaim. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The facts conveyed here are thus drawn only from Counter Plaintiff's Counterclaim. An alternative narrative of events told largely from the perspective of Counterclaim Defendants can be found in the Court's prior Opinion of June 27, 2023. (ECF No. 39).

1

to the latter's clients. (ECF No. 51 at 22–31, Countercl. ¶¶ 8–9). An agreement was formalized between the parties verbally—not in writing—wherein the parties would split any legal fees paid by the clients after Lento and LLF deducted marketing expenses. (*Id*. ¶¶ 10–14). In 2022, the parties twice modified the fee split arrangement. (*Id*. ¶¶ 17–20). The details of those modifications are not relevant to the present Motion. By July 2022, Lento and LLF allegedly owed Altman at least $770,000. (*Id*. ¶¶ 21–22).[2] On July 23, 2022, Lento and LLF sent $55,000 to Altman, but the next day the parties agreed to dissolve their business relationship. (*Id*. ¶¶ 25–26).

The parties disagreed, however, on the terms of their dissolution and entered negotiations to settle their mutual grievances. On July 25, 2022, an individual named John Hunt told Altman he had been appointed as Lento and LLF's agent in negotiations. (*Id*. ¶ 27). Altman initially demanded $500,000 to settle the matter of outstanding legal fees. (*Id*. ¶ 28). Subsequently, Altman sent Lento and LLF a Memorandum of Understanding ("Altman MOU"), (ECF No. 51-1), reflecting the terms he discussed (presumably with Hunt) for a global settlement. (Countercl. ¶ 29). According to the MOU, which is attached as an exhibit to the Counterclaim, Lento and LLF would pay Altman and the Altman Firm $365,000, waive certain referral fees, and indemnify Altman and the Altman Firm "for any issues arising from all pre-litigation matters," among other terms. (Altman MOU at 2–3). In return, Altman and the Altman Firm would indemnify Lento and LLF "for any issues arising from all litigation matters," among other terms. (*Id*. at 3). The MOU also contained provisions for mutual non-disparagement and the mutual release of all claims. (*Id*.).

---

[2] The Counterclaim confusingly lists two different amounts owed: either $770,260 or $805,665. *Id*. Fortunately, the Court need not determine at this stage which amount, if either, is correct because that amount is not relevant to Counter Plaintiffs' breach of contract claim.

2

In response to the Altman MOU, Lento and LLF sent their own, lengthier Settlement Agreement ("Lento Agreement"), (ECF No. 51-2), back to Altman and the Altman Firm. (Countercl. ¶ 31). The Lento Agreement, also attached as an exhibit to the Counterclaim, was unsigned. (*Id.*). This Agreement added several provisions that did not appear in the Altman MOU, such as new terms regarding mutual indemnification; the assertion that neither party admitted wrongdoing; and the requirement that each party delete references to the other in their marketing materials. (Lento Agreement at 2, 4–5). Notably, the Lento Agreement also contained four blank spaces, highlighted in yellow: three where dates were to be entered to mark the deadlines for certain actions and a fourth where a dollar amount was to be entered as to the total amount the parties would fund an escrow account to pay for "chargebacks initiated by clients." (*Id*. at 3–5).

Nowhere do Altman and the Altman Firm allege that either party signed the Lento Agreement. Nonetheless, they claim that the Lento Agreement is a contract that is now binding on the parties. (Countercl. ¶¶ 38, 41–42). Altman and the Altman Firm claim they upheld their portion of the Agreement by returning certain clients to LLF and by executing new fee agreements for other clients, and Lento and LLF subsequently breached by filing the present lawsuit and failing to pay $365,000. (*Id*. ¶¶ 34–37, 52–53).

The Counterclaim's sole cause of action is breach of contract. (*Id*. ¶¶ 40–54). Altman and the Altman Firm seek damages for financial loss, attorneys' fees, legal costs, and other relief as the Court deems appropriate. (*Id*. ¶ 54).

      B.     **Procedural Background**

Although this lawsuit has spawned a seemingly endless flurry of letters and other docket entries memorializing the parties' mutual recriminations, the Court will recount only those

procedural events that are relevant to the present Motion. Lento and LLF filed their initial Complaint on August 1, 2022. (ECF No. 1). Simultaneously, they filed a Motion for a Temporary Restraining Order and Preliminary Injunction, (ECF No. 2), which the Court denied after a hearing. (ECF Nos. 7, 12). The Court ordered the parties to attend mediation and stayed all proceedings for ninety days. (ECF No. 11). That mediation failed.

Plaintiffs then filed an Amended Complaint on September 1, 2022, (ECF No. 17), which named as Defendants two of Altman's colleagues in addition to Altman and the Altman Firm. Those colleagues, Richard Gill and Ari Kresch, filed a motion to dismiss for failure to state a claim on November 14, 2022. (ECF No. 26). Altman and the Altman Firm filed their own motion to dismiss the same day. (ECF No. 27). After receiving briefing on those motions, (ECF Nos. 34–35), the Court in an Opinion and Order on June 27, 2023, (ECF Nos. 39–40), granted the motion filed by Gill and Kresch and dismissed them from the case. The Court also granted in part and denied in part the motion filed by Altman and the Altman Firm, dismissing several counts in the Amended Complaint but allowing others to proceed. (*Id.*).

Altman and the Altman Firm filed their answer to the Amended Complaint on August 1, 2023. (ECF No. 51). That filing included their Counterclaim. (*Id.* at 22–31). On August 18, 2023, Lento and LLF filed the present Motion to Dismiss the Counterclaim, (ECF No. 58), and a corresponding brief ("Countercl. Def.'s Br."). (ECF No. 58-3). Altman and the Altman Firm opposed the Motion on September 1, 2023 ("Opp. Br."). (ECF No. 61). Lento and LLF replied on September 11, 2023 ("Reply Br."). (ECF No. 65).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which the court can grant relief. A motion to dismiss a counterclaim is

4

decided by the same standard as a motion to dismiss a complaint. *See* Fed. R. Civ. P. 12(b); *United Capital Funding Group, LLC v. Remarkable Foods, LLC*, Civ. No. 21-3291, 2023 WL 5722910, at *2 (D.N.J. Sept. 5, 2023). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "[C]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 679).

**III.    ANALYSIS**

Following the Third Circuit's three-step test as prescribed in *Santiago*, 629 F.3d at 130, we begin by identifying the elements required to state a claim for breach of contract.[3] Under New Jersey law, "[a]n agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Brundage v. Est. of Carambio*, 951 A.2d 947, 961–62 (N.J. 2008) (quotation marks and citations omitted). To prevail on a claim for breach of contract, a plaintiff must prove four elements:

> first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (cleaned up) (citing *Model Jury Charge (Civil)* § 4.10A (May 1998)).

At the heart of this dispute is the first element: whether Counterclaim Defendants entered a contract—namely, the Lento Agreement—with the Counter Plaintiffs. *See* (Countercl. Def.'s Br. at 13 ("[T]he breach of the settlement agreement claims [sic] fails the facial plausibility test because none of the facts suggest that the parties entered into a valid and binding contract in the first place.")). "A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *West*

---

[3] The parties tacitly agree that New Jersey law applies to this dispute. The parties cite New Jersey caselaw throughout their respective briefs, and nowhere do they assert that the law of any other state should apply. Therefore, the Court follows the parties' lead and applies New Jersey law.

6

*Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)); *see also* Restatement (Second) of Contracts § 33(1) (Am. L. Inst. 1981) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain."). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors*, 608 A.2d at 284 (citations omitted). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." *Id*. (citation omitted). Essential terms include such things as price and time or manner of performance. *See Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009) (citing *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956)).

The New Jersey Supreme Court has long held that "the essential element" to the formation of a contract is the "meeting of the minds" of the contracting parties. *DeVries v. Evening J. Ass'n*, 87 A.2d 317, 318 (N.J. 1952). Until that time, "either party may withdraw and end all negotiations." *Id*. In other words, "[s]o long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds meet upon them, it is not a contract, although as to some matters they may be agreed." *Id*. (quoting *Tansey v. Suckoneck*, 130 A. 528, 529 (N.J. 1925)).

At the second step under *Santiago*, we look at the Counterclaim's allegations and weed out the conclusory statements from the actual, well-pleaded facts. Here, Plaintiff's well-pleaded facts include the following: that Altman sent the Counterclaim Defendants the Altman MOU on July 25, 2022, (Countercl. ¶ 29); that the Counterclaim Defendants sent back an unsigned copy of the Lento Agreement three days later, (*id*. ¶ 31); that Counterclaim Defendants filed the present lawsuit on August 1, 2022, (*id*. ¶ 34); and that Counter Plaintiffs have executed portions

of the Lento Agreement relating to returning certain clients to LLF and executing new fee agreements for other clients. (*Id*. ¶¶ 36–37). In addition to these well-pleaded facts, the Court may consider the substance of the Altman MOU and Lento Agreement to decide the present Motion. *See Schmidt*, 770 F.3d at 249 (courts may consider "exhibits attached to the complaint"). On the other hand, the Court deems all allegations in the Counterclaim that pre-suppose the existence of a contract to be conclusory, as whether the parties formed a contract is the legal issue in dispute. Such allegations include the following: that the parties entered an agreement, (*id*. ¶ 42); that the Lento Agreement is binding on the parties, (*id*. ¶ 38); that both parties "agreed" a $365,000 payment was a fair resolution of their dispute, (*id*. ¶¶ 45, 47); and that Counterclaim Defendants breached the contract. (*Id*. ¶¶ 52–53).

Finally, at the third step under *Santiago*, we find that the Counterclaim does not contain enough well-pleaded factual allegations to plausibly give rise to an entitlement for relief for breach of contract. The problem, in short, is that the Court cannot find that a contract existed in the first place. Counter Plaintiffs do not allege that the Altman MOU was a contract. Thus, the Court focuses on the Lento Agreement. The Lento Agreement, however, notably contained four blank spaces where the parties were yet to fill in (1) the date by which Altman would return the files for pre-litigation student defense clients to Lento; (2) the date by which the parties would jointly draft a communication to affected clients; (3) the date by which Altman would send new attorney fee agreements to clients presently in litigation; and (4) in a section entitled "MUTUAL INDEMNIFICATION," the total amount the parties would fund an escrow account to pay for "chargebacks initiated by clients." (Lento Agreement at 3–5). The Court finds that these terms describing the time of performance of certain actions and, even more importantly, the cost borne

by each party to indemnify the other, are "essential" or "material" to the Lento Agreement. *See Am. Eagle Outfitters*, 584 F.3d at 585.

With essential terms missing from the Lento Agreement, that Agreement cannot be considered a binding contract. As discussed, a contract "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors*, 608 A.2d at 284 (quoting *West Caldwell*, 138 A.2d at 410). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." *Id*. Here, for example, because the total funding for the escrow account was unspecified, the parties could not ascertain with reasonable certainty what their financial exposure would be under the Agreement. Accordingly, the parties could not have reached a "meeting of the minds" as to the content of the Agreement. *See DeVries*, 87 A.2d at 318. Even if, as Counter Plaintiffs allege, the parties had agreed to some aspects of the Agreement, (Countercl. ¶¶ 33, 45), negotiations clearly were still pending over other, material matters. Until those matters could be settled and the parties' minds could meet upon them, "it is not a contract." *See DeVries*, 87 A.2d at 318.[4]

Therefore, Altman and the Altman Firm's Counterclaim does not contain enough well-pleaded factual allegations to plausibly give rise to an entitlement for relief for breach of contract by Counterclaim Defendants. Counterclaim Defendants' Motion to Dismiss must be granted.

---

[4] In reaching this conclusion, the Court need not analyze the separate legal issue of contract offer and acceptance. That is, the Court makes no finding as to whether Lento and LLF intended to be bound by the Lento Agreement or whether Altman and the Altman Firm could have accepted the terms of the Agreement through performance even though neither party signed the Agreement.

9

## IV. CONCLUSION

For the reasons set forth above, Counterclaim Defendants' Motion to Dismiss (ECF No. 58) is **GRANTED**. Counter Plaintiffs' Counterclaim (ECF No. 51 at 22–31) is **DISMISSED**. An Order follows.


Dated:   March 18, 2024                                         /s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge